Elizabeth A. Fegan (SBN 355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

MEGAN E. SHANNON (*pro hac vice* forthcoming)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: 312.273.9476
Facsimile: 312.264.0100
megan@feganscott.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR: VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 638.51 AND § 631(a))** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PARTIES .......................................................................................................... 2

III.  JURISDICTION ............................................................................................... 2

IV.  FACTUAL ALLEGATIONS ........................................................................... 3

    A.   Healthline Capitalizes on the Information of Website Visitors Without Their Consent. .......... 3

    B.   Healthline Installed the TikTok Pixel on its Website. ............... 5

    C.   Healthline Installed the Microsoft Clarity Pixel on its Website. ......... 7

    D.   Healthline Installed the Adnx Tracker on its Website. ............. 9

    E.   Defendant Knowingly Installed Pixels in Violation of CIPA .......... 11

    F.   Plaintiff and Class Members Were Harmed by the Invasion of Their Privacy. ........ 12

V.   CLASS ALLEGATIONS ................................................................................ 13

VI.  CAUSES OF ACTION ................................................................................... 15

   COUNT I ......................................................................................................... 15

   COUNT II ........................................................................................................ 17

VII. PRAYER FOR RELIEF ................................................................................ 19

   DEMAND FOR TRIAL BY JURY ................................................................ 20

CLASS ACTION COMPLAINT

Plaintiff Daniel Gliksman ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this action against Healthline Media, LLC ("Healthline," or "Defendant") and alleges, upon his personal knowledge as to his own actions and upon information and belief as to all other matters, as follows:

## I.     INTRODUCTION

1.     Healthline is an online health information website that touts itself as the "media company that reaches more people on their road to well-being than any other health property."[1]

2.     According to Healthline, its "team of writers, editors, and other contributors are committed to delivering health and wellness information that gives a more diverse set of people greater confidence in their path forward. [Healthline] empower[s] audiences to make their best decisions by offering straightforward resources that focus on the whole person and provide actionable guidance."[2]

3.     Despite Healthline's self-proclaimed goal to "offer straightforward resources," Healthline has intentionally installed a number of third-party trackers known as pixels into its website. As a result, Healthline surreptitiously collects, captures, and discloses website visitors' private information, including their IP addresses, for advertising and analytic-related purposes without consent from website users.

4.     Healthline utilizes pixels to track, record, and collect website user data that is subsequently communicated to third party platforms and advertisers without consent in violation of the California Invasion of Privacy Act ("CIPA") sections 638.51 and 631.

5.     Most alarming, as a website offering resources for sensitive health topics, Healthline collects and records the information that website users search, and transmits that information to third parties and advertisers without consent. This means that a website user could search for resources on a sensitive health-related topic such as abortion or sexually transmitted infections through Healthline and later be served related ads on third party websites because of Healthline's pixels.

6.     Healthline has installed the TikTok Pixel, the Microsoft Clarity Pixel, and the Adnx Pixel

---

[1] https://www.healthlinemedia.com/company (last accessed November 24, 2024).
[2] *Id.*

(collectively, the "Pixels"). These Pixels allow Healthline to obtain and analyze website visitors' data for profit.

7.    The Pixels collect data from Healthline's website visitors, without their consent, which Healthline leverages to sell advertising space on its websites and earn additional revenue. At the same time, the Pixels allow Healthline to place advertisements on other companies' websites, increasing brand awareness and sales.

8.    The data that Healthline's Pixels surreptitiously collects from consumers, can be used to identify specific individuals—even without information such as the person's name or address—and determine specific locations of the individual, all without informing or obtaining consent from the person tracked.

9.    Plaintiff and the Class member did not consent to Defendant's tracking, collecting, obtaining, or transmitting of their data, including IP addresses, communications, and personal information.

10.    Plaintiff brings this action individually and on behalf of the Class, seeking relief including, but not limited to, actual damages, punitive damages, restitution, statutory damages, injunctive relief, and a declaratory judgment, reasonable attorneys' fees and costs, and all other remedies this Court deems proper.

## II.    PARTIES

11.    Plaintiff is, and has been at all relevant times, a citizen and resident of Los Angeles, California.

12.    Defendant is a corporation organized under the laws of Delaware with a corporate headquarters, or principal place of business, located in Fort Mill, SC, and an office in San Francisco, California.

## III.    JURISDICTION

13.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of costs and interest. At least one member of the Class is a citizen of a different state than Defendant, and there are more than 100 putative Class members.

14.    This Court has personal jurisdiction over Defendant because Healthline has purposefully directed its activities to the state of California by maintaining an office in San Francisco, California. Furthermore, Healthline regularly tracks individuals in this district and the state of California through its website. Defendant's unlawful conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business in this district, and because a substantial portion of the events giving rise to Plaintiff's claims occurred here. Additionally, Defendant is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District, and the injury to Plaintiff occurred within this District.

## IV.    FACTUAL ALLEGATIONS

### A.  Healthline Capitalizes on the Information of Website Visitors Without Their Consent.

16.    Defendant operates a portfolio of consumer facing health websites, including Healthline, Medical News Today, Greatist, PsychCentral, and bezzy. Healthline claims that it is "the #1 health information site in the U.S."[3]

17.    Healthline was founded in San Francisco, California, and is now considered the second largest and fastest growing consumer health publisher in the world.[4]

18.    Healthline claims that it reaches 71 million people a month through its website, and that more than 20 million users have three or more engagements with Healthline.com each month.[5] Website traffic and engagements are concrete measures of value for Healthline to secure advertisers.

19.    Healthline and its portfolio of brands claim to "drive[] wellbeing for consumers, each catering to a different health and wellness mindset."[6] In essence, each brand publishes a host of health or wellness related articles, driving website traffic to their website in order to increase advertising revenue. Healthline takes its business model one step further by installing Pixels or Trackers from third

---

[3] https://healthlinemedia.com/partner/brands (last accessed November 24, 2024).
[4] https://www.crunchbase.com/organization/healthline (last accessed November 24, 2024).
[5] https://healthlinemedia.com/attribute (last accessed November 24, 2024).
[6] https://healthlinemedia.com/partner/brands (last accessed November 24, 2024).

1   parties on its website.

2      20.    Without Plaintiff's knowledge or consent, Defendant's website Pixels collects website

3   users' information through the TikTok Pixel, Adnx and Clarity pixels, and shares this information with

4   TikTok and Microsoft. This user information, including users' IP addresses, is shared with TikTok and

5   Microsoft, which allows Tik Tok and Microsoft to serve the visitor ads on their own platforms based

6   on the users' Healthline searches and interactions.

7      21.    Moreover, Pixels allow Healthline to place advertisements on other companies' websites,

8   increasing brand awareness and sales.

9      22.    Defendant's installation of the Pixels violates California's Invasion of Privacy Act

10  codified at California Penal Code § 638.51 and § 631.

11     23.    Healthline uses a "first-party data platform," called Attribute, to market its data on health-

12  conscious consumers to advertisers. Attribute offers advertisers access to proprietary data collected

13  about Healthline users to improve their targeted advertising campaigns on Healthline's website.[7]

14     24.    Attribute emphasizes the extent of Healthline's data collection efforts. Healthline states

15  that advertisers who use Attribute can "unlock [Healthline's] Zero- and First-party data" for use in

16  optimizing ad campaigns on Healthline.[8] The platform also allows advertisers to use Healthline's "high-

17  intent audience segmentation, predictive models and purpose-built personas"— tools based on the

18  "billions of first-party data signals" that Healthline collects from users.[9]

19     25.    Healthline is fully aware of the power of user data collected by the Pixels. In a statement

20  on its website describing the Attribute platform, Healthline states: "[i]n a world where data privacy

21  concerns and pending cookie deprecation loom large, Healthline Media takes the lead with Attribute by

22  offering a range of cookie-free solutions that connect advertisers to targeted health and wellness

23  audiences at scale."[10]

24  

25  _____

26  [7] https://healthlinemedia.com/attribute (last accessed November 24, 2024).
    [8] *Id.*

27  [9] https://www.healthlinemedia.com/news/healthline-medias-attribute-a-groundbreaking-first-party-data-platform-optimizing-advertisers-performance (last accessed November 24, 2024).

28  [10] https://www.healthlinemedia.com/news/healthline-medias-attribute-a-groundbreaking-first-party-data-platform-optimizing-advertisers-performance (last accessed November 24, 2024).

26.    In actuality, Healthline utilizes Pixels to surreptitiously collect and share website users' IP addresses and other identifying and sensitive information.

27.    Healthline can further track users who turn over their personal information in the form of email addresses, date of birth, and other identifying information, allowing Healthline to link a user to a particular individual. Healthline encourages users to become subscribers through popups and other messages.

28.    Through Attribute and other avenues, Healthline leverages the data it collects from users via the TikTok, Microsoft Clarity, and Adnx pixels in order to increase ad revenue.

**B. Healthline Installed the TikTok Pixel on its Website.**

29.    Defendant implements the TikTok Pixel, a tracker programmed into Healthline's website. The TikTok Pixel enables advertisers to track users' website interactions with TikTok through the user's browser.

30.    The TikTok pixel collects and reports supplementary metadata to TikTok, including information such as ad/event details (related to the clicked ad), timestamp (time page was viewed), IP Address (which can identify a person's geographic location), device details (make, model, operating system) and browser information.[11]

31.    Website owners, like Healthline, retain control over the data collected and reported by the TikTok Pixel through TikTok Events Manager. By utilizing this tool, website owners can specify the "Events" they want to track and report to TikTok. "Events" refer to specific actions taken by website visitors to achieve business objectives, such as adding items to a cart, filling out forms, or making purchases. Events are useful for marketing purposes, optimizing ad delivery, and measuring campaign performance.

32.    The TikTok Pixel uses a process known as "fingerprinting," where the TikTok Pixel collects as much data as it can about an anonymous website visitor and matches it with existing data that TikTok has acquired regarding millions of users.

33.    This data collection includes all sorts of website information, as well as Plaintiff's and

---

[11] https://ads.tiktok.com/help/article/tiktok-pixel (last accessed November 24, 2024).

CLASS ACTION COMPLAINT

Class members' respective IP addresses, browser and device information, user IDs, geolocation data, and other data, are used by the Pixel to "fingerprint" individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties (here, TikTok).

34.    The TikTok Pixel's "AutoAdvanced Matching" feature works by automatically collecting additional information from users who interact with a business's website or app, such as email addresses, phone numbers, and other identifiers in hashed form.[12] This data is then used to enhance the accuracy of user matching to their TikTok profiles, improving the targeting of ads.

35.    When Healthline requests information such as name, date of birth and address, this data is simultaneously sent to TikTok. This allows TikTok to accurately identify the individual.[13]

36.    Healthline enabled the "Automatic Advanced Matching" feature on its website. The Automatic Advanced Matching feature is not enabled by default, and website owners are encouraged to activate it and agree to share their users' phone numbers and email addresses.



_____

[12] https://ads.tiktok.com/help/article/advanced-matching-web (last accessed November 24, 2024).
[13] *Id.*

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37.    The "Automatic Advanced Matching" feature is not enabled by default. Website owners like Healthline must affirmatively activate it and agree to share their users' phone numbers and email addresses, as shown below:



38.    Defendant did not obtain Class members' consent to be subjected to data sharing with TikTok.

**C.  Healthline Installed the Microsoft Clarity Pixel on its Website.**

39.    Defendant also implements the Microsoft Clarity Pixel, a tracker programmed into Healthline's website.

40.    Healthline discloses private personal information, along with users' Microsoft ID (Machine Unique IDentifier, "MUID") to Microsoft. A MUID is a unique and persistent identifier generated by Microsoft and assigned to a specific browser to track users' activity across the internet.

41.    A MUID constitutes personally identifiable information ("PII") because it is unique to each user and can be used to identify individuals.

42.    Defendant's website users' information is sent to Microsoft using its analytics and

advertising tool, Clarity, which allows website owners to track visitor actions on their website and measure the effectiveness of advertising.

43.     Website owners, such as Healthline, receive these services by adding the tracker's source code to their websites. Once the tracker is embedded in a website's source code, it sends data regarding specific user actions and their unique identifiers to Microsoft.

44.     By using Clarity, Healthline is sharing its users' online activity relating to their sensitive, private information as well as their unique ID, with Microsoft, despite users not having consented to share such information.

45.     For example, if a website user searches for "breast cancer" on Healthline's website, that search and the MUID is sent to Microsoft.



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



10    46.    Defendant did not obtain Class members' consent to be subjected to data sharing with
11  Microsoft.

12    **D. Healthline Installed the Adnx Tracker on its Website.**

13    47.    Defendant also implements the Adnx pixel, a tracker programmed into Healthline's
14  website.

15    48.    The Adnx Tracker was developed by the software company Xandr, which was later
16  acquired by Microsoft in 2021. Xandr operates as an advanced advertising company that provides a
17  comprehensive platform for buying and selling consumer-centric digital advertising. Xandr's platform
18  aims to improve the efficiency and effectiveness of advertising across various channels by leveraging
19  data and technology.

20    49.    Microsoft has explained that "[w]ith Xandr, Microsoft can accelerate the delivery of
21  digital advertising solutions for the open web by combining Microsoft's audience understanding,
22  technology and global advertising customer base with Xandr's large-scale, data-driven platforms for
23  advertising."[14]

24    50.    Like the TikTok pixel and Microsoft Clarity pixel, Adnx allows companies to sell
25  advertising space on their website by using the Adnx Tracker to receive, store and analyze information

26
27
28

---

[14] https://about.ads.microsoft.com/en/blog/post/december-2021/microsoft-to-acquire-xandr-to-accelerate-its-digital-advertising-and-retail-media-solutions (last accessed November 24, 2024).

9

collected from website visitors.

51.    The Adnx tracker is installed on Healthline's websites and sends the user's IP address to Xandr, which stores it in a cookie for future visits, and the tracking cycle restarts if cookies are cleared, ensuring Xandr consistently receives the user's IP address with each site interaction.

52.    Xandr receives a user's IP address each time a user interacts with the Websites. Even when the IP changes, the cookies remain persistent:



53.     The above image shows that the specific IP is passed along with the key words.

54.     Defendant did not obtain Class members' consent to be subjected to data sharing with Xandr.

**E.  Defendant Knowingly Installed Pixels in Violation of CIPA**

55.     This is not Defendant's first instance of pixel misuse. In 2022, Defendant was sued for violations of Video Privacy Protection Act 18 U.S.C. § 2710, *et seq*. based on its use of the Meta pixel on its website. *See Heather v. Healthline Media, Inc.*, No. 3:22-cv-05059-JD, 2023 U.S. Dist. LEXIS 225991 (N.D. Cal. Dec. 19, 2023).

56.     Despite being previously sued for the improper use of pixels on its website, Healthline affirmatively and knowingly elected to install the TikTok, Microsoft Clarity, and Adnx pixels in order to intercept and transmit valuable personally identifiable information from its website users without website users' permission.

57.     Defendant's decision to install the TikTok, Microsoft Clarity, and Adnx pixels transparently seeks to capitalize on unsuspecting website users' personal information for the sole

CLASS ACTION COMPLAINT

purpose of increasing advertising revenue. Website users are unaware that Defendant uses their personally identifiable information for financial gain. Website users, like Plaintiff, do not consent to the transmission and sale of their data.

**F.    Plaintiff and Class Members Were Harmed by the Invasion of Their Privacy.**

58.    Plaintiff visited Defendant's website numerous times over the last year to view health and wellness content and articles but has never subscribed to Defendant's newsletter.

59.    Healthline transmitted Plaintiff's information, including his IP address, to TikTok, Microsoft, and Xandr without consent.

60.    Without Plaintiff's knowledge or consent, Defendant deployed a de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device, as further described herein.

61.    Defendant's installation of the TikTok, Microsoft, and Adnx Pixels violates CIPA, codified at California Penal Code § 638.51 and § 631.

62.    CIPA provides that any person who has been injured under the statute may bring an action for the greater of: (1) five thousand dollars ($5,000) per violation; or (2) three times the amount of actual damages, if any, sustained by the plaintiff. Cal. Penal Code § 637.2(a).

63.    Section 637.2(c) of CIPA further states that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c).

64.    Plaintiff and Class members are harmed by Defendant's multiple invasions of their privacy and violations of CIPA.

65.    Defendant obtained personal data, communications, and information about Plaintiff and Class members, including Plaintiff's and Class members' IP addresses. The data, information and communications that Defendant surreptitiously obtains from Plaintiff and Class members can and are used by Defendant and the third parties to whom Defendant sells and/or shares Plaintiff's and Class members' information to identify them and make personalized advertisements to Plaintiff and Class members individually.

66.    Defendant continues to track Plaintiff's and Class members' website activity, collects

information about health conditions submitted to Healthline's website, and combines that valuable private information with other data sets to sell to and/or share with third-parties for advertising, sales, and marketing purposes against their wishes.

## V.    CLASS ALLEGATIONS

67.    Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23, a California Class defined as:

> **All persons in California who visited Healthline.com within the statute**
> **of limitations (the "Class").**

68.    Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition after conducting discovery.

69.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that millions of individuals visit Healthline's website each month, and at least thousands of those visitors reside in California. The members of the Class will be identified through information and records in Defendant's possession, custody, and control.

70.    **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions including, but are not limited to:

a.    Whether Defendant installed the TikTok pixel, Microsoft Clarity pixel, and Adnx pixel on its website;

b.    Whether the TikTok pixel, Microsoft Clarity pixel, and the Adnx pixel are pen registers as defined by law;

c.    Whether the TikTok pixel, Microsoft Clarity pixel, and the Adnx pixel are trap and trace devices as defined by law;

d. Whether Defendant caused electronic communications from Plaintiff and Class members with Defendant's website to be recorded, intercepted, and/or monitored;

e. Whether Defendant aided and abetted any third parties in eavesdropping on such communications in real time;

f. Whether Class members consented to Defendant's disclosure of their private information and communications to third parties in the manner required by CIPA;

g. Whether any third party read or attempted to read or to learn the contents or meaning of Class members' searches on Defendant's in real time while those conversations were being sent from or received in California;

h. Whether any third party used or attempted to use or to communicate information that was previously intercepted from Class members' website disclosures;

i. Whether the Class is entitled to damages as a result of Defendant's conduct;

j. Whether Class members are entitled to statutory penalties;

k. Whether Class members are entitled to injunctive relief; and

l. Whether Class members are entitled to disgorgement of data obtained unlawfully.

71. **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. Plaintiff and all members of the class visited Defendant's website, and their electronic communications were subjected to a trap and trace device and/or pen register on Defendant's website.

72. The actions and omissions that gave rise to Plaintiff's claims are the same that gave rise to the claims of every other Class member because Plaintiff and each Class member had their electronic communication improperly traced and shared without their consent, and there are no defenses that are unique to Plaintiff.

73. **Adequacy**: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that they seek to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

74. **Superiority**: A class action is superior to all other available means of fair and efficient

adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on Defendant's records.

75.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VI.    CAUSES OF ACTION

### <u>COUNT I</u>

**Violations of California's Invasion of Privacy Act**

**Cal. Penal Code § 638.51**

**(On Behalf of Plaintiff and the Class)**

76.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

77.     California Penal Code § 638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" Cal. Penal Code § 638.51(a).

78.     A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

79.     A "pen register" means "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code §

638.50(b).

80.    Defendant uses trap and trace devices by deploying the TikTok, Microsoft Clarity, and Adnx Pixels on its website, because the Pixels are designed to capture and transmit website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, and where applicable, requested information such as name, date of birth and address. Defendant also uses the Pixels to record, collect, and transmit information about health conditions submitted to Healthline's website.

81.    Defendant intentionally uses the Pixels for the purpose of identifying the source of the incoming electronic and wire communications to the website, which allows Defendant to obtain and analyze website users' data for its own profit.

82.    Defendant uses pen register devices by deploying the TikTok, Microsoft Clarity, and Adnx Pixels on its website, because the Pixels record or decode website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, and where applicable, requested information such as name, date of birth and address. Defendant also uses the Pixels to record, collect, and transmit information about health conditions submitted to Healthline's website.

83.    Defendant did not obtain consent from Plaintiff or any of the Class members before using trap and trace devices and pen registers to identify the sources of electronic communications and to reasonably identify users of its website and has violated § 638.51.

84.    CIPA imposes civil liability and statutory penalties for violations of § 638.51. Cal. Penal Code § 637.2; *see also*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023).

85.    Pursuant to CIPA § 637.2, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

86.    Plaintiff and Class members are harmed by Defendant's violations of CIPA, and seek statutory and actual damages in an amount to be determined at trial.

## COUNT II

### Violations of California's Invasion of Privacy Act

### Cal. Penal Code § 631(a)

### (On Behalf of Plaintiff and the Class)

87. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

88. Section 631(a) of California's Penal Code imposes liability upon any entity who "by means of any machine, instrument, or contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]"

89. Section 631(a) also imposes liability upon any entity "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

90. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *1 (9th Cir. May 31, 2022).

91. The Pixels embedded in Defendant's website to intercept, eavesdrop upon, and record Plaintiff's and the Class's communications qualify as "machine[s], instrument[s], contrivance[s], or … other manner[s]" used to engage in the prohibited conduct alleged herein.

92. Defendant aids and abets TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a), surreptitiously and as a matter of course because Defendant allows TikTok, Microsoft, and Xandr to intercept and use signaling and identifying

information together with the content of sensitive information such as search terms without consent.

93.    At all relevant times, Defendant intentionally transmits identifying information such as users' IP addresses *in addition to* sensitive information. For example, when Healthline requests user information such as email**,** this data is simultaneously sent to TikTok along with the issue the user is interested in (e.g., "Bipolar Newsletter" alongside user email).

94.    Defendant's website transmits and causes user data and private information, including their IP addresses, to be intercepted, eavesdropped upon, and recorded by TikTok, Microsoft, and Xandr through the use of their Pixels embedded in Defendant's website. Defendant uses the Pixels to do exactly that, and more.

95.    By its use of TikTok, Microsoft, and Xandr's Pixels, Defendant aided and abetted third parties to intercept personally identifiable information and the content of sensitive communications such as health-related searches in real time while those disclosures were being sent from or received in California.

96.    By using the Pixels, Defendant aided and abetted TikTok, Microsoft, and Xandr to use or attempt to use or to communicate information previously intercepted from Plaintiff's and Class members' searches and other disclosures on Defendant's website while those disclosures were being sent from or received in California.

97.    Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's actions.

98.    CIPA imposes civil liability and statutory penalties for violations of § 631. Cal. Penal Code § 637.2.

99.    Pursuant to CIPA § 637.2, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

100.   Plaintiff and Class members are harmed by Defendant's violations of CIPA, and seek statutory and actual damages in an amount to be determined at trial.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter a judgment on his behalf and against Defendant Healthline Media, LLC, and further grant the following relief:

    a.  Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure;

    b.  Designate Plaintiff as a representative of the proposed Class and Plaintiff's counsel as Class counsel;

    c.  Grant Plaintiff the declaratory relief sought herein;

    d.  Grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

    e.  Award Plaintiff and the Class compensatory, consequential, and general damages in an amount to be determined at trial, and any other relief to which they are entitled under the law;

    f.  Award Plaintiff and the Class statutory damages, and punitive or exemplary damages, to the extent permitted by law;

    g.  Award prejudgment interest, costs, and attorneys' fees;

    h.  Award all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

    i.  Award Plaintiff and the Class such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff, individually and on behalf of the proposed Class, respectfully requests a trial by jury as to all matters so triable.

Dated: December 2, 2024

Respectfully submitted,

By: /s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan (SBN 355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California, 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

MEGAN E. SHANNON (*pro hac vice* forthcoming)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: 312.273.9476
Facsimile: 312.264.0100
megan@feganscott.com

CLASS ACTION COMPLAINT