**CLARK HILL LLP**
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Ali Bloom (SBN 347446)
abloom@clarkhill.com
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

**CLARK HILL LLP**
Chirag H. Patel (admitted *pro hac vice*)
cpatel@clarkhill.com
130 E. Randolph
Suite 3900
Chicago, IL 60601
Telephone: (312) 985-5900
Facsimile: (312) 985-5999

*Attorneys for Defendant Healthline Media LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL GLIKSMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, LLC,<br><br>Defendant. | Case No. 3:24-cv-08650-AMO<br><br>**DEFENDANT HEALTHLINE MEDIA, LLC'S NOTICE OF RULE 12 MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND [PROPOSED] ORDER**<br><br>Judge: Hon. Araceli Martinez-Olguin<br><br>Complaint filed: December 2, 2024<br><br>Date: May 15, 2025<br>Time: 2:00PM<br>Location: Courtroom 10 – 19th Floor |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 2, 2025 at 2:00 PM or as soon thereafter as the matter may be heard, before the Honorable Araceli Martinez-Olguin, in Courtroom 10 (Floor 19) of the above-entitled Court, located at San Fransico Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Healthline Media LLC ("Healthline" or "Defendant"), by and through its attorneys of record, will and hereby move for an order dismissing the Complaint, ECF No. 1 ("Complaint"), with prejudice pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff lacks Article III standing for his California Invasion of Privacy Act ("CIPA") claims because he has failed to plead an interaction with Defendant's website that would cause a cognizable injury-in-fact. Plaintiff's CIPA claims must also be dismissed for failure to state a claim under Rule 12(b)(6) due to Plaintiff's failure to plead essential elements of each statutory claim.

This motion is based upon the following memorandum of points and authorities, the declaration of Stacy Swinton ("Decl."), a proposed order; the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. RELEVANT ALLEGATIONS IN GLIKSMAN'S COMPLAINT ........ 2

A. Healthline's Website ........ 2

B. Allegations about Gliksman's Interaction with the Website ........ 5

III. ARGUMENT ........ 6

A. GLIKSMAN LACKS ARTICLE III STANDING ........ 6

1. Fed. R. Civ. 12(b)(1) Standard ........ 6

2. Gliksman Has Not Alleged an "Injury-in-Fact." ........ 7

3. Allegations of a "Bare" Procedural CIPA Violation do Not Establish Standing ........ 9

B. GLIKSMAN FAILS TO PLAUSIBLE ALLEGE A CIPA CLAIM ........ 11

1. Fed. R. Civ. P. 12(b)(6) Legal Standard. ........ 11

2. Gliksman Fails to Adequately Allege a CIPA § 631(a) Violation (Count II). ........ 11

a. The First Three Clauses of Section 631(a) Do Not Apply to Healthline, and Have Not Been Met. ........ 12

b. Gliksman's CIPA § 631(a) Aiding & Abetting Claim Fails. ........ 13

i. Gliksman Fails to Allege that Healthline Acted with the Required Intent or Knowledge. ........ 13

ii. The Underlying CIPA Violation Is Legally Deficient. ........ 14

3. Gliksman Fails to Adequately Allege a CIPA § 638.51 Violation (Count I). ........ 17

a. Collection of IP Addresses and MUIDs Are Not Actionable under CIPA § 638.51(a). ........ 17

b. Gliksman Consented to Collection of his IP Address and MUID by visiting the Website. ........ 19

C. GLIKSMAN CONSENTED TO THE DISCLOSURE OF INFORMATION.....19

1. Federal Rule of Evidence 201 Request for Judicial Notice.....19

2. Healthline's Terms of Use and Privacy Policy.....21

3. By Consenting to Healthline's ToU and Privacy Policy, Gliksman Consented to the Alleged Disclosure to the Pixel Providers.....22

IV. CONCLUSION.....23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....................11

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)....................11

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....................13

*Barclift v. Keystone Credit Servs.*,
LLC, 93 F.4th 136 (3d Cir. 2024)....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................22

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................15

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ....................14

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................9, 10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) (Koh, J.) ....................20

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................14

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................7, 8, 10

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................7

*D'Angelo v. FCA US*,
LLC, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................20

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024, R. 36-3 Opp.)....................9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .....20

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938).....18

*Esparza v. Gen Digital Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024).....11, 15, 16

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 DMS(KSC), 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) .....11, 13

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) (Davila, J.) .....12

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (*per curiam*) .....11

*Food Drug Admin. V. All. for Hippocratic Med.*,
602 U.S. 367, 368 (2024).....6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000).....6

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025).....2, 8

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) (Davilla, J.) .....23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) (Freeman, J.).....12, 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .....12

*Greenley v. Kochava, Inc.*,
No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal., July 27, 2023) .....19

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) (Donato, J.) .....8

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2024 WL 1626114 (C.D. Cal. April 2, 2024) .....13

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .....13, 14

*Huddleston v. Dwyer*,
322 U.S. 232 (1944)....................18

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....................8

*Ingrao v. AddShoppers, Inc.*,
No. CV 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024)....................15

*LaCourt v. Specific Media, Inc.*,
No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *3 (C.D. Cal. Apr. 28, 2011)....................9

*Licea v. Am. Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)....................12, 15

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)....................16

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024).
....................2, 17, 18, 19

*Lightoller v. Jet Blue Airways Corporation*,
2023 WL 3963823 (S.D. Cal. June 12, 2023)....................2, 8, 10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................15

*Matera v. Google, Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)....................20, 23

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................10

*Mikulsky v. Noom, Inc.*,
No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023)....................7

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................17

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)....................11

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)....................15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-CV-01393-JST, 2017 WL 2672113 (N.D. Cal. Jan. 19, 2017)....................11

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402-L-DDL, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ....7

*R.C. v. Walgreen Co.*,
--- F. Supp. 3d ---, No. EDCV 23-1933, 2024 WL 2263395 (C.D. Cal. May 9, 2024) ....14

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....11

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ....13, 14

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct. Jul. 09, 2024) ....8, 17

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 02, 2024) ....2, 18, 19

*Sadlock v. Walt Disney Co.*,
No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ....23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....6, 10

*Swarts v. The Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....12, 16

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. Apr. 7, 2020) ....3, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....6, 7, 9, 10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....8, 18

*United States v. Texas*,
599 U.S. 670 (2023) ....6

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) ....7, 13, 16

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ....13, 14

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) ....6

*Xu v. Reuters News & Media, Inc.*,
24 Civ. 2466 (PAE), 2025 WL 488501 (S.D.N.Y) ........ 8, 17

*Yoon v. Lululemon U.S.A. Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 8, 14

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) ........ 20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 14

**Statutes**

Federal Wiretap Act, 18 U.S.C. § 2511(2)(d) ........ 12

Pen. Code, § 631(a) ........ *passim*

Pen. Code, § 638.51 ........ *passim*

Pen. Code, § 638.51(b)(5) ........ 2, 17, 19

**Other Authorities**

CALCRIM 401 ........ 13

Fed. R. Civ. Proc., Rule 12(b)(1) ........ 6

Fed. R. Civ. Proc., Rule 12(b)(6) ........ 11

Fed. R. Evid., Rule 201(c) ........ 19

## I. INTRODUCTION

Plaintiff Daniel Gliksman's ("Plaintiff" or "Gliksman") Complaint[1] is another drop in the deluge of recent actions filed against businesses for implementing ubiquitous analytics and advertising tools on their public-facing websites. Gliksman claims that Defendant Healthline Media LLC ("Healthline") violated an antiquated wiretap and surveillance statute (the California Invasion of Privacy Act ("CIPA")) by allegedly installing third-party code ("Pixels") from TikTok, Microsoft, and Xandr (collectively, the "Pixel Providers")[2] on *one* of its public-facing informational websites (Gliksman does not specify *which* website the Complaint concerns or which one he allegedly visited).[3] Setting aside that CIPA was never intended to cover the website technologies at issue here, the Complaint fails for several independent reasons:

***First***, Gliksman fails to satisfy his burden of demonstrating a "concrete and particularized harm" sufficient to support Article III standing. ***Gliksman does not allege that he provided private or sensitive information to the Website <u>at all</u>.*** Rather, the Complaint is rife with generic descriptions about the type of information the Pixels are allegedly ***capable*** of collecting when configured or deployed in certain ways, and a host of hypothetical interactions that could allegedly lead to the collection of sensitive personal information (*e.g.*, by running a search). But Gliksman neither pleads what website he visited nor that he had any such interactions with the Website. In fact, the only information Gliksman alleges was collected by the Website during his interaction is a generic Microsoft identification number and an IP address. Compl. ¶¶ 40, 51, 59. But courts consistently hold that generic internet browsing information is not sufficiently private to establish concrete harm for Article III standing purposes. *See Section III(A), infra*.

---

[1] Plaintiff's Complaint [ECF No. 1] is cited herein as "Complaint" or "Compl."

[2] Plaintiff's Complaint refers to three website analytics tools: TikTok Pixel, Microsoft Clarity, and Xandr Adnx. Compl. ¶ 57. For consistency with the Complaint, these are collectively referred to herein as the "Pixels."

[3] As explained further below, Gliksman's Complaint refers to several websites – Healthline.com, Healthlinemedia.com, medicalnewstoday.com, greatist.com, psychcentral.com, and bezzy.com, Compl. ¶ 16. Gliksman's allegations relate to content on both Healthline.com and Healthlinemedia.com, which are independent websites. Compl. ¶ 18, 23, 45. Plaintiff alleges he visited "Healthline's website," but "website" is not defined, and he does not articulate which one he visited. Compl. ¶ 58. To the extent Gliksman's allegations can be parsed, "Website" refers to Healthline.com.

Further, Gliksman does not even attempt to allege that he has been *actually injured* – physically, economically, or otherwise – as a result of the alleged collection of his generic online information. Instead, he relies entirely on the alleged CIPA violation to do the work of satisfying Article III. But Article III, even for a CIPA claim, requires harm to be real and factually pled, not hypothetically theorized. *Lightoller v. JetBlue Airways Corporation*, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) ("A bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact"); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (Cal. Pen. Code § 638.51 (pen register provision) does not codify a substantive privacy right).

***Second,*** even if Gliksman could demonstrate Article III standing (he does not), he fails to plausibly allege a CIPA violation under § 631(a) (aiding and abetting a CIPA violation) or § 638 ("pen register" devices). Gliksman's § 631(a) aiding and abetting claim fails because Gliksman does not plausibly allege: (a) a CIPA violation by the Pixels, and (b) facts demonstrating the requisite intent by Healthline to aid and abet the Pixels' violation. (*Section III(B)(i), infra*).

Gliksman's § 638.51 "pen register" claim also fails because (i) collection of generic identification numbers and IP addresses, (Compl. ¶¶ 80, 82), is not actionable because it is not private information, *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 02, 2024), and (ii) even if it were, Gliksman's voluntary provision of this information constitutes consent under Cal. Pen. Code § 638.51(b)(5), *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). *See Section III(B)(ii), infra*.

***Third***, Gliksman's CIPA claims fail because Gliksman consented to the collection and sharing of his information with the Pixel Providers when he interacted with the Website. *See Section III(B), infra*.

For all of these reasons, this Court should dismiss Gliksman's Complaint with prejudice.

## II. RELEVANT ALLEGATIONS IN GLIKSMAN'S COMPLAINT

### A. Healthline's Website

Healthline operates a public and informational website at Healthline.com. Compl. ¶ 18.

Website visitors may freely browse various informational articles without creating an account. California users are able to make privacy choices in the Website footer. Decl. ¶ 20.[4] Visitors of Healthline.com (the "Website") consent to the Website's Terms of Use and Privacy Policy by using the Website. Decl. ¶ 13.

Gliksman alleges that Healthline installed third-party "Pixels" – TikTok Pixel, Microsoft Clarity, Xandr Adnx – on its Website. ¶ 19. These Pixels allegedly allow "Healthline to place advertisements on other companies' websites." Compl. ¶ 21. As to each of the Pixels, Gliksman alleges as follows:

**TikTok Pixel**: Gliksman's complaint discusses three technologies that may be available within the TikTok Pixel: fingerprinting, events, and "AutoAdvanced Matching":

*Fingerprinting*. Gliksman alleges that the TikTok Pixel *is potentially capable of* collecting: "information such as ad/event details (related to the clicked ad), timestamp (time the page was viewed), IP address (which can identify a person's geographic location), device details (make, model, operating system), and browser information." Compl. ¶ 30. The collection of this information relates to a feature called "fingerprinting" through which the TikTok Pixel collects "anonymous website visitor" information and then "matches it with existing data" in TikTok's database. Compl. ¶¶ 30-32. Gliksman does **not** allege that the "fingerprinting" feature was enabled on the Website at the time of his visit or at all, nor does he allege that any of the above information was actually collected about him. *See id.*

*Events*. Similarly, Gliksman alleges that the TikTok Pixel *can be configured* to allow Healthline to retain data collected by the TikTok Pixel, including specific interactions by the user with the website (*e.g.*, "adding items to a cart, filling out forms, or making purchases"). Compl. ¶ 31. Gliksman does **not** allege that the "events" feature was enabled on the Website at the time of his visit or at all, nor does he allege that any of these specific interactions were actually collected about him. *See id.*

---

[4] As set forth in Section III(C)(1), "websites and their contents may be judicially noticed," and introduced through a declaration in a Rule 12 motion. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 142 (N.D. Cal. Apr. 7, 2020). Healthline's Motion is supported by the Declaration of Stacy Swinton ("Decl.").

*AutoAdvanced Matching*. Finally, Gliksman alleges that the TikTok Pixel has a feature called "AutoAdvanced Matching" that allows it to cross-reference the anonymous information it collects across various other websites to identify an anonymous website user. Compl. ¶¶ 32-34. This feature "works by automatically collecting additional information from users who interact with a business's website or app," (*e.g.*, their name, date of birth, phone number, or address).[5] Compl. ¶¶ 32-34. Gliksman alleges that Healthline's Website has enabled this feature, but he does ***not*** allege any interaction on the Website that included the submission or collection of his name, date of birth, phone number, address, or any other information. Compl. ¶¶ 36-37.

**Microsoft Clarity**: Gliksman alleges that the Website discloses "personal information, along with users' Microsoft Unique IDentifier, ('MUID') to Microsoft." Compl. ¶ 40. Gliksman alleges that the MUID is "unique to each user." Compl. ¶ 41. Gliksman discusses two features on Clarity: user tracking and collection of website search terms.

*User Tracking*. Gliksman alleges generically that a website owner who installs the Clarity "source code" can "track visitor actions on their website," which are then shared with Microsoft. Compl. ¶¶ 42-43. Gliksman alleges this "source code" was installed on the Website, but does **not** allege what *types of data* were allegedly shared with Microsoft based on Healthline's configuration of Clarity (or specifically that private information about him was collected or shared at all). Compl. ¶¶ 42-43.

*User Searches*. Gliksman alleges that when a user submits a search on the Website, the search term and the MUID are collected by Microsoft. Compl. ¶ 45. Gliksman does not allege he ever entered or ran a search on the Website at all (he alleges only that he ***viewed*** undefined "health and wellness content and articles). *See* Compl.

**Xandr Adnx:**[6] This pixel, now allegedly owned by Microsoft, "allow[s] companies to sell advertising space on their Website." Compl. ¶ 50. Gliksman alleges that Adnx collects a user's IP

[5] Gliksman's allegations about the information collected are inconsistent. The Complaint indicates that only email addresses and phone numbers are collected by TikTok *if* AutoAdvanced Matching is enabled (and that the Website actually collects that information from the visitor). Compl. ¶¶ 36, 37.

[6] Gliksman may be referring to "Xandr Adnxs," but this motion refers to "Xandr Adnx" for consistency with Gliksman's Complaint.

address when a user "interacts" with a website. Compl. ¶ 51. The Complaint alleges that certain "interactions" are also conveyed to Adnx, but does not articulate ***which*** interactions (or specifically that these interactions conveyed private information). Compl. ¶ 53. Gliksman does not allege that any of his information was collected by or disclosed via the Adnx pixel.

Finally, Gliksman also alleges generally that Healthline uses a platform called "Attribute" that allows advertisers to "improve their targeted advertising campaigns on Healthline's website" by using the "proprietary data collected" on the Website. Compl. ¶ 23. Again, Gliksman does not allege that his information was ever collected or used in this "Attribute" functionality.

### B. Allegations about Gliksman's Interaction with the Website

Gliksman alleges he was a "resident and citizen of California" at "all relevant times." Compl. ¶ 11. Gliksman alleges only that he "visited [Healthline's] Website numerous times over the last year to ***view*** health and wellness content and articles." Compl. ¶ 58 (emphasis added). Gliksman **<u>does not</u>** allege that he:

- Submitted a search on the Website;
- Submitted *any* personal or sensitive information through the Website, including his name, address, or email address;
- Created an account;
- Made a purchase;
- Had any "interaction" with the Website besides viewing free informational content and articles; or
- Browsed the website using a personal device.

*See* Compl. ¶¶ 58-59. To the contrary, Gliksman expressly disavows subscribing to Healthline's newsletter. Compl. ¶ 59. Gliksman does not articulate what content he viewed on the Website. *See* Compl. ¶ 58. Gliksman also does not allege what device he used to access Healthline's Website, or that he accessed the Website using a personal device. *See* Compl.

In sum, the **<u>only</u>** information he alleges was collected by the Website and disclosed via the three Pixels is (a) his **MUID** (without any other identifying information) to Microsoft Clarity and (b) his **IP address** (without any other identifying information) to Xandr Adnx. Compl. ¶¶ 40, 51,

59. Gliksman makes a conclusory allegation that he was "harmed," but does not allege any specific injury caused by Microsoft seeing its own generic identification number or Xandr seeing his IP address.

## III. ARGUMENT

### A. GLIKSMAN LACKS ARTICLE III STANDING

#### 1. Fed. R. Civ. 12(b)(1) Standard.

Article III standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). A "general legal, moral, ideological, or policy objection" does not create Article III standing. *Food & Drug Admin. v. All. for Hippocratic Med*., 602 U.S. 367, 368 (2024). Nor does a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

To meet the requirements of Article III standing, a plaintiff must show that: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *see Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023), *quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Conclusory allegations are inadequate; Gliksman must "clearly . . . allege facts demonstrating each [standing] element." *Winsor*, 62 F.4th at 523, *quoting Spokeo*, 578 U.S. at 338. Even in a putative class action, Gliksman must "allege and show that [he] personally [has] been injured." *Winsor*, 62 F.4th at 523 (internal quotations and citations omitted).

Merely alleging a statutory violation is insufficient to establish Article III standing. *Spokeo*, 578 U.S. at 341. The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (*quoting Spokeo*, 578 U.S. at 341). As the Supreme Court explained: "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant

over the defendant's violation of . . . law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of . . . law." *Id. at* 426-27. Without this distinction, legislatures could "authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any . . . law." *Id.* at 428. Instead, "[o]nly those plaintiffs who have been "*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original).

### 2. Gliksman Has Not Alleged an "Injury-in-Fact."

This District Court and several others have held an alleged CIPA claim does not relieve Gliksman of his obligation to allege discrete concrete harm resulting from the alleged statutory violation. *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, *1 (N.D. Cal. Oct. 10, 2023) (Corley, J.) ("While [p]laintiff alleges Defendant violated CIPA, ***[p]laintiff fails to allege any facts to support an inference Defendant engaged in any kind of privacy violation***" (emphasis added)).

First, Gliksman must allege facts that show that his qualifying private information was ***actually collected*** in the complained-of manner. To be sure, "generalized and conclusory allegations that the [Pixels are] capable of capturing private data" are "insufficient to assert that [Gliksman] suffered a concrete injury as a result of [Healthline's] conduct." *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024).

Second, in determining the existence of a "concrete harm" in the online collection context, the "nature of the information is paramount." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 63 (W.D. Pa. 2023) (citing *TransUnion v. Ramirez*, 594 U.S. 413, 425 (2021)). Thus, courts have continued to recognize that to plead a "concrete" harm sufficient to confer standing, plaintiffs must allege the actual ***collection or disclosure*** of information that is truly personal or private. *See Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (to demonstrate a concrete harm based on a privacy interest, "[p]laintiff must show that the specific information allegedly disclosed "implicates a protectable privacy interest"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 480 (N.D. Cal. 2021) ("The Ninth Circuit has held that the disclosure of ***sensitive private information*** constitutes a 'concrete and particularized' injury for

purposes of Article III . . . .") (emphasis added); *GameStop*, 689 F. Supp. 3d at 65 (dismissing the plaintiff's statutory and common law privacy claims, noting that a claim for "public disclosure of private information requires, obviously 'private facts'") (emphasis added); *see also Barclift v. Keystone Credit Servs.*, LLC, 93 F.4th 136, 144 (3d Cir. 2024) (characterizing harm caused by public disclosure of private information as "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny") (emphasis added); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022) (no standing when information was not "private" and its disclosure would not be "highly offensive to a reasonable person").

And to be sure, the requirement that Gliksman demonstrate the collection or disclosure of truly personal or private information is of equal necessity with CIPA § 638.51 "pen register" claims. *Xu v. Reuters News & Media, Inc.*, 24 Civ. 2466 (PAE), 2025 WL 488501, at *3-6 (S.D.N.Y.) (CIPA § 638.51 requires a concrete injury, and "[plaintiff] has not identified any legal authority—contemporary or historical—that recognizes a protected interest in IP address-like information, such that [defendant's] disclosure of it would inflict a concrete harm"); *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. Jul. 9, 2024) (CIPA § 638.51 requires a concrete injury-in-fact); *Gabrielli*, 2025 WL 522515, at *8 (CIPA § 638.51 does not codify a substantive privacy right and thus requires a distinct concrete harm).

The only information Gliksman alleges was transmitted to a third-party is (a) his MUID to Microsoft and (b) his IP address to Xandr. Compl. ¶¶ 40, 51, 59. But, this type of internet browsing information does not qualify as private or personal information. *See, e.g. United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (Donato, J.) (finding no Article III standing because "there is no legally protected privacy interest in IP addresses"). *Yoon v. Lululemon U.S.A. Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) ("[C]ourts have been less willing to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company."); *Lightoller*,

2023 WL 3963823 *4 ("plaintiff did 'not allege that she disclosed any personal information when she visited the website,' she had failed to demonstrate a concrete harm that 'bears a close relationship to the substantive right of privacy (*i.e.*, an individual's right to control information concerning his or her person)'"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("[p]laintiff does not allege that she disclosed any ***sensitive information*** to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy." (emphasis added)).

In addition to alleging the disclosure of protected private information, Gliksman must also allege ***how*** he was harmed by the alleged disclosure. *See LaCourt v. Specific Media, Inc.*, No. SACV-10-1256-GW-JCGX, 2011 WL 1661532, at *3 (C.D. Cal. Apr. 28, 2011) (finding a lack of Article III standing for an alleged CIPA violation where plaintiffs did "not specifically allege that [p]laintiffs themselves were affected" by defendant's conduct or suffered economic injury or harm to their computer). **Gliksman's Complaint does not contain a *single* allegation of any harm or injury that he (or anyone else) suffered.**

Absent any allegation showing that Gliksman's ***private information*** was ***actually collected or disclosed***, and further allegations concerning how, if at all, Gliksman was injured by the interception, Gliksman's Complaint is abstract at best. *See TransUnion*, 594 U.S. at 440 (requiring an alleged injury to be "real and not abstract"). Gliksman's claims fail to meet this Constitutional requirement because he has not "suffered any harm *at all*." *Id.* (emphasis in original).

**3. <u>Allegations of a "Bare" Procedural CIPA Violation do Not Establish Standing.</u>**

Gliksman cannot salvage his otherwise deficient allegations by asserting a bare violation of CIPA. Mere assertions of statutory violations – divorced from concrete harm – are not sufficient for Article III standing. *TransUnion*, 594 U.S. at 440. Rather, a procedural violation must still yield or risk actual harm to meet the requirements of Article III. *See Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024, R. 36-3 Opp.) ("[p]laintiff lacks standing because her allegations are insufficient to state a claim under the

CIPA provision she invokes”); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023) (“a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III”).

*Byars* and *Lightoller* are directly on point. Applying *Spokeo* and *TransUnion*, those courts rejected the plaintiffs’ alleged bare violation of CIPA because they failed to plead any plausible allegation that their confidential or personal information was disclosed. *See Byars*, 2023 WL 2996686, at *3 (refusing to apply decisions predating *TransUnion*); *Lightoller*, 2023 WL 3963823, at *3 (“[u]nder the Supreme Court’s holding in *TransUnion*, a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact.”). Other courts have applied *Spokeo* and *TransUnion* with similar results. In *GameStop*, for example, the court held that the defendant’s alleged statutory violation did not constitute a “concrete injury” sufficient to establish standing. 689 F. Supp. 3d at 66 n.2. There, the plaintiff asserted, among other claims, violations of a state wiretapping statute based on the retailer’s use of a program that recorded, saved, and replayed visitor interactions with its website. *Id*. at 61. The plaintiff asserted that the act of the wiretap intruded upon her privacy, constituting both an injury under the statute and harm for “invasion of privacy.” *Id*. at 64. The court rejected this “circular reasoning,” concluding that it “simply folds back onto a bare statutory violation, which the Supreme Court has clarified cannot be the basis for standing.” *Id*. (recognizing courts’ “responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III”) (internal quotations omitted).

This case is no different. Gliksman’s alleged “injury” amounts to nothing more than mere statutory violations. Accepting Gliksman’s logic would run afoul of *Spokeo* and *TransUnion* because it requires the Court to “begin and end” its analysis “with the statutory violation.” *GameStop*, 689 F. Supp. 3d at 64. The reasoning should be rejected here, as it was in each of the foregoing cases.

Gliksman lacks Article III standing and his Complaint must be dismissed.

### B. GLIKSMAN FAILS TO PLAUSIBLE ALLEGE A CIPA CLAIM

#### 1. <u>Fed. R. Civ. P. 12(b)(6) Legal Standard.</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Iqbal*, 556 U.S. at 678) (emphasis added). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 2672113, at *1 (N.D. Cal. Jan. 19, 2017) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). However, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Iqbal*, 556 U.S. at 677-79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see Gen Digital Inc.*, 2024 WL 655986 at *2 ("[t]he court, however, need not accept as true a legal conclusion couched as a factual allegation") (internal quotations omitted).

#### 2. <u>Gliksman Fails to Adequately Allege a CIPA § 631(a) Violation (Count II).</u>

Section 631(a) contains four clauses: (1) intentional wiretapping; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without consent; (3) attempting to use or disclose information obtained through either of the first two actions; or (4) aiding, agreeing with, employing, or conspiring with others to violate the prior three clauses. Cal. Penal Code § 631(a); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985); *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 3761293, *1 (S.D. Cal. Aug. 5, 2024). Although Gliksman only appears to assert a claim under Clause Four (aiding and abetting), Gliksman's § 631(a) claim fails under all four clauses.

**a. The First Three Clauses of Section 631(a) Do Not Apply to Healthline, and Have Not Been Met.**

***Clause One (intentional wiretapping).*** This clause applies only to telephonic communications, and not internet communications. *Swarts v. The Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (courts have "uniformly" interpreted clause as excluding internet communications); *see also Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *4 (C.D. Cal. Mar. 7, 2023) ("[c]ourts have consistently interpreted this clause as applying only to communications over telephones and not through the internet"). Compl. ¶¶ 40, 51, 59. Gliksman's Complaint concerns the Website. Accordingly, Clause One does not apply as a matter of law.

***Clause Two (eavesdropping).*** This clause does not apply to parties involved in the communication. Cal. Penal Code § 631(a); *Swarts*, 689 F. Supp. 3d at 744-45; *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (Beeler, M.J.) ("a party to a communication can record it (and is not eavesdropping when it does)") (citations omitted); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017) (Davila, J.) (analogizing Federal Wiretap Act, 18 U.S.C. § 2511(2)(d), which states that a "person [who] is a party to the communication" is not guilty of eavesdropping). Gliksman's CIPA theory is that alleged "communications" with Healthline were "eavesdropped upon" by the Pixels. Compl. ¶ 94. As Healthline is alleged to be a "party" to "communications," Clause Two does not apply as a matter of law.

***Clause Three (use or disclosure of information* obtained via *Clause One or Two).*** Clause Three is dependent upon Gliksman demonstrating a violation of either Clause One or Clause Two. *Swarts*, 689 F. Supp. 3d at 744. Because Gliksman's Clause One and Clause Two claims fail as a matter of law, so does his Clause Three claim. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (Freeman, J.) ("Because [p]laintiffs have not [shown a violation of the first or second clause], they also have failed to plead a violation of the third clause").

**b. Gliksman's CIPA § 631(a) Aiding & Abetting Claim Fails.**

Gliksman's attempt to plead a Section 631(a) aiding and abetting claim also fails because Gliksman does not allege: (a) an underlying violation of CIPA by any of the Pixels, **and** (b) Healthline's express intent and knowledge of the underlying violation.

i. Gliksman Fails to Allege that Healthline Acted with the Required Intent or Knowledge.

Clause Four criminalizes a person who "aids, agrees with, employs, or conspires with [another] person to ***unlawfully*** do, or permit, or cause to be done" any of the actions prohibited by the other clauses in the section. Cal. Penal Code § 631(a) (emphasis added). To satisfy the "unlawfully" requirement, Gliksman must demonstrate that Healthline intentionally or willfully allowed a CIPA violation. *Id*; *see also Esparza*, 2024 WL 3761293, at *2.

Because Section 631(a) is a criminal statute, liability under the fourth clause only attaches if the defendant "knew the perpetrator intended to commit the crime and intended to aid and abet the perpetrator in committing the crime." *Id.*, *citing* CALCRIM 401. This accords with recent CIPA caselaw from California district courts that have affirmed Section 631(a)(4)'s intent requirement. *See Valenzuela v. Kroger Co.*, 2024 WL 1336959, *4 (C.D. Cal. Mar. 28, 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (citing *Valenzuela*); *see also Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 1626114, *4 (C.D. Cal. April 2, 2024) (referring to clause four as an "aiding and abetting provision"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ("Section 631 also contains an aiding and abetting provision"); *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (requiring allegations that defendant knowingly and willfully abetted or aided to establish a claim under clause four).

Gliksman does not make any allegation that would rise to the level of criminal aiding and abetting by Healthline. He does not claim that Healthline knew that the Pixels' actions were an alleged breach of duty or violated a statute, or that Healthline agreed to assist each of the Pixel Providers in a knowing breach of that duty. Rather, Gliksman merely parrots CIPA's "aiding and abetting" statutory language verbatim, and inserts Healthline. *See* Compl. ¶¶ 89-95. As in *UAG*

*Escondido*, 2024 WL 3761293 at *2, *Kroger*, 2024 WL 1336959 at *4, *Rodriguez*, 722 F. Supp. 3d at 1124, and *Heiting*, 709 F. Supp. 3d at 1019, Gliksman has failed to adequately allege any facts to show Healthline's intent and knowing violation of CIPA. Accordingly, this Court should dismiss Gliksman's Section 631(a)(4) claim.

ii. The Underlying CIPA Violation Is Legally Deficient.

Gliksman alleges that the Pixel Providers – not Healthline – violated CIPA by collecting information from his visit(s) to the Website. Gliksman claims that Healthline "aided, agreed with, employed, and conspired" with the Pixel Providers in their alleged violative conduct. Compl. ¶¶ 95-96. But the CIPA violation underlying Gliksman's aiding and abetting theory against Healthline is legally defective in at least three respects, and each require dismissal of Gliksman's CIPA claim:

***Contents***. To state a claim under CIPA, Gliksman must allege facts that plausibly show that the "contents" of his communications were "read or attempted to be read" by a third-party without his consent. Cal. Penal Code § 631(a). Gliksman fails to demonstrate the interception of the "contents" of a communication as a matter of law.

Under CIPA, "'[c]ontents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" known as "record information." *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014). Information that reveals a "substantive message" about a user's communication is "contents." *R.C. v. Walgreen Co*., --- F. Supp. 3d ---, No. EDCV 23-1933, 2024 WL 2263395, at *16 (C.D. Cal. May 9, 2024). On the other hand, usernames, passwords, geographic information, IP addresses, app usage data, and time/date/duration of an interaction, are not "contents." *Yoon*, 549 F. Supp. 3d at 1082. "At a minimum, [p]laintiffs must demonstrate "that the contents were not record information." *Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (user name and password is record information).

Despite speculating as to all of the information the Pixels *could be capable of* capturing (Compl. ¶¶ 29-57), Gliksman does not allege the "content" of any communication was actually captured during his visit to the Website. At best, Gliksman alleges that his MUID and IP address

were collected. *Id*. Even taking this allegation as true, such information is not "contents" because it reveals no "substantive message" about Gliksman's interaction with the Website. *See Ingrao v. AddShoppers, Inc.*, No. CV 24-1022, 2024 WL 4892514, at *14-16 (E.D. Pa. Nov. 25, 2024) (dismissing CIPA claim where plaintiff received marketing email capturing her personal browsing history). As Gliksman cannot demonstrate that the "contents" of his communication(s) were intercepted, his CIPA claim fails.

***In Transit***. "The second clause of section 631(a) requires that messages be intercepted while *in transit*." *Licea*, 2023 WL 2469630, at *8 (*citing Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021)) (emphasis added). Specifically, Gliksman must allege that the interception occurred "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California." *Mastel*, 549 F. Supp. 3d at 1135 (emphasis added). "Courts in the Ninth Circuit have interpreted the in-transit requirement narrowly." *Id*. (citing *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007)). Courts have also acknowledged that, given the speed of modern internet communications, the wiretapping statutes' application to such "form[s] of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). Section 631(a) applies only if the interception occurs during the "narrow window" in which the communication is in transit. Id. at 951-52 (citation omitted). Thus, "interception" of electronic communications is "virtually impossible." See *id*. at 952 (quotation omitted).

Here, Gliksman alleges only that he "viewed" content on the Website on some undefined dates and times, and that his MUID and IP address were at some point or in some way intercepted. Compl. ¶ 58. The Complaint includes no allegations whatsoever concerning even the basic mechanics of this alleged interception, upon which the Court could find that it occurred while "in-transit." On this point, *Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024), is instructive. In *Gen Digital*, the plaintiff alleged having "conducted a brief conversation with an agent of [d]efendant through the website chat feature," combined with general allegations that defendant allowed third-party software to be "secretly" installed on the website. *Id.* at *1-4. The court held that plaintiff failed to plausibly allege an "in transit"

interception because he failed to allege "specific facts about . . . when the interception took place, and how the interception took place." *Id*. at *4. Gliksman here does not allege any facts as to when or how the TikTok Pixel, Microsoft Clarity, and/or Xandr Adnx intercepted *Gliksman's information*. Compl. ¶¶29-54.

At best, Gliksman makes a single conclusory allegation that interception by the TikTok Pixel was "automatic." Compl. ¶ 34. The Complaint is silent on the other two Pixels, and Courts have already found that an allegation that a pixel "automatically" collects information is insufficient to demonstrate "how" and "when" each of the Pixels intercepts information "in transit," *Gen Digital*, 2024 WL 655986, at *4. Indeed, in *Gen Digital*, the plaintiff alleged that the software "'automatically acquires and transmits' communications "without any active input' from humans," and that the interception occurred in real time. 2024 WL 655986 at *4. The *Gen Digital* court found these allegations "merely restated the pleading requirement" and were insufficient. *Id.*; *see also Valenzuela*, 674 F. Supp. 3d at 758 (plaintiff failed to provide "detail as to how the interception occurs," and thus his "simultaneity claims are just too conclusory to survive."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("[p]laintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"); *Swarts*, 689 F. Supp. 3d at 746 (same).

Because Gliksman fails to allege facts showing any interception while in transit, his CIPA claim must be dismissed.

***Willfully***. Last, Gliksman fails to allege facts that demonstrate "willful" CIPA violations by each of the Pixels. Cal. Penal Code § 631(a). As noted above, this is the same intent standard – willfulness – applied under the aiding and abetting clause of Section 631(a). *See* § III(B)(2)(b)(i), *supra*. Here, Gliksman does not allege any facts that would plausibly demonstrate that each of the Pixels willfully violated CIPA.

For all the reasons set forth above, this Court should dismiss Gliksman's CIPA § 631 claim.

**3. Gliksman Fails to Adequately Allege a CIPA § 638.51 Violation (Count I).**

"To state a claim for a violation of CIPA's pen register provision, a plaintiff must allege that a defendant installed a pen register without a court order." *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *2 (N.D. Cal. Dec. 12, 2024) (internal quotations omitted) (Breyer, J.). A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.51. Gliksman's pen register claim fails because:

***First***, as explained above, courts interpreting CIPA's pen register statute have held that a plaintiff must demonstrate the interception of private information to have an actionable claim. *Rodriguez*, 2024 WL 3886811, at *4 (no actionable CIPA § 638.51 claim for collection of an IP address); *Xu*, 2025 WL 488501, at *6 (same; finding no contemporary or historical privacy recognition in "IP address-like" information). No privacy protection exists in an IP address or a MUID.

***Second***, courts have similarly rejected CIPA claims under § 638.51's consent exception. *See* Cal. Pen. Code § 638.51(b)(5)("[a] provider of electronic or wire communication service may use a pen register" . . . "[i]f the consent of the user of that service has been obtained"). Courts have held that information voluntarily provided by a website visitor constitutes consent. *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (plaintiff consented to the provision of his IP address by visiting the website). Gliksman consented to the transmission of his IP address and MUID by visiting the Website.

**a. Collection of IP Addresses and MUIDs Are Not Actionable under CIPA § 638.51(a).**

Gliksman's CIPA § 638.51 claim fails because an IP address and MUID are not private information. As explained above, California courts (and others) have held that a plaintiff must demonstrate the interception of private information to have an actionable CIPA claim. *Rodriguez*, 2024 WL 3886811, at *4; *Xu*, 2025 WL 488501, at *6. *See also Hickory Farms LLC*, 2024 WL

1698147, at *4 (in dismissing CIPA § 638.51 claim, distinguishing an IP address from other types of information considered private).

The Ninth Circuit explained in *Forrester*, 512 F.3d at 510, that "[i]nternet users have no expectation of privacy in . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"). In other words, an "IP address enables a device to communicate with another device." *Rodriguez*, 2024 WL 5184413, at *2 (dismissing CIPA § 638.51 claim alleging the collection of an IP address). Thus, "[p]laintiff's computer could not have accessed Defendant's [W]ebsite unless [he] provided [his] IP address." *Id*.

The California Superior Court recently acknowledged in *Hickory Farms LLC* that an interpretation of CIPA's pen register statute that would create a violation against "every single entity voluntarily visited by a potential plaintiff" solely for "providing an IP address for purposes of connecting the website" was against California public policy because it "would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability." *Id*. at *4. For that reason, California courts interpreting the pen register provision have focused on the sensitivity of the information collected. *See id.*; *Rodriguez*, 2024 WL 5184413, at *2. Thus, in *Rodriguez*, the California Superior Court held that "IP address[es] [are] not the type of information that parties are prohibited from collecting by CIPA" because they are not private information. This Court should follow *Rodriguez*.[7]

And the same reasoning applies to the alleged collection of Gliksman's MUID. The MUID is a generic identifier, and Gliksman has not identified any contemporary or historical analog that could create a privacy interest in a generic ID. *Rodriguez* is again persuasive. The *Rodriguez* court found that no privacy interest exists in an IP address because it does not disclose "sensitive" "outgoing information." 2024 WL 5184413, at *2. The court distinguished an IP address, which "could reveal the device's state, city, and zip code" (and is not private) from other types of sensitive

[7] Under the *Erie* Doctrine, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts should defer to state court interpretations of state law. *See also Huddleston v. Dwyer*, 322 U.S. 232, 237 (1944) (per curium) (same).

outgoing data, like "outgoing telephone numbers, outgoing email addresses, IP addresses of websites visited, location data that reveals sensitive information, and cell site information." *Id*. (citations omitted). Similarly, in *Hickory Farms LLC*, 2024 WL 1698147, at *4, the California Superior Court rejected a § 638.51 claim alleging that the collection of IP addresses by distinguishing IP addresses from the "unique fingerprinting" information that was being collected in *Greenley v. Kochava, Inc*., No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *15–16 (S.D. Cal. Jul. 27, 2023). Here, a generic identifier (a MUID) is no different from an IP address because it does not reveal any sensitive information about Gliksman. Under *Rodriguez* and *Hickory Farms LLC*, neither the IP address nor the MUID allow for an actionable pen register claim because neither contains any sensitive outgoing information. Accordingly, this Court should dismiss Gliksman's claim.

**b. Gliksman Consented to Collection of his IP Address and MUID by visiting the Website.**

In *Hickory Farms LLC*, 2024 WL 1698147, at *4, the California Superior Court held that the plaintiff had no privacy interest in his IP address because he consented to the provision of that information by visiting the Website. Gliksman's voluntary provision of his IP address and MUID by visiting the Website provides an additional and distinct basis to dismiss his Complaint. *See* Cal. Pen. Code § 638.51(b)(5)("provider of electronic or wire communication service may use a pen register . . . [i]f the consent of the user of that service has been obtained"). Courts have held that information voluntarily provided by a website visitor constitutes consent.

For all the reasons set forth above, this Court should dismiss Gliksman's CIPA § 638.51 claim with prejudice.

**C. GLIKSMAN CONSENTED TO THE DISCLOSURE OF INFORMATION**

**1. <u>Federal Rule of Evidence 201 Request for Judicial Notice.</u>**

Healthline make a Federal Rules of Evidence 201 request for the Court to take judicial notice of Healthline's applicable Terms of Use ("ToU") and Privacy Policies– that are verified and incorporated into this Motion. A court "may take judicial notice on its own" or "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid.

201(c) (emphasis added). "In general, websites and their contents may be judicially noticed." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc*., 445 F. Supp. 3d 139, 142 (N.D. Cal. Apr. 7, 2020). These documents show that Gliksman authorized the data sharing of which he now complains.

The Court may look beyond the complaint in a Rule 12 motion to "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the Gliksman's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted); *see also Zella v. E.W. Scripps Co*., 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) ("a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'").

All of these factors are met here. First, Gliksman specifically references implementation of the Pixels on Healthline's Websites and the information allegedly collected by those tools, (Compl. ¶¶ 29-57), and Gliksman asserts that he utilized Healthline's website, which includes a Privacy Policy, (Compl. ¶ 58). Second, the central issue in this case is the Website and its alleged data collection practices, which are disclosed and consented to in the applicable ToU and Privacy Policy. And third, the attached copies are authenticated. Defendant's representative, and Court's routinely take judicial notice of terms of service and privacy policies that appear on public policies. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 618 (N.D. Cal. 2021) (Koh, J.) (taking judicial notice four version of defendant's privacy policy) (citing *In re Google Assistant Privacy Litig*., 457 F. Supp. 3d 797, 813–14 (N.D. Cal. 2020) (taking judicial notice of Google's Terms of Service, Privacy Policy, and a Google blog post); *Matera v. Google, Inc*., 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) (taking judicial notice of Google's Terms of Service, "various versions of Google's Privacy Policy," and a Google webpage entitled "Updates: Privacy Policy") (parentheticals in original)). See also *D'Angelo v. FCA US*, LLC, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024) (taking judicial notice of a website's privacy policy and screenshots of the website's homepage and initial cookie disclosure).

**2. <u>Healthline's Terms of Use and Privacy Policy.</u>**

Gliksman filed his Complaint on December 12, 2024, and he alleges visiting one of Healthline's websites "numerous times *over the last year*." Compl. 58 (emphasis added). Assuming Gliksman is referring to the Healthline.com Website, the applicable ToU and Privacy Policy are those that were in effect between December 12, 2023 and December 12, 2024. Two versions of the ToU and Privacy Policy were in effect during that period. Decl. ¶¶ 3-10. However, the material terms, as discussed below, are identical in both versions. Decl. ¶¶ 11-18.

Healthline's Terms of Use ("TOU") "govern [users] access to and use of Healthline's suite of websites and mobile applications" – Including the Website. Decl. ¶ 11 .The TOU also "incorporate[s] by reference, . . . the Privacy Policy." Decl. ¶ 12. The TOU further states that

> Please read these Terms of Use carefully before you start to use the Services.[8] BY **ACCESSING, BROWSING, OR USING** THE SERVICES (INCLUDING YOUR SUBMISSION OF INFORMATION TO THE WEBSITE), YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND **AGREED TO BE BOUND BY THESE TERMS OF USE, INCLUDING THE PRIVACY POLICY** (WHICH IS INCORPORATED HEREIN BY REFERENCE), AND TO COMPLY WITH ALL APPLICABLE LAWS AND REGULATIONS. You agree that the Terms of Use, combined with your act of using the Services, has the same legal force and effect as a written contract with your written signature and satisfy any laws that require a writing or signature. You further agree that you shall not challenge the validity, enforceability, or admissibility of the Terms of Use on the grounds that it was electronically transmitted or authorized.

Decl. ¶ 13 (uppercase in original; bold added). As to advertising and third-party information sharing the TOU and Privacy Policy state as follows:

- "Healthline may agree to allow advertisers to respond to certain search terms with advertisements or sponsored content." Decl. ¶ 14.
- "All information We collect on the Services is subject to our Privacy Policy. By using the Services, you consent to all actions taken by Us with respect to your information in compliance with the Privacy Policy." Decl. ¶ 15.

---

[8] "Services" is defined as the Website and Apps, collectively. Decl. ¶ 13 nt. 2.

- "By using or otherwise accessing the Services, you acknowledge the applicability of this Policy." Decl. ¶ 16.
- "Depending on how you interact with the Services, we may collect information directly from you, automatically, and/or from other sources." Decl. ¶ 17.
- "We and other parties may use cookies and similar technologies like pixels (also known as clear GIFs) to collect your data." . . . "The cookies on the Services may be set by us (first-party cookies) or by third parties (third-party cookies)." Decl. ¶ 18.

### **3. <u>By Consenting to Healthline's ToU and Privacy Policy, Gliksman Consented to the Alleged Disclosure to the Pixel Providers.</u>**

The Website displays a footer link to all visitors from California that allows the visitors to adjust their cookie preferences. Decl. ¶ 20. Because Gliksman has been a California resident "at all relevant times," Compl. ¶ 11, he was displayed the footer link and consented to the TOU and Privacy Policy through this continued use of the Website, Compl. ¶ 58. Additionally, the Website' home page prominently displays links to its ToU and Privacy Policy:




Fig. 1 (https://www.healthline.com/) (last accessed February 26, 2025). *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("if a website offers contractual terms to those who use the site, and *a user engages in conduct that manifests her acceptance* of those terms, an enforceable agreement can be formed" (emphasis added)).

As set forth above, all relevant versions of the ToU and PP informed Gliksman that continued use of the Website (*e.g.*, "accessing, browsing, or using" the Website) constituted Gliksman's "agree[ment] to be bound by" the ToU and Privacy Policy. Decl. ¶ 13. In *Ghazizadeh*

*v. Coursera, Inc*., 737 F. Supp. 3d 911, 933 (N.D. Cal. 2024) (Davilla, J.), this district court held that a website user's continued use of [defendant's services [was] sufficient to demonstrate manifestation of consent to the [defendant's] updated terms, where the terms stated that the "continuing use" of the services constituted consent. *See also Sadlock v. Walt Disney Co*., No. 22-CV-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("continued use is sufficient to establish assent") (Chen, J.); *Matera v. Google Inc*., No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (plaintiff was bound by updated privacy policy at the time is was posted on defendant's website).

*Matera* is instructive. *Id*. In *Matera*, the defendant website terms of services stated, "You should look at the terms regularly. We'll post notice of modifications to these terms on this page . . . . If you do not agree to the modified terms for a Service, you should discontinue your use of that Service." *Id*. The District Court held the provision directing website visitors to review the website for amendments and the stating that continued use constituted consent, was sufficient to bind the website visitor to the amended terms. *Id*. Healthline's Website is no different – it stated that at all relevant times Gliksman's use of the Website constituted his agreement to be bound by the ToU. Accordingly, under *Ghazizadeh, Sadlock, and Matera*, Gliksman is bound by the Website's ToU and Privacy Policy.

Finally, under the Website's ToU and Privacy Policy, Gliksman was informed of and consented to the exact information sharing he now claims is a CIPA violation. Most directly, Gliksman agreed that Healthline "and other parties may use cookies and similar technologies like pixels . . . to collect [his] data." Decl. ¶ 18. Because Gliksman consented, his claim under CIPA Section 631(a) should be dismissed with prejudice.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should dismiss Gliksman's Complaint with prejudice.

Dated: February 27, 2025

CLARK HILL LLP

By: */s/ Myriah Jaworski*
Myriah Jaworski

*Attorneys for Defendant Healthline Media LLC*