Elizabeth A. Fegan (CA Bar #355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

Megan E. Shannon (admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
megan@feganscott.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DANIEL GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, LLC,<br><br>Defendant. | Case No.: 3:24-cv-08650-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Complaint filed: December 2, 2024<br><br>Date: May 15, 2025<br>Time: 2:00PM<br>Location: Courtroom 10 – 19th Floor |

# TABLE OF CONTENTS

INTRODUCTION ....................1

SUMMARY OF FACTS ....................2

ARGUMENT ....................5

I. Plaintiff Has Article III Standing Because Healthline Violated His Right to Privacy, Which Constitutes a CIPA Violation. ....................5

A. CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing. ....................5

B. Defendant's violations of CIPA are more than procedural violations, intercepting Plaintiff's personal health inquiries and data. ....................7

II. Plaintiff Has Plausibly Alleged That Healthline Violated CIPA. ....................9

A. Healthline violated § 631(a) where it aids and abets TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a), ....................10

1. Section 631(a), Second Clause: Healthline violated CIPA by facilitating eavesdropping by TikTok, Microsoft, and Xandr when it voluntarily embedded the Pixels on its website. ....................10

2. Section 631(a), Third Clause: Healthline violated CIPA by aiding and abetting TikTok, Microsoft, and Xandr's unlawful use of communications. ....................15

3. Section 631(a), Fourth Clause: Healthline violated CIPA by substantially assisting TikTok's, Microsoft's and Adnx's wrongdoing through the knowing installation of the Pixels on its website. ....................15

B. Plaintiff plausibly alleges that Healthline violated § 638.51 because the Pixels are trap and trace devices or pen registers that capture information to identify Healthline website visitors. ....................18

1. Plaintiff alleges that Defendant's Pixels capture, record or decode dialing, routing, addressing, or signaling information as required by CIPA § 638.51. ....................18

2. CIPA § 638.51 does not require the interception of private information to be actionable. ....................20

3. Plaintiff did not consent to the disclosure of his information to third parties. ....................21

III. Plaintiff Alleges That He Did Not Consent to Sharing His Personal Identifying or Health Information When He Visited Healthline's Website. ....................22

CONCLUSION ....................25

## TABLE OF AUTHORITIES


**Cases** **Page No.**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................10

*Rodriquez v. Autotrader.Com, Inc.*,
No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) ....................21

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................23, 24

*Byars v. Sterling Jewelers, Inc.*,
*No. 5:22-cv-01456-SB-SP*, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ....................9

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................21

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................6, 7, 8

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................6, 11, 13, 22, 24

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ....................5

*Esparza v. Gen. Digit. Inc.*,
No. CV 23-8223-KK-AGRx, 2024 U.S. Dist. LEXIS 28132 (C.D. Cal. Jan. 16, 2024) ....................14

*Esparza v. UAG Escondido A1 Inc.*,
*No. 23cv0102 DMS* (KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ....................16, 17

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................25

*Graf v. Zynga Game Network, Inc.*,
(In re Zynga Privacy Litig.), 750 F.3d 1098 (9th Cir. 2014) ....................11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................6, 18

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................9

*Heiting v. Fka Distrib. Co.*,
No. 2:24-cv-07314-HDV-AGR , 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) 18, 23

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................................................................11, 12, 13

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..........................................................................................17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........................................................................................................6, 8

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ..........................................................................................11

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ........................................22

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ..........................................................................................10

*Keskinen v. Lush Handmade Cosmetics LLC*,
*No. 2:24-cv-08860-HDV-SK*, 2025 U.S. Dist. LEXIS 45199 (C.D. Cal. Mar. 11, 2025) ...........6

*Lesh v. CNN, Inc.*,
2025 U.S. Dist. LEXIS 30743 (S.D.N.Y. Feb. 20, 2025) ..........................................................19, 20

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..........................................................................................6

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..........................................................................................6

*Licea v. Hickory Farms*,
No. 23STCV26148, 2024 WL1698147 (Cal. Super. Ct. Mar. 13, 2024*)*……………......………........*22*

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ....................................................................12, 14, 22

*Lightoller v. JetBlue Airways Corp.*,
No. 23-cv-00361-H-KSC, 2023 U.S. Dist. LEXIS 102158 (S.D. Cal. June 12, 2023) ...............9

*Love v. United States*,
915 F.2d 1242 (9th Cir. 1989) ..........................................................................................................10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..........................................................................................10

*Mata v. Zillow Grp., Inc.*,
No. 24-cv-01095-DMS-VET, 2024 U.S. Dist. LEXIS 229061 (S.D. Cal. Dec. 18, 2024) .16, 17

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sep. 23, 2016) ………..25

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ....................................................................................9

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ......7, 18, 19

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ...........................................................................18, 19

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ...........................................................................................24

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ..................................................................................14

*Patel v. Facebook*,
932 F.3d 1264 (9th Cir. 2019) ..........................................................................................6, 8

*R.C. v. Sussex Publrs., LLC*,
No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) ......................7

*Raffin v. Medicredit, Inc.*,
No. 15-4912-GHKPJWx, 2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) ...............7

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ..........................................................................16, 17

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV, 2024 WL 3886811 (Cal. Super. Ct. July 9, 2024) .............................................21

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155-EMC, 2023 U.S. Dist. LEXIS 132295 (N.D. Cal. July 31, 2023) ................25

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ...............................................................................................5

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................................................11, 12

*Sanderson v. Whoop, Inc.*,
*No. 3:23-CV-05477-CRB*, 2025 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 7, 2025) ................24

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ......18, 19, 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..............................................................................................................5

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465-CRB, 2024 U.S. Dist. LEXIS 215487 (N.D. Cal. Nov. 26, 2024) ........7, 21, 22

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) .....................8

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .....................................................................................................5, 6

*Valenzuela v. Keurig Green Mt., Inc.*,
No. 3:22-cv-09042-JSC, 2023 U.S. Dist. LEXIS 182222 (N.D. Cal. Oct. 10, 2023) .............8, 9

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG (AGRx), 2024 U.S. Dist. LEXIS 56985 (C.D. Cal. Mar. 28, 2024) ...17

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..............................................................................................5

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...............................................................................22

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ............18

*Zhizhi Xu v. Reuters News & Media, Inc.*,
2025 U.S. Dist. LEXIS 26013 (S.D.N.Y. Feb. 13, 2025)..........................................................21

**Statutes**

Cal. Penal Code § 631 .........................................................................1, 2, 10, 11, 13, 15, 17

Cal. Penal Code § 638.50 ..................................................................................................18, 19

Cal. Penal Code § 638.51 ..........................................................................................2, 18, 20, 21

**Rules**

F.R.C.P. 12 ....................................................................................................1, 2, 3, 4, 5, 9

**INTRODUCTION**

Personal health information has long been protected as confidential to protect individual privacy, and ensure that individuals are not subject to discrimination, misuse of their data, or other harmful consequences. Plaintiff Daniel Gliksman ("Plaintiff") accessed health and wellness content on Defendant Healthline Media, LLC's ("Healthline" or "Defendant") website several times over the last year. Unbeknownst to him and other website visitors, Defendant tracked and shared that information with third parties without his consent. Within its website, Defendant had surreptitiously installed at least three Pixels (also called trackers) to capture detailed personal information about a website user. Healthline then disclosed that information together with the website visitor's accessed content to the third-party creators of the Pixels, TikTok, Microsoft, and Xandr.

Defendant's Pixels record or decode website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, and where applicable, requested information such as name, date of birth and address and other health conditions submitted to Healthline's website. Defendant then shares this information in real time with TikTok, Microsoft, and Xandr for its own profit. Plaintiff and the Class never consented to the use of their private information. Plaintiff brought this complaint on behalf of himself and all others similarly situated, alleging that Defendant's use of Pixels violated the California Invasion of Privacy Act ("CIPA") §§ 631(a) and 638.51.

Defendant now moves to dismiss Plaintiff's well-pled complaint under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for various purported pleading deficiencies (ECF 21) (hereafter "Motion" or "Mot."). Each of Defendant's arguments fail. As to Defendant's Rule 12(b)(1) argument, Plaintiff has standing because he properly alleges an invasion of his legally protected interest, his right to privacy and to be free from eavesdropping under CIPA. Plaintiff alleges an injury in fact caused when Defendant collected his private data and the contents of his personal communications or messages without consent.

As to Defendant's Rule 12(b)(6) arguments, each generally ignores the detailed allegations of the Complaint. More specifically, Plaintiff adequately alleges violations of § 631(a) under the second, third, and fourth clauses of the statute. As required to establish a claim under the second clause of § 631(a), Plaintiff alleges that Defendant's Pixels willfully allow third parties to attempt to learn the contents or meaning of a communication in transit by transmitting personal information including IP addresses and sensitive health information simultaneously to third parties. Defendant is not exempted as a party to the communication because for purposes of a § 631(a) claim, the relevant inquiry is whether third parties eavesdropped (they did). Plaintiff further alleges that the third-party recipients of the communications, TikTok, Microsoft, and Xandr, used and benefitted from the disclosure of Plaintiff and the Class's information, which is sufficient to establish a claim under the third clause of § 631(a). Lastly, Plaintiff properly alleges a violation of the fourth clause of § 631(a) because Defendant aided and abetted or otherwise agreed with, employed, or conspired with TikTok, Microsoft, and Xandr to disclose Plaintiff and the Class's information without their consent.

As to Plaintiff's § 638.51 claim, the Complaint properly states a claim under § 638.51 by alleging that Defendant's Pixels constitute pen registers or trap and trace devices used to eavesdrop on Plaintiff and the Class without a court order or consent, and that the Pixels record or decode dialing, routing, addressing, or signaling information. Defendant's final argument, that Plaintiff consented to the disclosure of his information to third parties by merely visiting Defendant's website, fails on its face because Plaintiff alleges that he did not consent. This is adequate at the motion to dismiss stage, where the allegations of the Complaint are taken as true. Even looking beyond Plaintiff's allegations, Defendant's consent argument fails because its Privacy Policy and Terms of Service are considered "browsewrap" agreements that are not adequately conspicuous and do not require manifest assent to be bound. As such, they are unenforceable.

Defendant's Motion under Rule 12(b)(1) and Rule 12(b)(6) should be denied in its entirety.

## SUMMARY OF FACTS

Defendant operates a health information website that reaches 71 million people a month.

Complaint, ECF 1 ("Complaint" or "Compl.") ¶¶ 1, 19. Defendant offers resources for sensitive health topics but nevertheless knowingly installed a number of third-party trackers known as pixels onto its website. *Id*. ¶¶ 3, 5. Specifically, Healthline has installed the TikTok Pixel, the Microsoft Clarity Pixel, and the Adnx Pixel (collectively, the "Pixels"). When website visitors view Healthline's website, the Pixels record or decode website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, and where applicable, requested information such as name, date of birth and address. *Id*. ¶ 82. Defendant also uses the Pixels to record, collect, and transmit information about health conditions submitted to Healthline's website. *Id*. Defendant shares this information with TikTok, Microsoft, and Xandr in real time. *Id*. ¶¶ 35, 42, 51, 93. This allows TikTok, Microsoft, and Xandr to serve the visitor ads on their own platforms based on the users' Healthline searches and interactions. *Id*. ¶¶ 5, 20. The use of Pixels benefits Defendant because Pixels allow Healthline to place advertisements on other companies' websites, increasing brand awareness and sales. *Id*. ¶ 21. The data collected by Healthline's Pixels allows Healthline and third parties to identify and track specific visitors. *Id*. ¶¶ 8, 30, 35, 41, 60.

***The TikTok Pixel.*** The TikTok Pixel is programmed into Healthline's website. The TikTok Pixel enables advertisers to track users' website interactions with TikTok through the user's browser. *Id*. ¶ 29. Specifically, the TikTok pixel collects and reports supplementary metadata to TikTok, including information such as ad/event details (related to the clicked ad), timestamp (time page was viewed), IP Address (which can identify a person's geographic location), device details (make, model, operating system) and browser information. *Id*. ¶ 30. The TikTok Pixel operates through a process known as "fingerprinting," where the TikTok Pixel collects data such as IP addresses, browser and device information, user IDs, geolocation data, and other data about website visitors and matches it with existing data that TikTok has acquired regarding millions of users. *Id*. ¶¶ 32-33. Healthline enabled the "AutoAdvanced Matching" feature of the TikTok Pixel which automatically collects additional information from users who interact with Healthline's website or app, such as email addresses, phone numbers, and other identifiers in hashed form. *Id*.

¶ 34. When Healthline requests information such as name, date of birth and address, this data is simultaneously sent to TikTok, allowing TikTok to accurately identify the individual. *Id*. ¶ 35. Defendant did not obtain Class members' consent to be subjected to data sharing with TikTok. *Id*. ¶ 38.

***The Microsoft Clarity Pixel.*** Defendant also programmed the Microsoft Clarity Pixel into Healthline's website. *Id*. ¶ 39. Through the Microsoft Clarity Pixel, Healthline discloses private personal information, along with users' Microsoft ID (Machine Unique IDentifier, "MUID") to Microsoft. A MUID is a unique and persistent identifier generated by Microsoft and assigned to a specific browser to track users' activity across the internet. *Id*. ¶ 40. A MUID constitutes personally identifiable information ("PII") because it is unique to each user and can be used to identify individuals. *Id*. ¶ 41. By installing the Clarity Pixel, Healthline is sharing website visitors' online activity relating to their sensitive, private information as well as their unique ID, with Microsoft, without consent from website visitors to share such information. *Id*. ¶ 44. This means that the terms website visitors type into Healthline are also transmitted to Microsoft. For example, if a website user searches for "breast cancer" on Healthline's website, that search and the MUID is sent to Microsoft. *Id*. ¶ 45. Defendant did not obtain Class members' consent to be subjected to data sharing with Microsoft. *Id*. ¶ 46.

***The Adnx Pixel.*** Healthline also installed the Adnx Pixel on its website. *Id*. ¶ 47. The Adnx Pixel was developed by the software company Xandr, which was later acquired by Microsoft. *Id*. ¶ 48. Like the TikTok Pixel and Microsoft Clarity Pixel, Adnx allows companies to sell advertising space on their website by using the Adnx Pixel to receive, store and analyze information collected from website visitors. *Id*. ¶ 50. The Adnx Pixel sends the user's IP address to Xandr, which stores it in a cookie for future visits, and the tracking cycle restarts if cookies are cleared, ensuring Xandr consistently receives the user's IP address with each site interaction. *Id*. ¶ 51. Not only is the IP address shared simultaneously with Microsoft, but any search terms or key words are also transmitted. *Id*. ¶ 53. Defendant did not obtain Class members' consent to be subjected to data sharing with Xandr. *Id*. ¶ 54.

## ARGUMENT

### I. Plaintiff Has Article III Standing Because Healthline Violated His Right to Privacy, Which Constitutes a CIPA Violation.

A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

Plaintiff may establish Article III standing by showing (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Defendant's Motion to Dismiss contains only a facial challenge, arguing that the allegations in the Complaint itself are not sufficiently pled to invoke this Court's jurisdiction because they fail to establish the injury-in-fact requirement of standing. Mot. at 6-10. Defendant does not dispute that the other two prongs of standing are met, specifically that the injury alleged was likely caused by the defendant nor that the injury would likely be redressed by judicial relief.

#### A. CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan,* 504 U. S. at 560). While the most obvious concrete harms are tangible, various intangible harms can also be concrete. *TransUnion LLC*, 141 S. Ct. at 2204. These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon

seclusion." *Id*.

"[V]iolations of the right to privacy have long been actionable at common law." *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017)). "A right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017)). Violations of this right fall into the category of traditionally recognized harms. *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (citing *Patel,* 932 F.3d at 1272) (recognizing the "common law roots of the right to privacy"). CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing. *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1117 (9th Cir. 2020); *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 598; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024). "Stated differently, a violation of a privacy right protected by California law is sufficient injury for standing purposes." *Keskinen v. Lush Handmade Cosmetics LLC*, No. 2:24-cv-08860-HDV-SK, 2025 U.S. Dist. LEXIS 45199, at *14-15 (C.D. Cal. Mar. 11, 2025).

California district courts have consistently found that "violations of [p]laintiffs' statutory rights under CIPA, [even] without more, constitute injury in fact because instead of a bare technical violation of a statute, ... a CIPA violation involves ... a violation of privacy rights." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023); *Keskinen*, 2025 U.S. Dist. LEXIS 45199, at *14-15 (same); *Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072, 1078 (C.D. Cal. 2023) (same); *see also Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2016 U.S. Dist. LEXIS 181819, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statue."). Accordingly, Plaintiff satisfies Article III by alleging that Healthline violated his right to privacy conferred by CIPA.

**B. Defendant's violations of CIPA are more than procedural violations, intercepting Plaintiff's personal health inquiries and data.**

Plaintiff alleges more than a bare procedural violation of CIPA. Specifically, Plaintiff alleges that Defendant violated CIPA by allowing TikTok, Microsoft, and Xandr to "intercept[], eavesdrop[] upon, and record[]" identifying information such as users' IP addresses in addition to the contents of sensitive information entered in Defendant's website through the use of their Pixels embedded in Defendant's website. Compl. ¶¶ 82, 93-94. Defendant's use of Pixels allows TikTok, Microsoft, and Xandr to receive website visitor's private information in real time and with each interaction. *Id.* ¶¶ 35, 45, 52, 93. Defendant uses Pixels to surreptitiously obtain data, information and communications, which can be used to identify specific individuals, and shares that information with TikTok, Microsoft, and Xandr without website visitors' consent. *Id.* ¶¶ 7, 8, 20, 44, 65. These trackers can not only identify individual users and track their browsing habits but also transmit sensitive information that users communicate to Defendant. *See id.* ¶ 45 ("[I]f a website user searches for "breast cancer" on Healthline's website, that search and the MUID is sent to Microsoft"). In sum, Defendant's Pixels identify and collect the contents of data, information, and communications without website visitor's consent, which constitutes "a violation of the concrete privacy interests that […] CIPA protect[s], regardless of how the collected data was later used." *Campbell*, 951 F.3d at 1119.

Courts in this District have found similar allegations sufficient to convey standing. *See Torres v. Prudential Fin., Inc.*, No. 22-cv-7465-CRB, 2024 U.S. Dist. LEXIS 215487, at *8 (N.D. Cal. Nov. 26, 2024) ("for standing purposes, all that Plaintiffs must allege is that Defendants "collect[ed] the contents of users' individual private messages ... without [Plaintiffs'] consent.") (quoting *Campbell*, 951 F.3d at 1119); *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *13 (N.D. Cal. Dec. 12, 2024) (plaintiff had standing where they alleged disclosure of IP address to third parties without consent thereby enabling defendant and third parties to use plaintiff's personal data for their benefit); *R.C. v. Sussex Publrs., LLC,* No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491, at *9 (N.D. Cal. Mar. 28, 2025) (plaintiff had standing for CIPA claims where they alleged disclosure of IP address and other

information input into the website); *Toy v. Life Line Screening of Am. Ltd*., No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at *2 (N.D. Cal. Mar. 19, 2024) (finding that plaintiff had standing because the "alleged unauthorized disclosure of sensitive medical information in this manner is akin to the harm of intrusion upon seclusion, which is an intangible harm traditionally recognized as a concrete harm.").

Defendant's arguments against standing are not compelling. First, Defendant claims that Plaintiff must show "that his qualifying private information was actually collected." Mot. at 7. But Plaintiff's Complaint makes clear that Healthline collected and disclosed Plaintiff's information without consent. *See e.g*., Compl. ¶¶ 8-9, 44, 58-60, 65-66, 93. Defendant also briefly asserts that Plaintiff fails to allege how he was harmed by the disclosure. But Plaintiff's Complaint states "Plaintiff and Class members are harmed by Defendant's multiple invasions of their privacy and violations of CIPA." *Id*. ¶ 64. "[V]iolations of the right to privacy have long been actionable at common law." *Patel*, 932 F.3d at 1272. And CIPA codifies a substantive right to privacy under California law. *Campbell,* 951 F.3d at 1117; *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 598.

Next, Defendant argues that the types of information collected by Defendant's Pixels are not protectable privacy interests. Mot. at 7-9. This argument misses the mark; CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing. *Campbell,* 951 F.3d at 1117; *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 598. Plaintiff alleges concrete injury of his protected privacy interests under CIPA, sufficient to confer standing. And, as detailed *infra* in § II(B), the type of information collected by Defendant's Pixels constitutes the contents of communications protected by CIPA, which can be used to identify specific individuals and their geolocation, among others. Compl. ¶¶ 8, 30, 35, 41-42.

Each of Defendant's cases cited in support of their argument are readily distinguishable. In *Valenzuela v. Keurig Green Mt., Inc*., No. 3:22-cv-09042-JSC, 2023 U.S. Dist. LEXIS 182222, at *1 (N.D. Cal. Oct. 10, 2023), the plaintiff alleged the defendant violated CIPA through a website's

chat feature but failed to allege details as to the type of private information shared. In contrast, Plaintiff here has detailed allegations about the type of information Defendant's Pixels collected and disclosed to TikTok, Microsoft, and Xandr and how those entities track Plaintiff across the internet. Compl. ¶ 82; *see also id*. ¶¶ 5, 30, 40, 52, 80, 94-95. The same reasoning applies to each of the additional cases Defendant relies on because Plaintiff's Complaint alleges Defendant disclosed personal information such as personal health information accessed or shared, and far more information than just an IP address or mouse clicks. *E.g*., Compl.¶¶ 82, 92-93, 95. *See Byars v. Sterling Jewelers, Inc*., No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *6 (C.D. Cal. Apr. 5, 2023) (standing was not met where allegations failed to identify any specific personal information that was disclosed in violation of CIPA); *Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (complaint failed to establish standing where the sole data point collected was IP address and nothing more); *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (standing was not met based on conclusory allegation that plaintiff disclosed "personal information" without further detail); *Lightoller v. JetBlue Airways Corp*., No. 23-cv-00361-H-KSC, 2023 U.S. Dist. LEXIS 102158, at *9 (S.D. Cal. June 12, 2023) (standing was not met where complaint failed to detail disclosure of any personal information through a website visit); *Cook v. GameStop, Inc*., 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (plaintiff could not establish standing based on allegations that defendant recorded her mouse movements, clicks, keystrokes, URLs of web pages visited, and/or other electronic communications).

In sum, Plaintiff provides detailed allegations about the type of personal and private information collected and disclosed by Defendant's Pixels. Plaintiff did not consent to the disclosure of his personal and private information with third parties such as Microsoft, TikTok, and Xandr. As a result, his substantive right to privacy codified in CIPA has been violated, and he has suffered concrete harm sufficient to confer standing.

## II. <u>Plaintiff Has Plausibly Alleged That Healthline Violated CIPA.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal only if the complaint "fail[s] to state a claim upon which relief can be granted." A complaint must "state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleges." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

**A. Healthline violated § 631(a) where it aids and abets TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a),**

"The California Supreme Court has explained that § 631(a) consists of three main clauses which cover 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 945 (S.D. Cal. 2024) (citing *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978)). A fourth clause creates an additional basis for liability for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).

**1. Section 631(a), Second Clause: Healthline violated CIPA by facilitating eavesdropping by TikTok, Microsoft, and Xandr when it voluntarily embedded the Pixels on its website.**

The second clause of § 631(a), "willfully attempting to learn the contents or meaning of a communication in transit over a wire," applies to internet communications.[1] As Plaintiff alleges, TikTok, Microsoft, and Xandr, as the owners of the Pixels embedded in Defendant's website, violated § 631(a) clause two by "intercept[ing], eavesdrop[ping] upon, and record[ing] Plaintiff's

[1] Plaintiff does not contest Defendant's point that the first clause of Section 631(a) is inapplicable here, because Plaintiff did not allege a violation of the first clause. Mot. at 12. However, Plaintiff asserts that the second and third clauses apply and have been met.

and the Class's communications." Compl. ¶ 91. Specifically, "Defendant's website transmits and causes user data and private information, including their IP addresses, to be intercepted, eavesdropped upon, and recorded by TikTok, Microsoft, and Xandr through the use of their Pixels embedded in Defendant's website." *Id*. ¶ 94

Defendant ignores Plaintiff's allegations by claiming that Healthline, as a "party" to the communications, cannot be "eavesdropped upon." Mot. at 12. The question is not whether Healthline eavesdropped, but rather whether Plaintiff alleges that TikTok, Xandr, and Microsoft have eavesdropped through Healthline's use of Pixels. *See Heiting v. Taro Pharms. USA, Inc*., 728 F. Supp. 3d 1112, 1123 (C.D. Cal. 2024) (the party exception does not bar liability for third party software company's actions). Courts have found that a software provider qualifies as a third-party eavesdropper. *D'Angelo*, 726 F. Supp. 3d at 1202 (noting that software company was a third party eavesdropper where software company used the information collected from the chat conversations for its own benefit); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (finding that Facebook was not a party to a communication between a user and a third-party website containing Facebook plug-in software); *Javier v. Assurance IQ LLC,* 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (finding that software company was a third party eavesdropper); *Saleh v. Nike, Inc*., 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021) (finding that third party software provider was an eavesdropper and that defendant facilitated the eavesdropping by voluntarily embedding the software on its website). Accordingly, Healthline is not protected under the party exception.

***Contents.*** Defendant next argues that Plaintiff fails to allege that the type of information intercepted by Healthline's Pixels qualifies as "contents" under CIPA. Mot. at 14. But again, Defendant ignores the explicit allegations of the Complaint, glossing over them with cursory legal arguments. "The term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Graf v. Zynga Game Network, Inc*. (*In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1106 (9th Cir. 2014). "Based on the circumstances of each case, courts must determine whether the information captured was 'the intended message conveyed by

the communications' and therefore protected content, or merely unprotected 'information regarding the characteristics of the message.'" *Taro Pharms. USA, Inc*., 728 F. Supp. 3d at 1123 (quoting *In re Zynga Privacy Litig*., 750 F.3d at 1106).

Plaintiff's complaint is clear in its allegations that the Pixels captured and conveyed "website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, and where applicable, requested information such as name, date of birth and address" as well as "information about health conditions submitted to Healthline's website." Compl. ¶ 82. *See also id*. ¶ 95 ("By its use of TikTok, Microsoft, and Xandr's Pixels, Defendant aided and abetted third parties to intercept personally identifiable information and the content of sensitive communications such as health-related searches in real time while those disclosures were being sent from or received in California.); *Id*. ¶ 41 ("A MUID constitutes personally identifiable information ("PII") because it is unique to each user and can be used to identify individuals."). As such, Defendant's rote contention that Plaintiff "does not allege the 'content' of any communication was actually captured" is patently false. Mot. at 14.

Courts have found similar allegations constitute "contents" under CIPA. *Taro Pharms. USA, Inc*., 728 F. Supp. 3d at 1124 (finding that contents were protected by CIPA where plaintiff alleged that a third party captured and recorded sensitive data provided in a chat function including IP address and geolocation); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (contents protected under CIPA where a third party service's software automatically intercepted in real time, eavesdropped upon, and retained transcripts of chat communications with unsuspecting website visitors); *Saleh*, 562 F. Supp. 3d at 518 (contents were protected by CIPA where plaintiff alleged a third party software captured mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry). Thus, Healthline's argument that searches about private health information together with identifying information do not constitute "contents" should be rejected.

***In Transit***. Defendant's argument that Plaintiff fails to allege interception of

communications while in transit is easily rejected based on Plaintiff's detailed allegations. Under the Second clause of § 631, "the eavesdropper must listen to a communication 'while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Keurig Green Mt., Inc.*, 674 F. Supp. 3d at 758 (quoting Cal. Penal Code § 631(a)). In essence, Plaintiff must allege that his communications were intercepted in real time. *Taro Pharms. USA, Inc*., 728 F. Supp. 3d at 1125 ("This 'real time' standard mirrors the similar 'in transit' requirement under the federal Wiretap Act, which courts routinely rely upon to consider CIPA claims.").

This requirement is easily satisfied by Plaintiff's allegations, specifically because Plaintiff alleges the mechanics of the TikTok Pixel's "AutoAdvanced Matching" feature and other real time functions of the Adnx and Clarity Pixels. *See e.g.*, Compl. ¶ 34 (The TikTok Pixel's "AutoAdvanced Matching" feature works by automatically collecting additional information from users); *Id*. ¶¶ 36-37 (describing how Healthline enabled the TikTok Pixel's Automatic Advanced Matching feature and demonstrating with images); *Id*. ¶ 43 (Clarity Pixel sends data regarding specific user actions and their unique identifiers to Microsoft); *Id*. ¶ 45 (search terms and the MUIDs are sent to Microsoft") (Featuring images demonstrating the function); *Id*. ¶ 51 (Xandr receives a user's IP address each time a user interacts with the Websites) (featuring images demonstrating the function); *Id*. ¶ 93 (data is simultaneously sent to TikTok); *Id*. ¶ 35 ("data is simultaneously sent to TikTok. This allows TikTok to accurately identify the individual."); *Id*. ¶ 52 ("Xandr receives a user's IP address each time a user interacts with the Websites."); *Id*. ¶ 95 ("By its use of TikTok, Microsoft, and Xandr's Pixels, Defendant aided and abetted third parties to intercept personally identifiable information and the content of sensitive communications such as health-related searches in real time while those disclosures were being sent from or received in California."). It is telling that, as with many of the detailed allegations of the Complaint, Defendant fails to address these allegations entirely.

Courts have found that similar allegations sufficiently allege interception "in transit" under CIPA. *D'Angelo*, 726 F. Supp. 3d at 1198 (allegations that defendant's use of secretly embedded

code which intercepted chat communications in real time and routed them to a third party was sufficient to withstand a motion to dismiss); *Old Navy, LLC*, 669 F. Supp. 3d at 946 (plaintiff sufficiently pled that communications were intercepted in transit by alleging that defendant's software automatically records and creates transcripts of conversations and allows at least one third party to secretly intercept in real time); *see also Campbell v. Facebook Inc*., 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case.")

Defendant also misstates the law by cherry picking language from *NovelPoster v. Javitch Canfield Grp. See* Mot. at 15 (stating that "'interception' of electronic communications is 'virtually impossible,'" citing *NovelPoster*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014)). The exact language, which is quoted from an Eleventh Circuit Wiretap Act case, states that "interception of E-mail within the prohibition of the Wiretap Act is virtually impossible[,]" with the qualifying clause "***unless some type of automatic routing software is used***" before it. *NovelPoster,* 140 F. Supp. 3d at 952 (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (emphasis added)). As a result, simultaneous interception is in fact possible, as Plaintiff alleges here. Moreover, Defendant also relies heavily on the case *Esparza v. Gen. Digit. Inc*., No. CV 23-8223-KK-AGRx, 2024 U.S. Dist. LEXIS 28132, at *10 (C.D. Cal. Jan. 16, 2024). It is true that the *Gen. Digital Inc*. court found the complaint lacked specific facts about what was intercepted, when the interception took place, and how the interception took place. However, as detailed throughout this Opposition, Plaintiff alleges specifics about how each of Defendant's Pixels operated to allow simultaneous interception of Plaintiff's and the Class's data.

Finally, Plaintiff properly alleges that Defendant willfully allowed Microsoft, TikTok, and Xandr to attempt to learn the contents or meaning of a communication in transit by installing the Pixels in its website, and that Microsoft, TikTok, and Xandr willfully attempted to learn the contents of those same communications in transit. Compl. ¶¶ 55-57, 92, 96. *See* Section II(A)(3) *infra* for further discussion of Defendant's willful aiding and abetting.

**2. Section 631(a), Third Clause: Healthline violated CIPA by aiding and abetting TikTok, Microsoft, and Xandr's unlawful use of communications.**

The third clause of § 631(a) forbids an eavesdropper from "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." Plaintiff plainly alleges that the information shared with TikTok, Microsoft, and Xandr, "allows TikTok and Microsoft[2] to serve the visitor ads on their own platforms based on the users' Healthline searches and interactions." *Id.* ¶ 20. TikTok uses the information gleaned from Defendant's utilization of the AutoAdvanced Matching feature "to enhance the accuracy of user matching to their TikTok profiles, improving the targeting of ads." *Id.* ¶ 34. Likewise, Defendant's use of the Clarity Pixel allows Microsoft to track Healthline's website visitors' activity across the internet using their MUIDs. *Id.* ¶ 40. Finally, the Adnx Pixel "sends the user's IP address to Xandr, which stores it in a cookie for future visits, and the tracking cycle restarts if cookies are cleared, ensuring Xandr consistently receives the user's IP address with each site interaction." *Id.* ¶ 51. Xandr receives, stores, and analyzes the information collected from Healthline's website. *Id.* ¶ 50.

Defendant fails to offer any facts or reasoning to counter these allegations, erroneously claiming that "[b]ecause Gliksman's Clause One and Clause Two claims fail as a matter of law, so does his Clause Three claim." Mot. at 12. As detailed *supra*, Plaintiff has more than adequately pleaded claims under the second clause. And Defendant does not refute the allegations establishing claims under the third clause of § 631(a).

**3. Section 631(a), Fourth Clause: Healthline violated CIPA by substantially assisting TikTok's, Microsoft's and Adnx's wrongdoing through the knowing installation of the Pixels on its website.**

The fourth clause of § 631(a) requires an allegation that Defendant "aid[ed], agree[d] with, employ[ed], or conspire[ed] with [a third party] to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Penal Code § 631(a). Where, as here, there is no

---

[2] Xandr is owned by Microsoft and therefore Microsoft receives the benefits derived from the Adnx Pixel. Compl. ¶¶ 48-49.

statutory scienter requirement, California courts apply the common law definition of "aiding and abetting." *Mata v. Zillow Grp., Inc.*, No. 24-cv-01095-DMS-VET, 2024 U.S. Dist. LEXIS 229061, at *17-18 (S.D. Cal. Dec. 18, 2024). Under the common law, a person is an aider and abettor if they "(a) know the other's conduct constitute[s] a breach of duty and give[ ] substantial assistance or encouragement to the other to so act or (b) give[ ] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *16 (S.D. Cal. Feb. 12, 2024) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 845 (1994)).

Here, Plaintiff asserts facts to support the substantial assistance prong of a common law aiding and abetting claim by alleging that Defendant installed the Pixels into its website. Compl. ¶ 3 (Healthline has intentionally installed a number of third-party trackers known as pixels into its website); *Id*. ¶ 6 ("Healthline has installed the TikTok Pixel, the Microsoft Clarity Pixel, and the Adnx Pixel"); *Id* ¶ 56 ("Healthline affirmatively and knowingly elected to install the TikTok, Microsoft Clarity, and Adnx pixels). This is sufficient to establish the substantial assistance prong of an aiding and abetting claim. *Rodriguez v. Ford Motor Co*., 722 F.Supp.3d 1104, 1124 (S.D. Cal. 2024) (Finding that plaintiff asserted facts to support the substantial assistance prong of a common law aiding and abetting claim by alleging that defendant plugged third party software into its website.); *Mata*, 2024 U.S. Dist. LEXIS 229061, at *18 (finding that plaintiff asserted sufficient facts to support the substantial assistance prong of his aiding and abetting claim by alleging that Defendant embedded third-party tracking technologies into its website); *UAG Escondido A1 Inc*., 2024 U.S. Dist. LEXIS 24429, at *16 (same).

Plaintiff further alleges detailed allegations to support the knowledge prong of an aiding and abetting claim because the Complaint states that "[d]espite being previously sued for the improper use of pixels on its website, Healthline affirmatively and knowingly elected to install the TikTok, Microsoft Clarity, and Adnx pixels in order to intercept and transmit valuable personally identifiable information from its website users without website users' permission." Compl. ¶ 56.

Defendant knew it had a duty to protect and not disclose website users' data to third parties without consent, yet did so anyways. *See also id*. ¶ 81 ("Defendant intentionally uses the Pixels for the purpose of identifying the source of the incoming electronic and wire communications to the website, which allows Defendant to obtain and analyze website users' data for its own profit."); *Id*. ¶ 94 ("Defendant's website transmits and causes user data and private information, including their IP addresses, to be intercepted, eavesdropped upon, and recorded by TikTok, Microsoft, and Xandr through the use of their Pixels embedded in Defendant's website. Defendant uses the Pixels to do exactly that, and more."). "Similar allegations have been enough for sister courts in this Circuit." *Mata*, 2024 U.S. Dist. LEXIS 229061, at *18 (collecting cases).

Defendant asserts that Plaintiff "must demonstrate that Healthline intentionally or willfully allowed a CIPA violation." Mot. at 13. Defendant seeks to impose a scienter requirement by re-packaging the common law definition of aiding and abetting. But Plaintiff need only allege a claim that Healthline aided and abetted a CIPA violation. Plaintiff meets this burden easily. Defendant points to *Taro Pharms.* for the proposition that aiding and abetting requires knowingly and or willfully aiding and abetting. 709 F. Supp. 3d at 1019. *Taro Pharms.* provides a cursory conclusion that the underlying allegations were insufficient but fails to address the requirements defining common law aiding and abetting. Each of the cases Defendant cites in support of its position are likewise distinguishable. For example, in *Valenzuela v. Kroger Co*., No. CV 22-6382-DMG (AGRx), 2024 U.S. Dist. LEXIS 56985, at *10 (C.D. Cal. Mar. 28, 2024) the court applied the common law definition of aiding and abetting but found that the allegations of the complaint failed to allege that defendant allowed a third party to violate § 631(a). In contrast, here Plaintiff alleges that Defendant knowingly installed the Pixels into its website which "transmit[] and cause[] user data and private information, including their IP addresses, to be intercepted, eavesdropped upon, and recorded by TikTok, Microsoft, and Xandr." Compl. ¶ 94. Likewise, in *Rodriguez v. Ford Motor Co*., 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) the court found that the substantial assistance prong of aiding and abetting was met, but that the complaint failed to allege Defendant knew the third party was using the data. Here, Plaintiff's complaint alleges that Defendant knew

Pixel third parties would use the data obtained through Healthline's website. *See e.g.*, Compl. ¶¶ 20, 34, 40, 50, 91, 94.

**B. Plaintiff plausibly alleges that Healthline violated § 638.51 because the Pixels are trap and trace devices or pen registers that capture information to identify Healthline website visitors.**

CIPA § 638.51 makes it unlawful for any person to use a pen register or trap and trace device without first obtaining a court order to do so. Cal. Penal Code § 638.51(a). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Pixels qualify as trap and trace or pen registers under California law. *Vishal Shah v. Fandom, Inc*., No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *13 (N.D. Cal. Oct. 21, 2024) (tracking software falls within the definition of a pen register); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *9 (same); *Moody v. C2 Educ. Sys*., 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (same); *Greenley*, 684 F. Supp. 3d at 1050 (same); *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *30 (S.D. Cal. Feb. 12, 2025) (pixel qualifies as a pen register); *Heiting v. Fka Distrib. Co*., No. 2:24-cv-07314-HDV-AGR, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025) (finding that TikTok software utilizing the AutoAdvanced Matching Feature falls within the scope of § 638.51).

**1. Plaintiff alleges that Defendant's Pixels capture, record or decode dialing, routing, addressing, or signaling information as required by CIPA § 638.51.**

Plaintiff alleges that Defendant's Pixels violated CIPA because "the Pixels record or decode website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser

information, MUID, and where applicable, requested information such as name, date of birth and address[]" in addition to recording, collecting, and transmitting "information about health conditions submitted to Healthline's website." Compl. ¶ 82. The Ninth Circuit has held that "IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'" *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). As Plaintiff alleges, Defendant's Pixels recorded addressing information in the form of IP addresses, among others. Compl. ¶¶ 3, 9, 59, 65, 80, 82, 93-94. Under CIPA, IP addresses meet the definition of "addressing information." *Shah,* 2024 U.S. Dist. LEXIS 193032, at *16 (N.D. Cal. Oct. 21, 2024) (finding that the disclosure of IP addresses to third parties through trackers (pixels) was sufficient to allege a claim under § 638.51); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *9 (Trackers (pixels) record addressing information in the form of IP addresses); *Moody*, 742 F. Supp. 3d at 1077 (TikTok Software that gathered IP address, device and browser information, and browsing history met the pleading requirements of § 638.51); *Lesh v. CNN, Inc.*, 2025 U.S. Dist. LEXIS 30743, at *8 (S.D.N.Y. Feb. 20, 2025) (IP addresses collected by trackers (pixels) qualify as "addressing information" under CIPA).

Likewise, MUIDs qualify as "dialing, routing, addressing or signaling information" because MUIDs are "unique and persistent identifier[s] generated by Microsoft and assigned to a specific browser to track users' activity across the internet." Compl. ¶ 40. As used by Defendant's Clarity Pixel, "if a website user searches for 'breast cancer' on Healthline's website, that search and the MUID is sent to Microsoft." *Id.* ¶ 45. Defendant's Pixels "record[] or decode[] dialing, routing, addressing, or signaling information" in the form of MUIDs to third parties, using this information to "identify the source of a wire or electronic communication." Cal. Penal Code § 638.50(b) & (c). Plaintiff further alleges a host of information that qualifies as "dialing, routing, addressing or signaling information" such as "ad/event details, timestamps, device details such as make, model, and operating system, browser information, [...] and where applicable, requested information such as name, date of birth and address." Compl. ¶ 82. Defendant does not challenge

that this information qualifies as dialing, routing, addressing or signaling information under CIPA.

**2. CIPA § 638.51 does not require the interception of private information to be actionable.**

Defendant makes two arguments for dismissal of Plaintiff's § 638.51 claim. First, Defendant contends, that "a plaintiff must demonstrate the interception of private information to have an actionable claim[,]" meaning that "IP addresses and MUIDs are not actionable under CIPA § 638.51." Mot. at 17. Not so. Theres is nothing in the plain language of CIPA that requires plaintiff to "demonstrate the interception of private information." Mot. at 17. Defendant does not identify – nor can it – a statutory basis for its contention that data intercepted under CIPA must be "private." And even if there was, Plaintiff easily meets this false standard because he alleges that:

> [a]t all relevant times, Defendant intentionally transmits identifying information such as users' IP addresses *in addition to* sensitive information. For example, when Healthline requests user information such as email**,** this data is simultaneously sent to TikTok along with the issue the user is interested in (e.g., "Bipolar Newsletter" alongside user email).

Compl. ¶ 93. *See also* Compl. ¶ 82 ("Defendant also uses the Pixels to record, collect, and transmit information about health conditions submitted to Healthline's website."). Defendant argues that Plaintiff must demonstrate a privacy interest in his IP address and MUID, but CIPA does not require such a showing. As one court put it, "[a]pplying this interpretation to CIPA would essentially void the statute of any effect." *Lesh*, 2025 U.S. Dist. LEXIS 30743, at *6. Such a holding would defeat the entire statutory purpose of CIPA, and as the California Supreme Court has emphasized "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier,* 2022 U.S. App. LEXIS 14951, at *4-5 (citing *Ribas v. Clark*, 696 P.2d 637, 639-41 (1985) and *Smith v. LoanMe, Inc*., 483 P.3d 869, 879 (Cal. 2021)). Instead, Plaintiff need only plead that Defendant's Pixels qualify as pen registers or trap and trace devices, and capture, record or decode dialing, routing, addressing, or signaling information as required by CIPA § 638.51. Plaintiff readily meets this burden.

Defendant's argument is based on decisions by a California Superior Court and another

district court outside of the Ninth Circuit, neither of which stand for the stated proposition. *See Zhizhi Xu v. Reuters News & Media, Inc.*, 2025 U.S. Dist. LEXIS 26013, at *15 (S.D.N.Y. Feb. 13, 2025) and *Rodriguez v. Fountain9, Inc.,* No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct. July 9, 2024). To start, "[t]he fact that a California Superior Court concluded differently, while persuasive, is not binding." *Autotrader.Com, Inc.*, 2025 U.S. Dist. LEXIS 7139, at *13. The *Fountain9* case is readily distinguished from the instant matter because in *Fountain9*, the complaint only alleged collection of an IP address and failed to allege anything about a "digital fingerprint." 2024 WL 3886811, at *4. In contrast, Plaintiff's Complaint details not only the collection of an IP address, but also the collection of various data fields that enable digital fingerprinting and tracking. Compl. ¶¶ 32-33, 42, 82. The same reasoning applies to *Xu*, where the court held that the complaint in question failed to allege the collection of anything more than an IP address. 2025 U.S. Dist. LEXIS 26013, at *15. Here, Plaintiff alleges the disclosure of more than just an IP address. *See* Compl. ¶¶ 80, 82.

In sum, Plaintiff has met his burden to allege a viable claim under CIPA § 638.51 and Defendant's arguments to the contrary hold no weight.

**3. Plaintiff did not consent to the disclosure of his information to third parties.**

Defendant's second argument against Plaintiff's CIPA § 638.51 claim similarly fails because Plaintiff did not consent to the disclosure of his information. At the outset, Defendant bears the burden to establish consent. *Vishal Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *15 (N.D. Cal. Oct. 21, 2024) (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020)). As described in further detail *infra* (Section III), Defendant cannot meet its burden to establish consent. "Consent is only effective if the person alleging harm consented 'to the particular conduct, or substantially the same conduct.'" *Torres*, 2024 U.S. Dist. LEXIS 215487, at *12 (N.D. Cal. Nov. 26, 2024) (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1149 (9th Cir. 2024)). Plaintiff and the Class plainly allege that they did not consent to the disclosure of their information including IP address, MUID, and health information to third parties through Defendant's Pixels. Moreover, Defendant's reliance on *Licea v. Hickory*

*Farms LLC*, No. 23STCV26148, 2024 WL1698147 (Cal. Super. Ct. Mar. 13, 2024) is misplaced. The lone sentence in the *Hickory Farms* decision on consent is vague at best, provides no reasoning other than relying on distinguishable cases, and cannot be taken as a binding interpretation of CIPA.

**III. <u>Plaintiff Alleges That He Did Not Consent to Sharing His Personal Identifying or Health Information When He Visited Healthline's Website.</u>**

At the outset, Plaintiff's Complaint satisfies its pleading burden because it states that neither Plaintiff nor the Class consented to the wrongs alleged in the Complaint. *See e.g.*, Compl. ¶ 3 ("Healthline surreptitiously collects, captures, and discloses website visitors' private information, including their IP addresses, for advertising and analytic-related purposes without consent from website users."); *Id.* ¶ 9 ("Plaintiff and the Class member did not consent to Defendant's tracking, collecting, obtaining, or transmitting of their data, including IP addresses, communications, and personal information."); *Id.* ¶ 38 ("Defendant did not obtain Class members' consent to be subjected to data sharing with TikTok."); *Id.* ¶ 46 ("Defendant did not obtain Class members' consent to be subjected to data sharing with Microsoft."); *Id.* ¶ 54 ("Defendant did not obtain Class members' consent to be subjected to data sharing with Xandr."); *Id.* ¶ 59 ("Healthline transmitted Plaintiff's information, including his IP address, to TikTok, Microsoft, and Xandr without consent."). These allegations are sufficient at the pleading stage. *See D'Angelo*, 726 F. Supp. 3d at 1198 (finding that plaintiffs had adequately pled that they did not consent to eavesdropping); *Old Navy, LLC*, 669 F. Supp. 3d at 948 (rejecting argument that plaintiff consented to any alleged recording where allegations explicitly plead that plaintiff and the purported class members did not consent to the recording of their conversations with Defendant); *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (plaintiff's pleading that stated she did not consent to recording was sufficient to overcome a 12(b)(6) motion); *Javier*, 2022 U.S. App. LEXIS 14951, at *5 (finding that the plaintiff met his pleading burden where he alleged he did not give express prior consent).

Defendant argues that by visiting Healthline's website Plaintiff consented to the Terms of

Use ("TOU") and Privacy Policy. Defendant asks the Court to take judicial notice of the TOU and Privacy Policy, which Plaintiff does not oppose. However, Plaintiff vehemently opposes the argument that Plaintiff and the Class saw or consented to the TOU and Privacy Policy merely by visiting the website. Because Plaintiff alleges he did not consent, determination of whether the TOU and Privacy Policy constitute consent is an issue of fact properly addressed *after* the pleading stage. *See e.g., Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *10 ("Whether Defendant's Privacy Policy was sufficient to establish consent is a question of fact that should proceed past the pleading stage.").

Regardless, Defendant's terms of service are considered "'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Id*. Here, Plaintiff did not have knowledge of the Terms of Service and repeatedly pleads that he did not consent to the sharing of his personal information. *E.g*., Compl. ¶¶ 3-5, 9, 20, 38, 44, 46, 54. As a result, Defendant's browsewrap Terms of Service are unenforceable unless Defendant can show that: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856.

Defendant fails to meet its burden on both counts. First, the Terms of Service are not conspicuous. As identified in the Declaration ("Declaration") of Stacy Swinton, the "Terms of Use" and "Privacy Policy" hyperlinks are single small links at the bottom of a homepage, among twelve other small hyperlinks. ECF 21-1 at 4. The Declaration fails to account for the length of the home page and the number of scrolls the average website user would have to make for them to even view the absolute bottom of the page. Because the hyperlinks to the Terms of Use and Privacy

Policy are small within a dozen other small hyperlinks, and because the hyperlinks are buried at the end of a long homepage, Defendant cannot show that the website provides reasonably conspicuous notice of the terms to which the consumer will be bound under the Terms of Use or the Privacy Policy. *See Berman*, 30 F.4th at 868 (Baker, J., concurring) ("To determine whether a website provides reasonably conspicuous notice, courts consider, among other things, the transactional context, the notice's size relative to other text on the site, the notice's proximity to the relevant button or box the user must click to complete the transaction or register for the service, and whether the notice's hyperlinks are readily identifiable.").

Second, Defendant simply ***did not require*** any action by the website visitor to unambiguously manifest their assent to the Terms of Use or Privacy Policy. "[O]nline providers have complete control over the design of their websites," so "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Sanderson v. Whoop, Inc*., No. 3:23-CV-05477-CRB, 2025 U.S. Dist. LEXIS 42118, at *22 (N.D. Cal. Mar. 7, 2025) (citing *Berman*, 30 F.4th at 857.)). Nevertheless, Defendant's website does not require the viewer to affirmatively agree, through checking a box or affirming consent, to any terms whatsoever. Defendant's Motion and the Declaration are tellingly silent on this fact. There simply is no mechanism for Plaintiff and the Class to assent (or otherwise decline) the Privacy Policy and terms of Use. Privacy policies do not bind users where a website provides no notice to users nor prompts them to take any affirmative action to demonstrate assent. *D'Angelo*, 726 F. Supp. 3d at 1197; *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1178-79 (9th Cir. 2014). Defendant's argument that Plaintiff's "continued use of the Website" constituted Plaintiff's agreement to be bound fails because there was no reasonably conspicuous notice of the terms ***and*** Plaintiff was not required to take any action, such as clicking a button or checking a box, that unambiguously manifests assent to those terms. As a result, Defendant's Terms of Use and Privacy Policy are unenforceable. *See e.g*., *D'Angelo,* 726 F. Supp. 3d at 1197 (holding that privacy policy was not enforceable at the motion to dismiss stage).

Defendant's cited authority on this topic is unpersuasive. *Matera v. Google Inc*. is readily

distinguished because in *Matera*, Gmail users were "required to agree" to the terms of service in orders to use Gmail. No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, at *49 (N.D. Cal. Sep. 23, 2016). In contrast, Healthline did not require agreement to view articles and search on their website but rather hid the TOU and Privacy Policy in a small footer at the end of a very long web page. Healthline knew that website visitors were unlikely to view the hyperlinks and would never be required to affirmatively consent to their terms. Similarly, *Ghazizadeh v. Coursera, Inc*., 737 F. Supp. 3d 911, 922 (N.D. Cal. 2024) involved the enforceability of the terms of service where the plaintiff had affirmatively signed up for an account and agreed to accept the terms of service. Again, no such affirmative agreement was required here. Finally, in *Sadlock v. Walt Disney Co*., No. 22-cv-09155-EMC, 2023 U.S. Dist. LEXIS 132295, at *31 (N.D. Cal. July 31, 2023) the court found that an email notice informing the plaintiff of an updated subscriber agreement *together* with continued use could establish assent. In contrast, Plaintiff here *did not* receive an individualized email of the terms of use. Contrary to Defendant's cherry-picked argument, mere continued use of a website without reasonably conspicuous notice of the terms establishes nothing.

Plain and simple: Plaintiff and the Class allege and in fact never consented to the sharing of their personal information such as IP address, key terms or search terms used on Healthline, and other personal information that can be used to identify them. Defendant's attempts to argue otherwise fall flat.

## **<u>CONCLUSION</u>**

For all the above reasons, Defendant's Motion should be denied in its entirety. If the Court is inclined to grant any part of Defendant's Motion, Plaintiff respectfully requests leave to amend and such other and further relief as this Court deems appropriate.

DATED: April 11, 2025

*/s/ Elizabeth A. Fegan*
ELIZABETH A. FEGAN
Elizabeth A. Fegan (CA Bar #355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

Megan E. Shannon (admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
megan@feganscott.com

*Attorneys for Plaintiff and the Proposed Class*