Elizabeth A. Fegan (SBN 355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

Megan E. Shannon (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, Illinois 60606
Telephone: 312.273.9476
Facsimile: 312.264.0100
megan@feganscott.com

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, LLC,<br><br>Defendant. | Case No.: 24-cv-08650-AMO<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR: VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 638.51 AND § 631(a))**<br><br>Judge: Hon. Araceli Martínez-Olguín |

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. PARTIES ........ 2

III. JURISDICTION ........ 3

IV. FACTUAL ALLEGATIONS ........ 3

A. Healthline Capitalizes on the Information of Website Visitors Without Their Consent. ........ 3

B. Healthline Installed the TikTok Pixel on its Website. ........ 6

C. Healthline Installed the Microsoft Clarity Pixel on its Website. ........ 7

D. Healthline Installed the Adnx Pixel on its Website. ........ 10

E. Defendant Knowingly Installed Pixels in Violation of CIPA. ........ 12

F. Plaintiff and Class Members Were Harmed by the Invasion of Their Privacy. ........ 13

V. CLASS ALLEGATIONS ........ 15

VI. CAUSES OF ACTION ........ 18

COUNT I ........ 18

COUNT II ........ 19

VII. PRAYER FOR RELIEF ........ 22

DEMAND FOR TRIAL BY JURY ........ 23

Plaintiff Daniel Gliksman ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this action against Healthline Media, LLC ("Healthline," or "Defendant") and alleges, upon his personal knowledge as to his own actions and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Healthline is an online health information website that touts itself as the "media company that reaches more people on their road to well-being than any other health property."[1]

2. According to Healthline, its "teams of writers, editors, and other contributors are committed to delivering health and wellness information that gives all people greater confidence in their path forward. [Healthline] empower[s] audiences to make their best decisions by offering straightforward resources that focus on the whole person and provide actionable guidance."[2]

3. Despite Healthline's self-proclaimed goal to "offer[] straightforward resources,"[3] Healthline has intentionally installed a number of third-party trackers known as pixels into its website. As a result, Healthline surreptitiously collects, captures, and discloses website visitors' private information, including their IP addresses and metadata that can be used to identify visitors, together with search terms, URLs, and/or article titles that convey health symptoms, conditions, or diagnoses for advertising and analytic-related purposes without consent from website visitors.

4. Healthline utilizes pixels to track, record, and collect website visitor data that is subsequently communicated to third party platforms and advertisers without consent in violation of the California Invasion of Privacy Act ("CIPA") sections 631 and 638.51.

5. Most alarming, as a website offering resources for sensitive health topics, Healthline collects and records the information that website visitors search or titles of articles that visitors view and transmits that information to third parties and advertisers without consent. This means that a website visitor could search for resources on a sensitive health-related topic such as abortion or sexually transmitted infections through Healthline and later be served related ads on third party websites because

---

[1] https://www.healthlinemedia.com/company (last accessed August 26, 2025).
[2] *Id.*
[3] *Id.*

of Healthline's pixels.

6. Healthline has installed the TikTok Pixel, the Microsoft Clarity Pixel, and the Adnx Pixel (collectively, the "Pixels"). These Pixels allow Healthline to obtain and analyze website visitors' data for profit.

7. The Pixels collect data from Healthline's website visitors, without their consent, which Healthline leverages to sell advertising space on its websites and earn additional revenue. At the same time, the Pixels allow Healthline to place advertisements on other companies' websites, increasing brand awareness and sales.

8. The data that Healthline's Pixels surreptitiously collects from consumers, can be used to identify specific individuals—even without information such as the person's name or address—and determine specific locations of the individual, all without informing or obtaining consent from the person tracked.

9. During the last year, Plaintiff searched for and viewed health articles that may convey sensitive health symptoms, conditions, or diagnoses on Healthline's website related to [redacted] [redacted] among other topics.

10. Plaintiff and Class members did not consent to Defendant's tracking, collecting, obtaining, or transmitting of their data, including IP addresses and metadata that can be used to identify them, together with search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, communications, and personal information.

11. Plaintiff brings this action individually and on behalf of the Class, seeking relief including, but not limited to, actual damages, punitive damages, restitution, statutory damages, injunctive relief, and a declaratory judgment, reasonable attorneys' fees and costs, and all other remedies this Court deems proper.

## II. PARTIES

12. Plaintiff is, and has been at all relevant times, a citizen and resident of Los Angeles, California.

13. Defendant is a corporation organized under the laws of Delaware with a corporate

headquarters, or principal place of business, located in Fort Mill, South Carolina, and an office in San Francisco, California.

## III. JURISDICTION

14. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of costs and interest. At least one member of the Class is a citizen of a different state than Defendant, and there are more than 100 putative Class members.

15. This Court has personal jurisdiction over Defendant because Healthline has purposefully directed its activities to the state of California by maintaining an office in San Francisco, California. Furthermore, Healthline regularly tracks individuals in this district and the state of California through its website. Defendant's unlawful conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business in this district, and because a substantial portion of the events giving rise to Plaintiff's claims occurred here. Additionally, Defendant is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District, and the injury to Plaintiff occurred within this District.

## IV. FACTUAL ALLEGATIONS

### A. Healthline Capitalizes on the Information of Website Visitors Without Their Consent.

17. Defendant operates a portfolio of consumer facing health websites, including Healthline.com, Medical News Today, Greatist, PsychCentral, and bezzy. Healthline claims that it is "the #1 Health Information Site in the U.S."[4]

18. Healthline was founded in San Francisco, California, and is now considered the second "largest and fastest growing consumer health publisher in the world."[5]

19. Healthline.com claims that it reaches 71 million people a month through its website, and

---

[4] https://healthlinemedia.com/partner/brands (last accessed August 26, 2025).
[5] https://www.crunchbase.com/organization/healthline (last accessed August 26, 2025).

that more than 20 million visitors have three or more engagements with Healthline.com each month.[6] Website traffic and engagements are concrete measures of value for Healthline to secure advertisers.

20. Healthline and its portfolio of brands claim to "drive[] wellbeing for consumers, each catering to a different health and wellness mindset."[7] In essence, each brand publishes a host of health or wellness related articles, driving website traffic to their website in order to increase advertising revenue. Healthline takes its business model one step further by installing pixels from third parties on its website.

21. Without website visitors' knowledge or consent, Defendant's Pixels collect website visitors' information through the TikTok, Adnx and Clarity pixels, and share this information with TikTok, Microsoft, and Xandr. Pixels track search terms used to view articles related to health symptoms, conditions, or diagnoses, and associate the viewer with the title of each article. That means that someone diagnosed with breast cancer or experiencing symptoms of breast cancer, who views breast cancer related content on Healthline.com is automatically associated with the diagnosis breast cancer. Healthline shares this information with third parties for advertising purposes, in addition to metadata and unique identifiers that can be used to identify or profile website visitors.

22. This fully packaged bundle of visitor data and health conditions, symptoms, or diagnoses, is shared with TikTok, Microsoft, and Xandr which allows Tik Tok, Microsoft, and Xandr to serve the visitor ads on other platforms based on the visitors' Healthline searches and interactions.

23. Moreover, Pixels allow Healthline to place advertisements on other companies' websites, increasing brand awareness and sales.

24. Pixels help Healthline measure the effectiveness of advertising. Healthline receives these analytic services by adding the pixel's source code to its website. Once the pixel is embedded in a website's source code, the pixel sends data regarding specific visitor actions and their unique identifiers to third parties, who in turn provide analytics to Healthline.

25. Each of Defendant's Pixels is multi-functional with an array of capabilities that allows

[6] https://healthlinemedia.com/attribute (last accessed August 26, 2025).
[7] https://healthlinemedia.com/partner/brands (last accessed August 26, 2025).

each Pixel to do a variety of things. For example, one function of each Pixel is to collect and transmit the title or URL of the article that is viewed, while separate functions allow each Pixel to collect and convey IP addresses.

26. Defendant's use of the Pixels violates California's Invasion of Privacy Act codified at California Penal Code § 631 and § 638.51.

27. Healthline uses a "first-party data platform," called Attribute, to market its data on health-conscious consumers to advertisers. Attribute offers advertisers access to proprietary data collected about Healthline visitors to improve their targeted advertising campaigns on Healthline's website.[8]

28. Attribute emphasizes the extent of Healthline's data collection efforts. Healthline states that advertisers who use Attribute can "unlock [Healthline's] Zero- and First-party data" for use in optimizing ad campaigns on Healthline.[9] The platform also allows advertisers to use Healthline's "high-intent audience segmentation, predictive models and purpose-built personas"— tools based on the "billions of first-party data signals" that Healthline collects from visitors.[10]

29. Healthline is fully aware of the power of visitor data collected by Pixels. In a statement on its website describing the Attribute platform, Healthline states: "[i]n a world where data privacy concerns and pending cookie deprecation loom large, Healthline Media takes the lead with Attribute by offering a range of cookie-free solutions that connect advertisers to targeted health and wellness audiences at scale."[11]

30. In actuality, Healthline utilizes Pixels to surreptitiously collect and share website visitors' IP addresses and other identifying and sensitive information such as search terms and article titles conveying health conditions, symptoms, or diagnoses.

31. Healthline can further track visitors who turn over their personal information in the form of email addresses, date of birth, and other identifying information, allowing Healthline to link a visitor to a particular individual. Healthline encourages visitors to become subscribers through popups and

---

[8] https://healthlinemedia.com/attribute (last accessed August 26, 2025).
[9] *Id*.
[10] https://www.healthlinemedia.com/news/healthline-medias-attribute-a-groundbreaking-first-party-data-platform-optimizing-advertisers-performance (last accessed August 26, 2025).
[11] *Id*.

other messages.

32. Through Attribute and other avenues, Healthline leverages the data it collects from visitors via the TikTok, Microsoft Clarity, and Adnx pixels in order to increase ad revenue.

**B. Healthline Installed the TikTok Pixel on its Website.**

33. Defendant implements the TikTok pixel, a tracker programmed into Healthline's website. The TikTok Pixel enables advertisers to track visitors' website interactions through the visitor's browser.

34. The TikTok pixel collects and transmits search terms, URLS, or article titles that convey health symptoms, conditions, or diagnoses in addition to supplementary metadata, including information such as ad/event details (related to the clicked ad), timestamp (time page was viewed), IP address (which can identify a person's geographic location), device details (make, model, operating system) and browser information.[12] All of this information is transmitted in real time to TikTok, regardless of whether the website visitor has a TikTok account.[13]

35. Website owners, like Healthline, retain control over the data collected and reported by the TikTok pixel through TikTok Events Manager. By utilizing this tool, website owners can specify the "Events" they want to track and report to TikTok. "Events" refer to specific actions taken by website visitors to achieve business objectives, such as adding items to a cart, filling out forms, or making purchases. Events are useful for marketing purposes, optimizing ad delivery, and measuring campaign performance.

36. The TikTok pixel uses a process known as "fingerprinting," where the TikTok pixel collects as much data as it can about an anonymous website visitor and matches it with existing data that TikTok has acquired regarding millions of visitors. Even if the website visitor does not have a TikTok profile, TikTok may identify the individual by matching or linking the data transmitted to data it receives from data partners or data brokers.[14]

---

[12] https://ads.tiktok.com/help/article/tiktok-pixel (last accessed August 26, 2025).
[13] https://www.consumerreports.org/electronics-computers/privacy/tiktok-tracks-you-across-the-web-even-if-you-dont-use-app-a4383537813/ (last accessed September 11, 2025).
[14] https://techpolicy.sanford.duke.edu/blog/examining-tiktoks-potential-engagement-with-data-brokers/?utm_source=chatgpt.com (last accessed September 11, 2025).

37. This data collection includes all sorts of website information such as the title of articles viewed or topics searched for, as well as Plaintiff's and Class members' respective IP addresses, browser and device information, visitor IDs, geolocation data, and other data, are used by the Pixel to "fingerprint" individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties (here, TikTok).

38. The TikTok pixel's "AutoAdvanced Matching" feature works by automatically collecting additional information from visitors who interact with a business's website or app, such as email addresses, phone numbers, and other identifiers in hashed form.[15] This data is then used to enhance the accuracy of visitor matching to their TikTok profiles, improving the targeting of ads.

39. When Healthline requests information such as name, date of birth and address, this data is simultaneously sent to TikTok. This allows TikTok to accurately identify the individual.[16]

40. Healthline enabled the "Automatic Advanced Matching" feature on its website. The Automatic Advanced Matching feature is not enabled by default, and website owners are encouraged to activate it and agree to share their visitors' phone numbers and email addresses, as shown below:




[15] https://ads.tiktok.com/help/article/advanced-matching-web (last accessed August 26, 2025).
[16] *Id.*




42. Defendant did not obtain consent from Plaintiff and Class members to share their data with TikTok.

**C. Healthline Installed the Microsoft Clarity Pixel on its Website.**

43. Defendant also implements the Microsoft Clarity ("Clarity") pixel, a tracker programmed into Healthline's website which collects information about visitor interactions that can be used for analytics and playback of interactions.

44. The Clarity pixel collects and transmits search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses in addition to supplementary metadata such as a website viewers' Microsoft ID (Machine Unique IDentifier, "MUID"). A MUID is a unique and persistent identifier generated by Microsoft and assigned to a specific browser to track visitors' activity across the internet. A MUID constitutes personally identifiable information ("PII") because it is unique to each visitor and can be used to identify individuals.

45. The Clarity pixel transmits other metadata to Microsoft such as IP addresses, interaction events such as clicks, scrolls, selection, and inputs, as well as any custom events set by Healthline.

46. By using Clarity, Healthline is sharing its visitors' online activity relating to their

sensitive, private information as well as their unique ID and related metadata with Microsoft, without obtaining consent to share such information.

47. For example, if a website visitor searches for "breast cancer" on Healthline's website, that search and the MUID is sent to Microsoft.







48. Defendant did not obtain consent from Plaintiff and Class members to share their data with Microsoft.

**D. Healthline Installed the Adnx Pixel on its Website.**

49. Defendant also implements the Adnx pixel, a tracker programmed into Healthline's website.

50. The Adnx pixel was developed by the software company Xandr, which was later acquired by Microsoft in 2021. Xandr operates as an advanced advertising company that provides a comprehensive platform for buying and selling consumer-centric digital advertising. Xandr's platform aims to improve the efficiency and effectiveness of advertising across various channels by leveraging data and technology.

51. Microsoft has explained that "[w]ith Xandr, Microsoft can accelerate the delivery of digital advertising solutions for the open web by combining Microsoft's audience understanding, technology and global advertising customer base with Xandr's large-scale, data-driven platforms for advertising."[17]

52. Like the TikTok pixel and Clarity pixel, Adnx allows companies to sell advertising space on their website by using the Adnx pixel to receive, store and analyze information collected from website visitors.

53. The Adnx pixel is installed on Healthline.com. The Adnx pixel collects and transmits search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, in addition to the visitor's IP address to Xandr, which stores it in a cookie for future visits, and the tracking cycle restarts if cookies are cleared, ensuring Xandr consistently receives the visitor's IP address with each site interaction.

54. Xandr receives a website visitors' IP address each time a visitor interacts with Healthline.com. Even when the IP changes, the cookies remain persistent:

[17] https://about.ads.microsoft.com/en/blog/post/december-2021/microsoft-to-acquire-xandr-to-accelerate-its-digital-advertising-and-retail-media-solutions (last accessed August 26, 2025).







55. The above image shows that the specific IP is passed along with the key words.

56. Defendant did not obtain consent from Plaintiff and Class members to share their data with Xandr.

**E. Defendant Knowingly Installed Pixels in Violation of CIPA.**

57. This is not Defendant's first instance of pixel misuse. In 2022, Defendant was sued for violations of Video Privacy Protection Act 18 U.S.C. § 2710, *et seq*. based on its use of the Meta pixel on its website. *See Heather v. Healthline Media, Inc.*, No. 3:22-cv-05059-JD, 2023 U.S. Dist. LEXIS 225991 (N.D. Cal. Dec. 19, 2023).

58. Defendant also recently announced a $1.55 million settlement with the Attorney General of California relating to allegations that Healthline's online tracking technology, including pixels, violated the California Consumer Privacy Act (CCPA).[18]

59. According to California's Attorney General's press release on the settlement:

> Healthline allows online trackers, like cookies and pixels, to communicate data about readers to advertisers and other third parties. Healthline shared data that could uniquely identify the consumer, in addition to the title of the article they were reading. Some titles indicated that the reader may have already been diagnosed with a serious illness, such as "You've Been Newly Diagnosed with MS. What's Next?" And because these online trackers run invisibly in the background in the first milliseconds when a webpage loads, consumers often have no idea how many online trackers might be running. In Healthline's case, dozens of trackers were sharing consumer data with numerous third parties.[19]

60. Despite being previously sued for the improper use of pixels on its website and agreeing to a $1.55 million settlement with the State of California related to its improper use of tracking technologies, Healthline affirmatively and knowingly elected to install the TikTok, Microsoft Clarity, and Adnx pixels in order to intercept and transmit valuable personally identifiable information from its website visitors without website visitors' permission.

61. Defendant knew that TikTok, Microsoft, and Xandr would, and did, use the Pixels to track website visitor activity, while simultaneously transmitting information in real time from California website visitors to TikTok, Microsoft, and Xandr. Defendant installed the Pixels anyways.

62. Defendant's decision to install the TikTok, Microsoft Clarity, and Adnx pixels

---

[18] https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-largest-ccpa-settlement-date-secures-155 (last accessed August 19, 2025).
[19] *Id*.

transparently seeks to capitalize on unsuspecting website visitors' personal information for the sole purpose of increasing advertising revenue. Website visitors are unaware that Defendant uses their personally identifiable information for financial gain. Website visitors, like Plaintiff, do not consent to the transmission and sale of their data.

**F. Plaintiff and Class Members Were Harmed by the Invasion of Their Privacy.**

63. Plaintiff visited Defendant's website numerous times over the last year to view health content and articles but has never subscribed to Defendant's newsletter.

64. Specifically, Plaintiff searched for and viewed health articles on Healthline.com related to his own sensitive health conditions, symptoms, and diagnoses including [redacted], among other topics. He further searched for and viewed health articles related to the sensitive health conditions, symptoms, and diagnoses of his immediate family, including [redacted] He also viewed articles related to exercise titled "Exercise in the Evening: Benefits[,]" "Best Workout Routine to Do Before Bedtime[,]" and "Working Out Before Bed: Is it Good or Bad for Sleep?"

65. Plaintiff was automatically associated with the search terms, URLs, and article titles related to [redacted] and exercise, among other topics. These search terms, URLs, and article titles conveyed sensitive health information.

66. Healthline's Pixels collected and transmitted the search terms he entered to reach articles on [redacted] and exercise, among other topics, and the URLs and titles of the articles he viewed related to each topic together with metadata that can be used to identify him such as his IP address (identifying his geographic location), MUID, and event details including clicks, scrolls, selection, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and requested information such as name, date of birth and address to TikTok, Microsoft, and Xandr without his consent.

67. Third Parties including TikTok, Microsoft, and Xandr intercepted this information about Plaintiff in real time and used it to serve him with advertisements related to health conditions,

symptoms, and diagnoses conveyed through Defendant's Pixels on Healthline.com. Third Parties including TikTok, Microsoft, and Xandr also intercepted Plaintiff's data in real time to use for analytics and reports on website visitors.

68. For example, Plaintiff was targeted with ads for various exercise programs and medical studies related to [redacted] after searching for and viewing articles related to these topics on Healthline.com.

69. Healthline in turn received the benefit of analytics from TikTok, Microsoft, and Xandr based on Plaintiff's interaction with their website. These analytics measure, among other things, the effectiveness of advertising served to Plaintiff and the Class following their interactions with Defendant's website.

70. TikTok, Microsoft, and Xandr used the Pixels in Healthline.com to track and simultaneously transmit information in real time from California website visitors, such as Plaintiff and the Class. TikTok, Microsoft, and Xandr thereafter served the Class with advertisements related to their health conditions, symptoms, and diagnoses conveyed through Defendant's Pixels on Healthline.com

71. Plaintiff and the Class had a reasonable expectation of privacy in their health information and did not consent to the disclosure of their health symptoms, diagnoses, or conditions for advertising purposes that benefited Healthline and third parties.

72. Without Plaintiff's knowledge or consent, Defendant's Pixels deployed a de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device, as further described herein.

73. Defendant's installation of the TikTok, Microsoft, and Adnx Pixels violates CIPA, codified at California Penal Code § 631 and § 638.51.

74. CIPA provides that any person who has been injured under the statute may bring an action for the greater of: (1) five thousand dollars ($5,000) per violation; or (2) three times the amount of actual damages, if any, sustained by the plaintiff. Cal. Penal Code § 637.2(a).

75. Section 637.2(c) of CIPA further states that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c).

76. Plaintiff and Class members are harmed by Defendant's multiple invasions of their privacy and violations of CIPA.

77. Defendant's Pixels obtained personal data, communications, and information about Plaintiff and Class members, including the search terms and titles of articles that convey sensitive health conditions, symptoms, and diagnoses, together with IP addresses identifying a person's geographic location, MUIDs, event details including clicks, scrolls, selection, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and requested information such as name, date of birth and address.

78. The data, information and communications that Defendant surreptitiously obtains from Plaintiff and Class members are used by third parties to whom Defendant sells and/or shares Plaintiff's and Class members' information to identify them and make personalized advertisements to Plaintiff and Class members individually.

79. Defendant continues to track Plaintiff's and Class members' website activity without their consent, collecting information about health symptoms, conditions, or diagnoses submitted to Healthline's website or correlated with each visitor by virtue of reading an article on a specific health topic, and combining that valuable private information with other data sets to sell to and/or share with third-parties for advertising, sales, and marketing purposes.

## V. CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23, a California Class defined as:

> **All persons in California who visited Healthline.com within the statute of limitations (the "Class").**

81. Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition after conducting discovery.

82. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by

Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that millions of individuals visit Healthline's website each month, and at least thousands of those visitors reside in California. The members of the Class will be identified through information and records in Defendant's possession, custody, and control.

83. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether Defendant installed the TikTok pixel, Microsoft Clarity pixel, and Adnx pixel on its website;

b. Whether the TikTok pixel, Microsoft Clarity pixel, and the Adnx pixel are pen registers as defined by law;

c. Whether the TikTok pixel, Microsoft Clarity pixel, and the Adnx pixel are trap and trace devices as defined by law;

d. Whether Defendant caused electronic communications from Plaintiff and Class members with Defendant's website to be recorded, intercepted, and/or monitored;

e. Whether Defendant aided and abetted any third parties in eavesdropping on such communications in real time;

f. Whether Class members consented to Defendant's disclosure of their private information and communications to third parties in the manner required by CIPA;

g. Whether any third party read or attempted to read or to learn the contents or meaning of Class members' searches on Defendant's in real time while those conversations were being sent from or received in California;

h. Whether any third party used or attempted to use or to communicate information that was previously intercepted from Class members' website disclosures;

i. Whether the Class is entitled to damages as a result of Defendant's conduct;

j. Whether Class members are entitled to statutory penalties;

k. Whether Class members are entitled to injunctive relief; and

l. Whether Class members are entitled to disgorgement of data obtained unlawfully.

84. **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. Plaintiff and all members of the class visited Defendant's website, and their electronic communications were subjected to a trap and trace device and/or pen register on Defendant's website.

85. The actions and omissions that gave rise to Plaintiff's claims are the same that gave rise to the claims of every other Class member because Plaintiff and each Class member had their electronic communications improperly traced and shared without their consent, and there are no defenses that are unique to Plaintiff.

86. **Adequacy**: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that they seek to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

87. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on records from Defendant or third-party pixel providers.

88. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VI. CAUSES OF ACTION

**COUNT I**

**Violation of California's Invasion of Privacy Act**
**Cal. Penal Code § 638.51**
**(On Behalf of Plaintiff and the Class)**

89. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

90. California Penal Code § 638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" Cal. Penal Code § 638.51(a).

91. A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

92. A "pen register" means "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

93. Defendant uses trap and trace devices by deploying the TikTok, Microsoft Clarity, and Adnx pixels on its website, because the Pixels capture and transmit website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, and MUID, among other metadata, and where applicable, requested information such as name, date of birth and address. Defendant also uses separate functions of the Pixels to record, collect, and transmit search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, communications, and personal information to third parties.

94. Defendant intentionally uses the Pixels for the purpose of identifying the source of the incoming electronic and wire communications to the website, which allows Defendant to obtain and analyze website visitors' data for its own profit.

95. Defendant uses pen register devices by deploying the TikTok, Clarity, and Adnx Pixels on its website, because the Pixels record or decode website visitors' identifying and signaling

information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, among other metadata, and where applicable, requested information such as name, date of birth and address. Defendant also uses separate functions of the Pixels to record, collect, and transmit search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, communications, and personal information to third parties.

96. Defendant was not authorized by any court order to use a pen register or trap and trace device, and did not obtain consent from Plaintiff or any of the Class members before using trap and trace devices and pen registers to identify the sources of electronic communications and to reasonably identify visitors of its website and has violated § 638.51.

97. CIPA imposes civil liability and statutory penalties for violations of § 638.51. Cal. Penal Code § 637.2; *see also*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023).

98. Pursuant to CIPA § 637.2, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

99. Plaintiff and Class members are harmed by Defendant's violations of CIPA, and seek statutory and actual damages in an amount to be determined at trial.

**COUNT II**

**Violation of California's Invasion of Privacy Act**
**Cal. Penal Code § 631(a)**
**(On Behalf of Plaintiff and the Class)**

100. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

101. Section 631(a) of California's Penal Code imposes liability upon any entity who "by means of any machine, instrument, or contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within"

or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]"

102. Section 631(a) also imposes liability upon any entity "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

103. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's website. *See Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 U.S. Dist. LEXIS 107918, at *63 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 U.S. Dist. LEXIS 94455, at *15 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Meta's collection of consumers' internet browsing history); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

104. The Pixels embedded in Defendant's website to intercept, eavesdrop upon, and record Plaintiff's and the Class's communications qualify as "machine[s], instrument[s], contrivance[s], or … other manner[s]" used to engage in the prohibited conduct alleged herein.

105. Through their Pixels embedded in Healthline.com, TikTok, Microsoft, and Xandr willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

106. TikTok, Microsoft, and Xandr used or attempted to use the information gleaned from their Pixels to advertise health related content to Plaintiff and Class members, and to provide analytics on the effectiveness of advertising to themselves and to Healthline.com.

107. Defendant aids and abets TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a), surreptitiously and as a matter of course because

Defendant allows TikTok, Microsoft, and Xandr to intercept and use signaling and identifying information such as IP addresses and MUIDs together with the search terms and titles of articles that convey sensitive health conditions, symptoms, and diagnoses without consent.

108. When Plaintiff Gliksman viewed various articles on Healthline related to [redacted] and exercise, among other topics, those search terms and article titles were transmitted to TikTok, Microsoft, and Xandr together with his IP address, MUID, event details including clicks, scrolls, selections, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and requested information such as name, date of birth and address. His data was, therefore, automatically associated with various health conditions, symptoms, and diagnoses, which conveyed his personal health information to third parties without his consent.

109. When Class members viewed various articles on Healthline, their identifying information including search terms, URLs, and article titles conveying sensitive health conditions, symptoms, and diagnoses, together with IP addresses identifying a person's geographic location, MUIDs, event details including clicks, scrolls, selections, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and requested information such as name, date of birth and address were transmitted to TikTok, Microsoft, and Xandr. Their data was therefore automatically associated with various health conditions, symptoms, and diagnoses, which conveyed their personal health information to third parties without their consent.

110. Defendant's Pixels transmit and cause visitor data and private information to be intercepted, eavesdropped upon, and recorded by TikTok, Microsoft, and Xandr who used the information to serve targeted ads and provide analytics.

111. By embedding the TikTok, Microsoft, and Adnx Pixels in Healthline.com, Defendant aided and abetted TikTok, Microsoft, and Xandr to intercept personally identifiable information and the content of sensitive communications such as search terms, URLs, and article titles conveying sensitive health conditions, symptoms, and diagnoses, in real time while those disclosures were being sent from or received in California.

112. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's

actions.

113. CIPA imposes civil liability and statutory penalties for violations of § 631. Cal. Penal Code § 637.2.

114. Pursuant to CIPA § 637.2, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

115. Plaintiff and Class members are harmed by Defendant's violations of CIPA, and seek statutory and actual damages in an amount to be determined at trial.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter a judgment on his behalf and against Defendant Healthline Media LLC, and further grant the following relief:

a. Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designate Plaintiff as a representative of the proposed Class and Plaintiff's counsel as Class counsel;

c. Grant Plaintiff the declaratory relief sought herein;

d. Grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

e. Award Plaintiff and the Class compensatory, consequential, and general damages in an amount to be determined at trial, and any other relief to which they are entitled under the law;

f. Award Plaintiff and the Class statutory damages, and punitive or exemplary damages, to the extent permitted by law;

g. Award prejudgment interest, costs, and attorneys' fees;

h. Award all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

i. Award Plaintiff and the Class such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the proposed Class, respectfully requests a trial by jury as to all matters so triable.

Dated: September 11, 2025

Respectfully submitted,

By: /s/ *Elizabeth A. Fegan*

ELIZABETH A. FEGAN (SBN 355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California, 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

MEGAN E. SHANNON (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, Illinois 60606
Telephone: 312.273.9476
Facsimile: 312.264.0100
megan@feganscott.com

***Interim Class Counsel***