Elizabeth A. Fegan (CA Bar #355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

Megan E. Shannon (admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
megan@feganscott.com

*Interim Class Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DANIEL GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, LLC,<br><br>Defendant. | Case No.: 3:24-cv-08650-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date: February 5, 2026<br>Time: 2:00 p.m.<br>Courtroom 10 – 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Amended Complaint filed: September 16, 2025 |

# TABLE OF CONTENTS

Page


INTRODUCTION ........................................................................................................1

SUMMARY OF FACTS ..............................................................................................3

ARGUMENT ..............................................................................................................4

I. Plaintiff Has Article III Standing Because Healthline Violated His Right to Privacy, Which Constitutes a CIPA Violation ........................................4

A. CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing. ........................................5

B. Plaintiff has adequately alleged an "Injury-in-Fact" sufficient to establish Article III standing. ........................................7

1. Plaintiff alleges the unauthorized disclosure of medical information, a privacy violation which is traditionally recognized as concrete harm. ........................................7

2. Plaintiff alleges more than the disclosure of "Non-Private Information." ........................................9

3. Plaintiff adequately alleges that Defendant's Pixels collected his sensitive health information and identifying or addressing information, which was used to identify him ........................................11

II. Plaintiff Has Plausibly Alleged That Healthline Violated CIPA ........................................13

A. Healthline violated § 631(a) because it aids TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a). ........................................13

1. Section 631(a), Second Clause: Plaintiff alleges a violation of the Second Clause because TikTok, Microsoft, and Xandr willfully eavesdrop through Defendant's Pixels ........................................14

2. Section 631(a), Third Clause: Plaintiff alleges a violation of the Third Clause because TikTok, Microsoft, and Xandr use the communications transmitted through Defendant's Pixels to serve advertisements and provide analytics. ........................................19

3. Section 631(a), Fourth Clause: Healthline violated CIPA by aiding TikTok's, Microsoft's and Xandr's wrongdoing through the knowing installation of the Pixels on its website. ........................................19

B. Plaintiff plausibly alleges that Healthline violated § 638.5.1 because its Pixels are trap and trace devices or pen registers that capture or record signaling and addressing information, among other data types. ........................................21

1. Plaintiff Plausibly Alleges that Defendant's Pixels are Pen Registers or Trap and Trace Devices. ........................................21

2. CIPA § 631(a) and § 638.51 Claims are not mutually exclusive ........................................23

**TABLE OF CONTENTS**


**Page**

III. Amendment is Not Futile. ....... 25

CONCLUSION ....... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................15

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ....................10

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................5

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................10

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................20

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................5, 6, 15, 17

*D'Angelo v. Penny Opco, LLC*,
No. 23-cv-0981, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) ....................17

*Deivaprakash v. Condé Nast Digit.*,
No. 25-cv-04021, 2025 U.S. Dist. LEXIS 172906 (N.D. Cal. Sep. 4, 2025) ....................6

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ....................5

*Doe v. Tenet Healthcare Corp.*,
No. 1:23-cv-01106, 2025 U.S. Dist. LEXIS 109134 (E.D. Cal. June 9, 2025) ....................20

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................23

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094, 2025 U.S. Dist. LEXIS 200770 (N.D. Cal. Oct. 9, 2025) ....................21

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ....................21

*Garcia v. Build.com, Inc.*,
No. 22-cv-01985, 2023 U.S. Dist. LEXIS 121085 (S.D. Cal. July 13, 2023) ....................6

*Garon v. Keleops USA, Inc.*,
No. 25-cv-02124, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) ....................21

*Genentech, Inc. v. Abbott Labs.*,
127 F.R.D. 529 (N.D. Cal. 1989) ....................25

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-cv-00160, 2024 U.S. Dist. LEXIS 243633 (C.D. Cal. Dec. 16, 2024) ....................9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................7

*Heiting v. FKA Distributing Co.*,
No. 2:24-cv-07314, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ....................12

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................15, 16

*Hughes v. Vivint, Inc.*,
No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) ....................10

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................5, 7, 15, 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................16

*In re Meta Pixel Tax Filing Cases, Case*
No. 22-cv-07557, 2025 U.S. Dist. LEXIS 152615 (N.D. Cal. Aug. 6, 2025) ....................23, 24, 25

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................15

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ....................14

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ....................13

*Keskinen v. Lush Handmade Cosmetics LLC*,
770 F. Supp. 3d 1234 (C.D. Cal. 2025) ....................5

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................10

*Lesh v. CNN, Inc.*,
No. 24 Civ. 03132, 2025 U.S. Dist. LEXIS 30743 (S.D.N.Y. Feb. 20, 2025) ..........................22

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ..........................18

*Love v. United States*,
915 F.2d 1242 (9th Cir. 1989) ..........................13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..........................14

*Matera v. Google Inc.*,
No. 15-CV-04062, 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) ..........................24

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ..........................10

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-cv-01797, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ..........................7, 22

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ..........................22

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ..........................7

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) ..........................9, 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..........................16

*Rebekka Lien v. Talkdesk, Inc.*,
No. 24-cv-06467, 2025 U.S. Dist. LEXIS 29889 (N.D. Cal. Feb. 19, 2025) ..........................10

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..........................4

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ..........................7, 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......................... *passim*

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ..........................20

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465, 2024 U.S. Dist. LEXIS 215487 (N.D. Cal. Nov. 26, 2024) ..............................9

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-cv-04651, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ..............................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..............................5, 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ..............................16

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..............................4

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ..............................8

*Yoon v. Lululemon U.S.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..............................10

**Statutes/Rules**

Cal. Penal Code § 638.50 *et seq*. .............................. *passim*

Cal. Penal Code § 638.51 *et seq* .............................. *passim*

Fed. R. Civ. P. 12(b)(1) ..............................4

Fed. R. Civ. P. 12(b)(6) ..............................13

Fed. R. Civ. P. 15(a)(2) ..............................25

## INTRODUCTION

Individuals seeking information about sensitive health conditions have a reasonable right to privacy in their health conditions, symptoms, and diagnoses. Plaintiff Daniel Gliksman ("Plaintiff") accessed health and wellness content on Defendant Healthline Media, LLC's ("Healthline" or "Defendant") website several times over the last year. When Plaintiff searched for and viewed articles on Healthline's website related to his and his family members' sensitive medical conditions, symptoms, and diagnoses, he was automatically associated with search terms, URLs, and article titles that conveyed his sensitive health information. Unbeknownst to him and other website visitors, Healthline tracked and shared that information with third parties without his consent. Within its website, Healthline had surreptitiously installed at least three Pixels (also called trackers) to capture search terms, article titles, and URLs that convey personal health information, in addition to other identifying, addressing, and signaling information that can be used to identify each website visitor. The creators of Healthline's Pixels—TikTok, Microsoft, and Xandr—received information from Plaintiff and each website visitor and used that information to serve personalized health-specific advertisements and provide Healthline with website analytics.

Plaintiff was unaware that Healthline used his sensitive and personally identifiable information for financial gain and did not consent to the transmission of his information to TikTok, Microsoft, and Xandr. Plaintiff brought this suit on behalf of himself, and all others similarly situated, alleging that Healthline's use of Pixels violated the California Invasion of Privacy Act ("CIPA") §§ 631(a) and 638.51. First, Plaintiff alleges that Healthline's use of Pixels violates Section 631(a) because Healthline aided TikTok, Microsoft, and Xandr to eavesdrop on Plaintiff's communications. TikTok, Microsoft, and Xandr in turn used the contents of Plaintiff's communications to serve him advertisements and provide website analytics to Healthline. Second, Plaintiff alleges a violation of Section 638.51 because Pixels are pen registers and trap and trace devices that Defendant installed without consent or a court order.

Following argument on Healthline's first Motion to Dismiss and this Court's Order granting Healthline's Rule 12(b)(1) Motion for lack of standing, Plaintiff amended his complaint

to address the Court's concerns. Dkt. No. 46[1] ("First Amended Complaint" or "FAC"). Healthline again moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for various purported pleading deficiencies (Dkt. No. 51) (hereafter "Motion" or "Mot.").

Each of Healthline's arguments fail. As to Defendant's Rule 12(b)(1) argument, Plaintiff has standing because he properly alleges an invasion of his legally protected interests, his right to privacy and to be free from eavesdropping under CIPA. Plaintiff alleges an injury in fact caused when Healthline collected his health symptoms, conditions, and diagnoses together with other information that was used to identify him and serve him with health-specific advertisements. His personal information was used by Healthline for financial benefit without his consent when third parties served him advertisements and provided Healthline with valuable website analytics based on his website interactions. As a result, Plaintiff has alleged both statutory standing under CIPA and Article III standing.

As to Healthline's Rule 12(b)(6) arguments, each generally ignores the detailed allegations of Plaintiff's FAC. First, Plaintiff adequately alleges violations of § 631(a) under the second, third, and fourth clauses of the statute. Under the second clause of § 631(a), Plaintiff alleges that Healthline's Pixels willfully allow third parties to attempt to read or learn the contents or meaning of a communication in transit because the Pixels convey search terms, URLs, and article titles that convey health conditions, symptoms, and diagnoses to TikTok, Microsoft, and Xandr, who in turn read and use that information to serve advertisements and provide analytics. Under the third clause of § 631(a), Plaintiff alleges that the third-party recipients of the communications, TikTok, Microsoft, and Xandr, used and benefitted from the disclosure of Plaintiff and the Class's communications. Lastly, Plaintiff properly alleges a violation of the fourth clause of § 631(a) because Healthline aided TikTok, Microsoft, and Xandr to eavesdrop and use Plaintiff and the

[1] Plaintiff initially filed his Amended Complaint on September 11, 2025 (Dkt. No. 44) provisionally under seal with limited redactions, but later refiled on September 16, 2025 with limited redactions stipulated to by Defendant. The Court has not yet ruled on Plaintiff's Administrative Motion to File Under Seal. Dkt. No. 45.

Class's communications and information without their consent.

Finally, Plaintiff's Amended Complaint properly states a claim under § 638.51 by alleging that Healthline's Pixels constitute pen registers or trap and trace devices used to eavesdrop on Plaintiff and the Class without consent or a court order, and that the Pixels record or decode dialing, routing, addressing, or signaling information. Healthline mistakenly asserts that Pixels cannot be trap and trace devices or pen registers because § 631 and § 638.51 claims are "mutually exclusive." However, despite asserting a statutory interpretation argument, Defendant fails to properly analyze Section 631 and 638. A careful analysis of CIPA's purpose and the statutory language reveals that CIPA § 631 and § 638.51 claims ***are not*** mutually exclusive, and Plaintiff properly alleges claims under both Sections.

Healthline's Motion under Rule 12(b)(1) and Rule 12(b)(6) should be denied in its entirety.

## SUMMARY OF FACTS

Defendant operates a health information website that reaches 71 million people a month. FAC ¶¶ 1, 19. Defendant offers resources for sensitive health topics but nevertheless knowingly installed a number of third-party trackers known as pixels onto its website. *Id.* ¶¶ 3, 5. Specifically, Healthline installed the TikTok Pixel, the Microsoft Clarity Pixel, and the Adnx Pixel (collectively, the "Pixels"). Throughout the last year, Plaintiff searched for and viewed health articles on Healthline.com related to [redacted] *Id.* ¶ 64. He further searched for and viewed health articles [redacted] *Id.* Plaintiff also viewed articles related to exercise titled "Exercise in the Evening: Benefits[,]" "Best Workout Routine to Do Before Bedtime[,]" and "Working Out Before Bed: Is it Good or Bad for Sleep?" *Id.*

When Plaintiff searched for and viewed articles on Healthline.com regarding his sensitive health symptoms, conditions, or diagnoses, Defendant's Pixels transmitted the search terms, URLs, and article titles that conveyed his health information to third party Pixel providers without his consent. *Id.* ¶¶ 3-4, 10. Defendant's Pixels also recorded or decoded his identifying and

signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID (a unique and persistent identifier generated by Microsoft and assigned to a specific browser to track visitors' activity across the internet), and where applicable, requested information such as name, date of birth and address. *Id.* ¶¶ 44, 66, 77. Defendant shared this fully packaged bundle of visitor data and health conditions, symptoms, or diagnoses with TikTok, Microsoft, and Xandr in real time. *Id.* ¶¶ 22, 34, 67, 70. This allowed TikTok, Microsoft, and Xandr to serve Plaintiff ads on other platforms based on the health information conveyed to Defendant through each interaction with Healthline.com. *Id.* ¶¶ 5, 22, 67, 69, 70. Specifically, after his interactions with Defendant's website, Plaintiff was identified and served ads for various exercise programs and medical studies related to [redacted] *Id.* ¶¶ 66-68, 72. Plaintiff did not consent to the disclosure of his health symptoms, diagnoses, or conditions for advertising purposes that benefited Healthline and third parties. *Id.* ¶ 71.

Pixels benefit Healthline by allowing it to place advertisements on other companies' websites, increasing brand awareness and sales. *Id.* ¶ 7. Healthline also receives analytics from each Pixel based on Plaintiff's interaction with their website, which measure, among other things, the effectiveness of advertising served to Plaintiff and the Class following their interactions with Healthline's website. *Id.* ¶ 69. The data collected by Healthline's Pixels allows it and third parties to identify and track specific visitors. *Id.* ¶¶ 3, 8, 10, 21, 72.

## ARGUMENT

### I. Plaintiff Has Article III Standing Because Healthline Violated His Right to Privacy, Which Constitutes a CIPA Violation

Healthline first attacks Plaintiff's FAC for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court assumes the factual allegations of the complaint to be

true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

Plaintiff may establish Article III standing by showing (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Healthline's Motion contains only a facial challenge, arguing that the allegations in the Complaint itself are not sufficiently pled to invoke this Court's jurisdiction because they fail to establish the injury-in-fact requirement of standing. Mot. at 7-14. Healthline does not dispute that the other two prongs of standing are met, specifically that the injury alleged was likely caused by the defendant nor that the injury would likely be redressed by judicial relief.

### A. CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.

Plaintiff alleges violations of his substantive right to privacy under CIPA, the violation of which gives rise to a concrete injury sufficient to confer standing. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("[t]he harms protected by [CIPA] bear a 'close relationship' to ones that have 'traditionally been regarded as providing a basis for a lawsuit.'" (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016))); *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020) ("these statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024). "Stated differently, a violation of a privacy right protected by California law is sufficient injury for standing purposes." *Keskinen v. Lush Handmade Cosmetics LLC*, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025).

The Ninth Circuit made clear in *In re Facebook Inc. Internet Tracking Litigation* that tracking and collection practices which "cause harm or a material risk of harm to [an individual's] interest in controlling their personal information" constitute a "concrete injury sufficient to confer standing." 956 F.3d at 598-99. Numerous courts have held that *TransUnion's* holding that "Article III standing requires a concrete injury even in the context of a statutory violation," does

not undermine the reasoning in *In re Facebook Inc. Internet Tracking Litig*. because "that aspect of *TransUnion*'s holding was not new; it was a reiteration (and a direct quote) of the Supreme Court's holding in *Spokeo*, decided in 2016." *Garcia v. Build.com, Inc.,* No. 22-cv-01985, 2023 U.S. Dist. LEXIS 121085, at *9 (S.D. Cal. July 13, 2023) (internal quotation marks and citations omitted); *Deivaprakash v. Condé Nast Digit*., No. 25-cv-04021, 2025 U.S. Dist. LEXIS 172906, at *10 n.4 (N.D. Cal. Sep. 4, 2025) (holding that *In re Facebook Inc. Internet Tracking Litig.* "remains good law" following *TransUnion*); *D'Angelo,* 726 F. Supp. 3d at 1193 (holding that "[in] the absence of further indication that *In re Facebook* is overruled, the Court agrees with Garcia that '*TransUnion* does not undermine the reasoning in [*In re Facebook*].'").

Here, Plaintiff alleges a violation of his substantive privacy rights under CIPA. Specifically, Plaintiff's privacy rights under CIPA Section 631(a) were violated because Healthline aided third parties (TikTok, Microsoft, and Xandr) to intercept Plaintiff's communications in real time. FAC ¶ 67. Plaintiff's communications conveyed sensitive health conditions, symptoms, and diagnoses such as [redacted] and related to the sensitive health conditions, symptoms, and diagnoses of [redacted] *Id*. ¶ 64. Third parties used this information to identify Plaintiff and serve him with specific advertisements for various exercise programs and medical studies related to [redacted] *Id*. ¶¶ 68, 72, 78.

Plaintiff further alleges a violation of his rights under CIPA Section 638.51 because Healthline used trap and trace and/or pen register devices without a court order by deploying the TikTok, Microsoft Clarity, and Adnx pixels, which capture and transmit website visitors' identifying and signaling information as well as record or decode identifying and signaling information. *Id*. ¶¶ 93-96. Healthline's Pixels recorded, captured, and transmitted Plaintiff's signaling and addressing information in the form of his IP address (identifying his geographic location), MUID, and event details including clicks, scrolls, selection, inputs, timestamps (time page was viewed), device details (make, model, operating system), and browser information. *Id*. ¶¶ 44, 66, 77. Courts have found similar allegations sufficient to confer standing under CIPA. *Deivaprakash*, 2025 U.S. Dist. LEXIS 172906, at *9 (finding that plaintiff had alleged statutory

standing under CIPA based on allegations that trackers allowed third parties to generate profiles that reflected users' geographic locations, incomes, and preferences, among other characteristics); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797, 2024 U.S. Dist. LEXIS 227378, at *13 (N.D. Cal. Dec. 12, 2024) (plaintiff had standing where they alleged disclosure of IP address to third parties without consent thereby enabling use of plaintiff's personal data for their benefit); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (statutory standing established where trackers collected IP addresses and revealed geographical location and other personal information sufficient for third parties to conduct targeted advertising).

### B. Plaintiff has adequately alleged an "Injury-in-Fact" sufficient to establish Article III standing.

#### 1. Plaintiff alleges the unauthorized disclosure of medical information, a privacy violation which is traditionally recognized as concrete harm.

While Plaintiff properly alleges a violation of his CIPA rights sufficient to confer statutory standing, his allegations also satisfy the Article III inquiry. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan,* 504 U. S. at 560). While the most obvious concrete harms are tangible, various intangible harms can also be concrete. *TransUnion LLC*, 594 U.S. at 425. These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

"[V]iolations of the right to privacy have long been actionable at common law." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). "A right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (quoting *Eichenberger,* 876 F.3d at 983). Violations of this right fall into the category of traditionally recognized harms. *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1037 (S.D. Cal.

2023) (citing *Patel,* 932 F.3d at 1272) (recognizing the "common law roots of the right to privacy").

Here, Plaintiff alleges the loss of privacy and control over his personal information through the unauthorized disclosure of sensitive medical information. Specifically, Plaintiff alleges that he searched for and viewed health articles on Healthline.com related to his own sensitive health conditions, symptoms, and diagnoses including [redacted] and related to the sensitive health conditions, symptoms, and diagnoses of [redacted] FAC ¶ 64. Plaintiff was automatically associated with the search terms, URLs, and article titles related to his sensitive health conditions, symptoms, and diagnoses, which conveyed sensitive health information. *Id.* ¶¶ 65-66.

Healthline's Pixels collected and transmitted the search terms, URLs, and article titles that conveyed his sensitive medical information "together with metadata that can be used to identify him such as his IP address (identifying his geographic location), MUID, and event details including clicks, scrolls, selection, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and requested information such as name, date of birth and address to TikTok, Microsoft, and Xandr without his consent." *Id.* ¶ 66. TikTok, Microsoft, and Xandr intercepted Plaintiff's sensitive medical and identifying information and used it to identify him and serve him with ads related health conditions symptoms, and diagnoses conveyed through Defendant's Pixels on Healthline.com. *Id.* ¶¶ 67-68. Plaintiff further alleges that he had a "reasonable expectation of privacy" in his "health information and did not consent to the disclosure of their health symptoms, diagnoses, or conditions for advertising purposes that benefited Healthline and third parties." *Id.* ¶ 71.

"The alleged unauthorized disclosure of sensitive medical information in this manner is akin to the harm of intrusion upon seclusion, which is an intangible harm traditionally recognized as a concrete harm." *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651, 2024 U.S. Dist. LEXIS 88872, at *2 (N.D. Cal. Mar. 19, 2024). Courts in this District have found similar allegations sufficient to convey standing. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970

(N.D. Cal. 2023) (finding plaintiff had standing to bring CIPA claims where defendant's collection of plaintiffs' personal health information necessarily deprived Plaintiffs of their control of their information); *Torres v. Prudential Fin., Inc*., No. 22-cv-7465, 2024 U.S. Dist. LEXIS 215487, at *8 (N.D. Cal. Nov. 26, 2024) ("for standing purposes, all that Plaintiffs must allege is that Defendants "collect[ed] the contents of users' individual private messages ... without [Plaintiffs'] consent.") (quoting *Campbell*, 951 F.3d at 1119) (brackets in original); *R.C. v. Sussex Publishers, LLC,* No. 24-cv-02609, 2025 U.S. Dist. LEXIS 59491, at *9 (N.D. Cal. Mar. 28, 2025) (plaintiff had standing for CIPA claims where they alleged disclosure of IP address and information related to their health and health conditions input into the website).

In sum, Plaintiff's amended allegations sufficiently allege an injury-in-fact based on the loss of control over his personal information and the unauthorized disclosure of his personal medical information to third parties.

**2. Plaintiff alleges more than the disclosure of "Non-Private Information."**

Healthline's arguments against standing are not compelling. First, Healthline argues that Plaintiff must "identify the 'specific personal information [he] disclosed that ***implicates a protectable privacy interest***." Mot. at 9 (emphasis in original). Yet, Healthline admits that the "disclosure of sensitive private information constitutes a 'concrete and particularized' injury for purposes of Article III." Mot. at 9. Here, Plaintiff clearly alleges the unauthorized disclosure of personal and sensitive medical information conveyed through search terms, article titles, and URLs. "It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667, 2024 U.S. Dist. LEXIS 179067, at *32 (N.D. Cal. Oct. 1, 2024) (quoting *Ojeda v. Kaiser Permanente Int'l, Inc*., No. EDCV 22-1057, 2022 U.S. Dist. LEXIS 235550, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022)); *Gray v. Luxottica of Am., Inc.,* No. 8:24-cv-00160, 2024 U.S. Dist. LEXIS 243633, at *26-27 (C.D. Cal. Dec. 16, 2024) ("Courts have generally recognized that individuals have a protected privacy interest in their health information."). Healthline does not refute that health information is a traditionally protected privacy interest.

Healthline next asserts that Plaintiff lacks standing to the extent his claims are based on the "collection of Non-private information." Mot. at 9. But Plaintiff alleges the collection of private medical information ***and*** identifying information, the combination of which is sufficient to establish standing. Healthline ignores the detailed allegations of the FAC, which describe how Plaintiff's personal health information was collected and transmitted without his consent. *See e.g.,* FAC ¶¶ 64-70, 72, 78.

As a result, each of the cases on which Healthline relies are readily distinguishable. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (alleging only disclosure of IP address); *Rebekka Lien v. Talkdesk, Inc*., No. 24-cv-06467, 2025 U.S. Dist. LEXIS 29889, at *2 (N.D. Cal. Feb. 19, 2025) (unauthorized disclosure of phone numbers and questions regarding store hours, events, and products carried by the retailers); *Cook v. GameStop, Inc*., 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (unauthorized disclosure of mouse movements, clicks, keystrokes, URLs of web pages visited, and/or other electronic communications); *I.C. v. Zynga, Inc*., 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (data breach case involving unauthorized disclosure of basic contact information); *Yoon v. Lululemon U.S.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (unauthorized disclosure of browsing data: keystrokes and clicks; pages viewed; shipping and billing information; date, time, and duration of visit; IP address and physical location; and browser type and operating system but no allegations that pixels tracked across other websites or apps); *Hughes v. Vivint, Inc*., No. CV 24-3081, 2024 U.S. Dist. LEXIS 232423, at *9 (C.D. Cal. July 12, 2024) (unauthorized disclosure plaintiff's phone number, email, address, and routing information); *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (standing was not met based on allegation that plaintiff disclosed "personal information" without further detail); *Byars v. Sterling Jewelers, Inc*., No. 5:22-cv-01456, 2023 U.S. Dist. LEXIS 61276, at *6 (C.D. Cal. Apr. 5, 2023) (allegations failed to identify any specific personal information that was disclosed in violation of CIPA).

In contrast, because Plaintiff alleges that Healthline's Pixels collected and transmitted sensitive health information together with identifying information that was used to identify him personally, he has alleged ***far more*** than each of Healthline's cited cases. Healthline's argument

that Plaintiff lacks standing based on the disclosure of certain cherry-picked bits of information from the complaint such as IP address or "generic browsing data" fails to account for the totality of Plaintiff's amendments. *Compare* Mot. at 10-11 *with* FAC. ¶¶ 9, 21-22, 30, 34, 44, 53, 64-70, 72, 78.

**3. Plaintiff adequately alleges that Defendant's Pixels collected his sensitive health information and identifying or addressing information, which was used to identify him.**

Healthline next takes issue with Plaintiff's technical allegations related to each of Healthline's Pixels and asserts that Plaintiff merely details the capabilities of the Pixels but "makes no effort to demonstrate how and when each of the Pixels collect such information." Mot. at 12. Not so. Plaintiff's FAC plainly alleges that, numerous times over the last year Plaintiff searched for and viewed articles on Healthline.com related to sensitive health conditions, symptoms, and diagnoses. ¶¶ 63-64. Plaintiff was automatically associated with these search terms, URLs, and article titles that conveyed sensitive health information. *Id.* ¶ 65. Plaintiff specifically alleges that Healthline's Pixels collected and transmitted the search terms, URLs and article titles that conveyed his personal health information together with metadata and information that can be used to identify him to TikTok, Microsoft, and Xandr. *Id.* ¶ 66. TikTok, Microsoft, and Xandr. Intercepted this information in real time, identified him, and used it to serve him with advertisements related to health conditions, symptoms, and diagnoses conveyed through Healthline's Pixels. *Id.* ¶¶ 67, 72, 78. Plaintiff was specifically served with advertisements that related to the health conditions, symptoms, and diagnoses he conveyed to Healthline's website. *Id.* ¶ 68.

Healthline's argument ignores these factual allegations about what actions Plaintiff took, how his data was collected and transmitted to third parties, and the resulting advertisements that prove third parties read and used the information and communications he conveyed to Defendant's website. Moreover, Healthline wrongly asserts that Plaintiff's allegations fail to allege that each separate Pixel collects and transmits search terms, URLs, and article titles. But Plaintiff's FAC alleges that the TikTok, Clarity, and Xandr Pixels each "collect[] and transmit[] search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses." FAC ¶¶ 34, 44, 53.

Healthline also argues that Plaintiff lacks standing because he does not allege the exact timestamped, step-by-step process by which Plaintiff viewed each article that resulted in the conveyance of health information by Healthline's Pixels, and a detailed explanation of the inner workings of each Pixel as it relates to each search. Mot. at 12-13. But no such requirement exists. Plaintiff met his burden by alleging injury to his privacy through the unauthorized disclosure of his sensitive health information based on an interaction with Healthline.com from which Defendant received a financial benefit. *See, e.g.*, FAC ¶¶ 63-69.

Healthline attempts to liken Plaintiff's allegations to those in *Heiting v. FKA Distributing Co.*, No. 2:24-cv-07314, 2025 U.S. Dist. LEXIS 20076, at *6 (C.D. Cal. Feb. 3, 2025). But in *Heiting,* the sole allegation was that plaintiff was "a person who visited Defendant's Website." *Id.* Here, Plaintiff has alleged far more to substantiate the unauthorized disclosure of his health and identifying information. Healthline also takes great pains to run through Plaintiff's allegations related to each of Healthline's three Pixels, arguing that Plaintiff fails to plead the proper configurations of each Pixel. Mot. at 11-13. Despite Healthline's assertion, there is no authority – in caselaw or otherwise – that requires Plaintiff to allege the backend capabilities of each Pixel. Plaintiff meets his pleading burden by alleging that the Pixels are installed, capable of transmitting specific information, and did in fact transmit Plaintiff's health information without his consent. FAC ¶¶ 63-69, 72, 78. Moreover, he alleges how each Pixel works and the information it collects and conveys. FAC ¶¶ 34, 40, 44, 46-47, 53-54.

Finally, Healthline contends that even if Plaintiff alleges the collection of sensitive health information, he lacks standing because the collection was anonymous. Mot. at 13. Not so—the FAC states that "[w]ithout Plaintiff's knowledge or consent, Defendant's Pixels deployed a deanonymization process to identify Plaintiff . . . ." FAC ¶ 72. The amended allegations further state that "[t]he data, information and communications that Defendant surreptitiously obtains from Plaintiff and Class members are used by third parties to whom Defendant sells and/or shares Plaintiff's and Class members' information to identify them and make personalized advertisements to Plaintiff and Class members individually." *Id.* ¶ 78. Through its Pixels, Healthline "track[s] Plaintiff's and Class members' website activity without their consent, collecting information about

health symptoms, conditions, or diagnoses submitted to Healthline's website or correlated with each visitor by virtue of reading an article on a specific health topic, and combining that valuable private information with other data sets to sell to and/or share with third-parties for advertising, sales, and marketing purposes." *Id.* ¶ 79.

Plaintiff also provides allegations explaining how Healthline's Pixels deploy this de-anonymization process and how they collect identifying information. *Id.* ¶¶ 36-37, 44-47, 53-54. Defendant's Pixels are capable of identifying him, regardless of whether he has a TikTok or Microsoft account. FAC ¶¶ 36, 39, 44, 55. Where, as here, Plaintiff has alleged that Healthline's Pixels "deployed a deanonymization process to identify Plaintiff" which resulted in his being served advertisements related to the health information he conveyed to Healthline's website, Plaintiff has established standing. *See R.C.,* 2025 U.S. Dist. LEXIS 59491, at *11 (finding Article III standing based on plaintiff's allegations that information collected was personally identifying).

## II. Plaintiff Has Plausibly Alleged That Healthline Violated CIPA

Healthline next asserts a number of pleading deficiency attacks under Fed. R. Civ. P. 12 (b)(6). Rule 12(b)(6) allows for dismissal only if the complaint "fail[s] to state a claim upon which relief can be granted." A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

### A. Healthline violated § 631(a) because it aids TikTok, Microsoft, and Xandr to commit both unlawful interception and unlawful use under Section 631(a).

"The California Supreme Court has explained that § 631(a) consists of three main clauses which cover 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Jones v. Peloton Interactive, Inc.*, 720 F. Supp.

3d 940, 945 (S.D. Cal. 2024) (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). A fourth clause creates an additional basis for liability for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (internal quotation marks and citation omitted).

**1. Section 631(a), Second Clause: Plaintiff alleges a violation of the Second Clause because TikTok, Microsoft, and Xandr willfully eavesdrop through Defendant's Pixels.**

The second clause of § 631(a), where a person "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" applies to internet communications.[2] *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). As Plaintiff alleges, TikTok, Microsoft, and Xandr violated § 631(a) clause two by "intercept[ing], eavesdrop[ping] upon, and record[ing] Plaintiff's and the Class's communications" through Healthline's Pixels. FAC ¶ 104. Specifically, "[t]hrough their Pixels embedded in Healthline.com, TikTok, Microsoft, and Xandr willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California." *Id.* ¶ 105.

Plaintiff's Amended Complaint details how TikTok, Microsoft, and Xandr intercepted search terms, URLs, and article titles related to [redacted] and exercise, among other topics, together with addressing and signaling information, knowingly read and used the intercepted information gleaned from the Pixels "to serve [Plaintiff] with advertisements related to health conditions,

[2] Plaintiff does not contest Defendant's point that the first clause of Section 631(a) is inapplicable here, because Plaintiff did not allege a violation of the first clause. Mot. at 16. However, Plaintiff asserts that the second and third clauses apply and have been met.

symptoms, and diagnoses conveyed through Defendant's Pixels on Healthline.com." *Id.* ¶¶ 64-68. TikTok, Microsoft, and Xandr "also intercepted Plaintiff's data in real time to use for analytics and reports on website visitors." *Id.* After searching for and viewing articles on the aforementioned health topics, Plaintiff received targeted ads for various exercise programs and medical studies related to [redacted] *Id.* ¶ 68.

Ignoring these allegations, Defendant asserts that "Clause Two does not apply as a matter of law" because Healthline is a party to the communications that each Pixel transmits. Mot. at 16. But Plaintiff has alleged that TikTok, Xandr, and Microsoft have eavesdropped through Healthline's use of Pixels. *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 (C.D. Cal. 2024) (the party exception does not bar liability for third party software company's actions). Courts have found that a software provider qualifies as a third-party eavesdropper. *D'Angelo*, 726 F. Supp. 3d at 1202 (noting that software company was a third party eavesdropper where software company used the information collected from the chat conversations for its own benefit); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605 (finding that Facebook was not a party to a communication between a user and a third-party website containing Facebook plug-in software).

Separately, Healthline argues that Plaintiff fails to allege an underlying violation of Section 631(a)'s second clause by TikTok, Microsoft, and Xandr because he "fails" to meet the "willfully reading," "in transit," and "content information" prongs of a second clause violation. Mot. at 18-22. But Healthline's arguments overlook the amended allegations, which directly address each prong.

***Contents.*** When evaluating whether the "contents" of a communication have been intercepted, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "'[C]ontents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). Courts have held that URLs and search terms

qualify as "contents" for the purposes of CIPA. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 605 (search "terms and the resulting URLs could divulge a user's personal interests, queries, and habits"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users personal interests, queries, and habits are contents of communications under CIPA and ECPA.") (cleaned up); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (holding that URLs disclosing search terms or similar communications qualify as a communication); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *11 ("[d]escriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."). Because Plaintiff has alleged that TikTok, Microsoft, and Xandr intercepted and read URLs, article titles, and search terms, he has adequately alleged that each third party read the content or meaning of his communications with Healthline. FAC ¶¶ 66-69, 78, 105-110.

***In Transit***. Healthline's argument that Plaintiff fails to allege interception of communications while in transit is easily rejected based on Plaintiff's detailed, amended allegations. Under the Second clause of § 631, "the eavesdropper must listen to a communication 'while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631(a)). In essence, Plaintiff must allege that his communications were intercepted in real time. *Heiting*, 728 F. Supp. 3d at 1125 ("This 'real time' standard mirrors the similar 'in transit' requirement under the federal Wiretap Act, which courts routinely rely upon to consider CIPA claims.").

Here, Plaintiff alleges that he was at all relevant times, a California resident residing in Los Angeles, and that he searched for and viewed content on Healthline's website that conveyed sensitive health conditions, symptoms, or diagnoses, and that Defendant's Pixels simultaneously transmitted information in real time from himself and other California website visitors. FAC ¶ 12, 61, 67, 105, 111. Specifically, Plaintiff alleges that "TikTok, Microsoft, and Xandr used the Pixels in Healthline.com to track and simultaneously transmit information in real time from California website visitors, such as Plaintiff and the Class." *Id.* ¶ 70. What's more, Plaintiff's allegations

regarding the use of his information to serve him with specific health-related ads and analytics demonstrate the function of the Pixels. *Id.* ¶¶ 67-70.

Healthline asserts that Plaintiff fails to allege how the Pixels function to intercept his information in real time. This argument is easily refuted. Plaintiff alleges the mechanics of the TikTok Pixel's "AutoAdvanced Matching" feature and other real time functions of the Adnx and Clarity Pixels. *See e.g.*, FAC ¶ 38 (The TikTok Pixel's "AutoAdvanced Matching" feature works by automatically collecting additional information from users); *Id.* ¶¶ 39-41 (describing how Healthline enabled the TikTok Pixel's Automatic Advanced Matching feature and demonstrating with images); *Id.* ¶ 45 (Clarity Pixel sends data regarding specific user actions and their unique identifiers to Microsoft based on settings determined by Healthline); *Id.* ¶¶ 44-47 (Healthline shares search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses and additional information such as MUIDs with Microsoft") (with images demonstrating function); *Id.* ¶¶ 53-54 (Xandr receives a user's IP address in addition to search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, each time a visitor interacts with Defendant's website) (featuring images demonstrating the function).

Taken together with Plaintiff's allegations regarding his own interactions with Healthline.com, these allegations are sufficient to meet the "in transit" requirement of Section 631(a)'s second clause. *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *15 ("[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured.") (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)). Indeed, "[a] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC,* No. 23-cv-0981, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023).

Courts have found that similar allegations sufficiently allege interception "in transit" under CIPA. *D'Angelo*, 726 F. Supp. 3d at 1198 (allegations that defendant's use of secretly embedded code which intercepted chat communications in real time and routed them to a third party was

sufficient to withstand a motion to dismiss); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (plaintiff sufficiently pled that communications were intercepted in transit by alleging that defendant's software automatically records and creates transcripts of conversations and allows at least one third party to secretly intercept in real time); *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case.").

***"Willfully reads, or attempts to read, or to learn***." CIPA Section 631(a) prohibits any person from "*willfully* and without the consent of all parties to the communication, or in any unauthorized manner, *read[ing], or attempt[ing] to read, or to learn* the contents or meaning of any message, report, or communication…" (emphasis added). Here, Plaintiff properly alleges a Section 631(a) claim because his Amended Complaint alleges that TikTok, Microsoft, and Xandr willfully "read[] or attempt[ed] to read[], or to learn" the contents of Plaintiff's communications to Defendant's website. FAC ¶¶ 67-70, 78, 105. Plaintiff's Amended Complaint details how TikTok, Microsoft, and Xandr intercept and *actually use* the content of the information to serve personalized advertisements to Plaintiff and the class. *Id*. ¶¶ 5, 22, 67-68 70, 110.

Healthline wrongly asserts that Plaintiff's Amended Complaint states "general allegations" about the capabilities of the Pixels. Mot. at 19. Not so. Plaintiff's FAC alleges that the Pixels were both *capable* of collecting and transmitting Plaintiff's sensitive health conditions, symptoms, and diagnoses, and that the Pixels *actually did* transmit that information to third parties. *See e.g.,* FAC ¶¶ 33-34 (Defendant installed the TikTok pixel on Healthline and the pixel collects and transmits search terms, URLS, or article titles that convey health symptoms, conditions, or diagnoses to third parties); ¶¶ 64-67 (Plaintiff entered search terms to reach articles about specific sensitive health conditions, Defendant's Pixels conveyed search terms, article titles, and URLs that conveyed Plaintiff's sensitive health information to third parties, and third parties used Plaintiff's health information to serve him with advertisements related to those health conditions). Plaintiff also alleges that each of Healthline's Pixels provides it with the benefit of analytics and reports on website visitors and the effectiveness of advertising. *Id*. ¶ 24, 43, 65, 69.

Accordingly, Plaintiff provides more than "general allegations" about the capabilities of

Healthline's Pixels. The FAC is sufficiently detailed at the pleadings stage, when Plaintiff is without the benefit of discovery to detail the technical workings of each of Healthline's Pixels.

**2. Section 631(a), Third Clause: Plaintiff alleges a violation of the Third Clause because TikTok, Microsoft, and Xandr use the communications transmitted through Defendant's Pixels to serve advertisements and provide analytics.**

The third clause of § 631(a) forbids an eavesdropper from "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." Plaintiff plainly alleges that Healthline's Pixels collect website visitors' information, and that "[t]his fully packaged bundle of visitor data and health conditions, symptoms, or diagnoses, is shared with TikTok, Microsoft, and Xandr which allows Tik Tok, Microsoft, and Xandr to serve the visitor ads on other platforms based on the visitors' Healthline searches and interactions." FAC ¶¶ 21-22. As detailed in Plaintiff's FAC and Section II(A)(1) *supra*, TikTok, Microsoft, and Xandr used Plaintiff's intercepted information to serve him with personalized advertisements specific to the health conditions, symptoms, and diagnoses he conveyed to Healthline's website. Moreover, Plaintiff alleges that Healthline's Pixel provide it analytics based on Plaintiff and the Classes' interactions with its website. These allegations establish a violation of the third clause of Section 631(a) because they evidence actual use of Plaintiff's information.

Healthline fails to offer any counter to these allegations, erroneously claiming that "[b]ecause Gliksman's Clause One and Clause Two claims fail as a matter of law, so does his Clause Three claim." Mot. at 16. As detailed *supra*, Plaintiff has more than adequately pleaded claims under the second clause. And Healthline does not refute the allegations establishing claims under the third clause of § 631(a).

**3. Section 631(a), Fourth Clause: Healthline violated CIPA by aiding TikTok's, Microsoft's and Xandr's wrongdoing through the knowing installation of the Pixels on its website.**

The fourth clause of § 631(a) "imposes liability on any person 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned' in clauses one through three." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20 (quoting Cal. Penal Code § 631(a)). Notably, "***[t]he statute as worded does***

***not include an intent standard***." *Id.* at *20 (emphasis added); *see also Doe v. Tenet Healthcare Corp.*, No. 1:23-cv-01106, 2025 U.S. Dist. LEXIS 109134, at *41 (E.D. Cal. June 9, 2025). Contrary to Defendant's assertion, a claim under the fourth clause "does not require that a party **aid** *and* abet." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (emphasis added).

As such, Plaintiff need only allege that Healthline "aided, agreed with, employed, or conspired with" TikTok, Microsoft, and Xandr. Plaintiff's FAC alleges that Healthline chose to install the Pixels on their website Healthline.com and by installing the Pixels, Healthline "aided" TikTok, Microsoft, and Xandr with intercepting Plaintiff's and the Class's sensitive health conditions, symptoms, diagnoses, and other identifying information used to identify Plaintiff and the Class. FAC ¶¶ 6, 20, 33-34, 43-44, 49, 53. Courts have found similar allegations sufficient. *See e.g.*, *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *22 (allegations that defendant installed a pixel on its website and that the installation of the pixel enabled third parties to intercept or receive sensitive information were sufficient to allege a claim under CIPA's fourth clause); *Tenet Healthcare Corp.*, 2025 U.S. Dist. LEXIS 109134, at *42 (allegations that defendant assisted third parties in the interception of sensitive health information by installing pixels was sufficient to state a claim under CIPA's fourth clause); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (allegations that defendant intentionally installed a pixel on its website was sufficient to state a claim under CIPA's fourth clause).

Moreover, even under Healthline's improper and more-stringent "aiding and abetting" intent standard, Plaintiff's FAC alleges that "Defendant knew that TikTok, Microsoft, and Xandr would, and did, use the Pixels to track website visitor activity, while simultaneously transmitting information in real time from California website visitors to TikTok, Microsoft, and Xandr[]" but that "Defendant installed the Pixels anyways." *Id.* ¶ 61. Healthline affirmatively elected to install Pixels because it "received the benefit of analytics from TikTok, Microsoft, and Xandr based on Plaintiff's interaction with their website." *Id.* ¶ 69. Plaintiff additionally alleges that "[d]espite being previously sued for the improper use of pixels on its website and agreeing to a $1.55 million settlement with the State of California related to its improper use of tracking technologies,

Healthline affirmatively and knowingly elected to install the TikTok, Microsoft Clarity, and Adnx pixels in order to intercept and transmit valuable personally identifiable information from its website visitors without website visitors' permission." *Id.* ¶ 60.

These allegations are sufficient to establish that Healthline "acted with the requisite intent to substantially aid such conduct." Mot. at 17. But again, there is no requirement for Plaintiff to allege intent because the plain language of Section 631 is clear. Defendant attempts to flip the 12(b)(6) standard of accepting Plaintiff's allegations as true, instead claiming that Plaintiff must show Defendant had "knowledge" of the functions of each Pixel. But Plaintiff has met his pleading burden to allege that Defendant aided third parties in violating Section 631. Furthermore, the idea that Defendant's for-profit media website installed Pixels without understanding their purpose and function is ludicrous. The very fact Defendant installed each Pixel shows intention.

### B. Plaintiff plausibly alleges that Healthline violated § 638.5.1 because its Pixels are trap and trace devices or pen registers that capture or record signaling and addressing information, among other data types.

#### 1. Plaintiff Plausibly Alleges that Defendant's Pixels are Pen Registers or Trap and Trace Devices.

CIPA § 638.51 makes it unlawful for any person to use a pen register or trap and trace device without a court order. Cal. Penal Code § 638.51(a). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

Pixels qualify as trap and trace or pen registers under California law. *Fregosa v. Mashable, Inc.*, No. 25-cv-01094, 2025 U.S. Dist. LEXIS 200770, at *15 (N.D. Cal. Oct. 9, 2025) ("the Pen Register Act applies to website-based trackers"); *Garon v. Keleops USA, Inc.*, No. 25-cv-02124, 2025 U.S. Dist. LEXIS 170745, at *7 (N.D. Cal. Sep. 2, 2025) (trackers qualify as pen registers); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 U.S. Dist. LEXIS 169503, at *32 (N.D. Cal.

Aug. 29, 2025) (same); *Shah,* 2024 U.S. Dist. LEXIS 193032, at *13 (tracking software falls within the definition of a pen register).

Plaintiff alleges that Healthline's Pixels violated CIPA because the Pixels operated as devices or processes that "record or decode website visitors' identifying and signaling information including IP address, ad/event details, timestamps, device details such as make, model, and operating system, browser information, MUID, among other metadata, and where applicable, requested information such as name, date of birth and address." FAC ¶ 95. Healthline's Pixels recorded Plaintiff's identifying or signaling information in order to identify the source of the electronic information or otherwise record or decode addressing or signaling information. *Id.* ¶¶ 66, 77-79.

Under CIPA, IP addresses meet the definition of "addressing information." *Shah,* 2024 U.S. Dist. LEXIS 193032, at *16 (N.D. Cal. Oct. 21, 2024) (finding that the disclosure of IP addresses to third parties through trackers (pixels) was sufficient to allege a claim under § 638.51); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *9 (Trackers (pixels) record addressing information in the form of IP addresses); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (TikTok Software that gathered IP address, device and browser information, and browsing history met the pleading requirements of § 638.51); *Lesh v. CNN, Inc*., No. 24 Civ. 03132, 2025 U.S. Dist. LEXIS 30743, at *8 (S.D.N.Y. Feb. 20, 2025) (IP addresses collected by trackers (pixels) qualify as "addressing information" under CIPA).

Likewise, MUIDs qualify as "dialing, routing, addressing or signaling information" because MUIDs are "unique and persistent identifier[s] generated by Microsoft and assigned to a specific browser to track visitors' activity across the internet." FAC ¶ 44, 90, 91. Defendant's Pixels "record[ed] or decode[ed] dialing, routing, addressing, or signaling information" in the form of Plaintiff's MUID to third parties, using this information to "identify the source of a wire or electronic communication." Cal. Penal Code § 638.50(b) & (c); FAC ¶ 44, 90, 91. Plaintiff further alleges a host of information that qualifies as "dialing, routing, addressing or signaling information" such as "event details including clicks, scrolls, selection, inputs, timestamps (time page was viewed), device details (make, model, operating system), browser information, and

requested information such as name, date of birth and address." *Id.* ¶ 66, 77.

Additionally, Pixels, as a technological advancement from "traditional" trap and trace devices or pen registers, can have multiple, separate functions. Plaintiff alleges that "[e]ach of Defendant's Pixels is multi-functional with an array of capabilities that allows each Pixel to do a variety of things. For example, one function of each Pixel is to collect and transmit the title or URL of the article that is viewed, while separate functions allow each Pixel to collect and convey IP addresses." FAC ¶ 25. As alleged, where the various functionalities within each Pixel operate independently from one another, "the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications." *In re Meta Pixel Tax Filing Cases*, Case No. 22-cv-07557, 2025 U.S. Dist. LEXIS 152615, at *20 (N.D. Cal. Aug. 6, 2025); *see e.g.,* FAC ¶ 95 ("Defendant also uses separate functions of the Pixels to record, collect, and transmit search terms, URLs, or article titles that convey health symptoms, conditions, or diagnoses, communications, and personal information to third parties.") Plaintiff has therefore alleged a claim for "use of the pen register 'device' without a warrant whether or not [the Pixel Providers] ha[ve] also installed or used a separate wiretap device to record and review the contents of users' communications." *Id.*

**2. CIPA § 631(a) and § 638.51 Claims are not mutually exclusive.**

Finally, Healthline asserts that Plaintiff's § 638.51 claim fails because "CIPA § 631(a) and § 638.51 are mutually exclusive." Mot. at 3. Not so. It is true that the statutory language of § 638.50 defines pen registers and trap and trace devices with the phrase "but not the contents of the communications," while § 631 claims for aiding involve the contents of a communication. However, the statute does not present a "conclusive basis in the text for resolving such a matter of statutory interpretation." *In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 152615, at *15. Where ambiguity exists, California courts "determine the Legislature's intent so as to effectuate the law's purpose." *Id.* (quoting *Skidgel v. Cal. Unemployment Ins. Appeals Bd.*, 493 P. 3d 196 (Cal. 2021)).

CIPA was enacted in 1967 for the purpose of "protect[ing] the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." *Flanagan v.*

*Flanagan*, 27 Cal. 4th 766, 769 (2002). Courts have held that "the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society. This philosophy appears to lie at the heart of virtually all the decisions construing [CIPA].'" *In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 152615, at *15-16 (quoting *Flanagan*, 27 Cal. 4th at 775) (brackets in original). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 15-CV-04062, 2016 U.S. Dist. LEXIS 107918, at *60 (N.D. Cal. Aug. 12, 2016) (brackets in original).

Based on these well-established principles of statutory interpretation, at least two courts have addressed the ambiguity between § 638.51 and § 631(a) and held that "[g]iven CIPA's purpose to protect Californians against the privacy intrusions that can result from either wiretaps or pen registers, the better interpretation of Section 638.51 is that it defines a pen register as any device that 'records dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but not a device that records only 'the contents of communications.'" *In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 152615, at *19; *see also Gabrielli*, , 2025 U.S. Dist. LEXIS 169503, at *34 (following the reasoning in *In re Meta Pixel Tax Filing Cases* and holding that "it seems very unlikely that the state Legislature meant to permit the installation and implementation of pen registers 'so long as those devices also record the contents of third party's communications.'").

Under Healthline's proposed interpretation, any "entity could engage in the very conduct that CIPA proscribes—using a pen register without a court order—while escaping liability through a statutory loophole that is available only because that entity collects even more sensitive information (the content of Californians' communications) along with the information recorded by pen registers." *In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 152615, at *16-17. As noted by Judge Pitts in *In re Meta Pixel Tax Filing Cases*, "[b]ecause recognizing such a loophole would significantly limit the privacy protections offered by CIPA's pen register

provisions, it is unsurprising that courts regularly allow both wiretap and pen register claims to proceed." *Id*. at *19 (collecting cases).

Healthline's reasoning here rests largely on two district court decisions and a California state court decision. Mot. at 22-24 (citing *Kishnani v. Royal Caribbean Cruises Ltd*., No. 25-cv-01473, 2025 U.S. Dist. LEXIS 120002, at *11 (N.D. Cal. June 24, 2025); *Mitchener v. Curiositystream, Inc*., No. 25-cv-01471, 2025 U.S. Dist. LEXIS 155489, at *10 (N.D. Cal. Aug. 6, 2025); *Price v. Headspace, Inc*., No. 24STCV19921, 2025 Cal. Super. LEXIS 28061, at *7 (L.A. Cnty. Apr. 1, 2025)). But each of these decisions fails to consider the legislative intent of CIPA, as is required when presented with statutory ambiguity. In sum, Healthline's argument fails because careful analysis of the statute and the legislative intent confirms that Section 631 and 638.51 claims are not mutually exclusive.

## III. <u>Amendment is Not Futile.</u>

Finally, Defendant argues that Plaintiff's FAC should be dismissed with prejudice. Mot. at 25. However, Federal Rule of Civil Procedure 15 provides that leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he Ninth Circuit has stated, Rule 15's policy of permitting amendments 'should be applied with "extreme liberality."'" *Genentech, Inc. v. Abbott Labs*., 127 F.R.D. 529, 530 (N.D. Cal. 1989) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). In the event that the Court grants Healthline's Motion with respect to one or both claims, Plaintiff respectfully requests leave to amend his Complaint.

## <u>CONCLUSION</u>

Plaintiff's Amended Complaint cures the standing deficiency identified by Court at the August 14, 2025 hearing. Moreover, each of Defendant's arguments for dismissal fail and its Motion should be denied in its entirety. If the Motion is granted in any part, it should be granted with leave to amend.

DATED: October 23, 2025

*/s/ Elizabeth A. Fegan*

ELIZABETH A. FEGAN
Elizabeth A. Fegan (CA Bar #355906)
FEGAN SCOTT LLC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com

Megan E. Shannon (admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
megan@feganscott.com

*Interim Class Counsel*